**Michelle Barton Smigel, P.C.**, OSB No. 045530
michelle.smigel@millernash.com
**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Fax:  503.224.0155

      Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| DOMINIC ARTIS and DAMYEAN DOTSON,<br><br>        Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF OREGON; SANDY WEINTRAUB; CHICORA MARTIN; ROBIN HOLMES; and MICHAEL R. GOTTFREDSON,<br><br>        Defendants. | Case No.: 6:16-cv-00647-MC<br><br>**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br>(Pursuant to Fed R Civ P 12(b)(6))<br><br>**REQUEST FOR ORAL ARGUMENT** |

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................... 1

II.  FACTUAL ALLEGATIONS FOR PURPOSES OF THIS MOTION ............................ 2

III.  ARGUMENT ..................................................................................................... 4

A.  Plaintiffs' Due Process Claim Should Be Dismissed Because the Individual Defendants Did Not Deprive Plaintiffs of a Constitutionally Protected Interest ........................................................................... 7

1.  The Individual Defendants' alleged actions did not implicate a constitutionally protected property right or liberty interest ..................... 7

a.  Plaintiffs did not have a property or liberty interest in attending the University ................................................ 9

b.  Plaintiffs did not have a property interest in playing basketball for the University ....................................... 12

c.  Plaintiffs did not have a property interest in the renewal of their fixed-term athletic scholarships ........................................... 13

d.  Plaintiffs did not have a property interest in future NBA contracts ................................................................ 14

e.  Oregon's Administrative Procedures Act did not confer a constitutionally protected interest on plaintiffs........................... 14

2.  The Individual Defendants are entitled to qualified immunity because they did not violate a clearly established constitutional right ...................................................................................... 15

3.  Plaintiffs' allegations cannot support an inference that their administrative hearing was constitutionally deficient............................. 18

a.  Plaintiffs agreed to participate in an administrative conference and waived their right to additional procedure.......... 19

b.  Plaintiffs failed to plead factual allegations that support an inference that their administrative conference was deficient and they waived the procedures that they now claim not to have received ............................................................. 20

c.  Plaintiffs received notice and had an opportunity to be heard before they were suspended from the University............... 21

4.  Plaintiffs were not deprived of any substantive due process rights ........ 22

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

B.  Plaintiffs' Title IX Claim Should Be Dismissed Because They Cannot Plausibly Allege That Defendants' Conduct Was Motivated by Plaintiffs' Gender or Sex .................................................................................................. 24

   1. Plaintiffs did not allege facts from which one could plausibly infer that the University selectively enforced its Student Conduct Code or sanctioned plaintiffs because of their gender or sex .............................. 26

   2. Plaintiffs' allegations do not offer factual support for their erroneous-outcome theory .......................................................................................... 30

   3. Plaintiffs' factual allegations do not suggest that the University was deliberately indifferent to their rights under Title IX ............................. 32

C.  Plaintiffs' Equal Protection Claim Should Be Dismissed Because Plaintiffs Do Not Plead Any Factual Allegations That Plausibly Suggest That They Were Treated Differently Because of Their Gender ............................................ 33

   1.  Plaintiffs' factual allegations do not plausibly suggest that they were discriminated against because of their gender or that the Individual Defendants acted with discriminatory intent ......................... 33

   2.  The Individual Defendants are entitled to qualified immunity because plaintiffs cannot show that the Individual Defendants violated a clearly established right ............................................................ 35

D.  Plaintiffs Are Precluded From Relitigating the Validity of Their Administrative Orders and From Asserting Their State Law Claims ................. 37

   1.  Plaintiffs are precluded from relitigating the validity of their administrative orders under the doctrine of issue preclusion .................. 37

   2.  Plaintiffs are precluded from asserting their state law claims because they did not challenge their suspension through a direct appeal, as is required under Oregon law ................................................. 39

E.  Defendants Are Entitled to Discretionary Immunity From Plaintiffs' Tort Claims Under ORS 30.265 ............................................................................... 39

F.  Plaintiffs' Negligence Claim Should Be Dismissed Because They Do Not Allege Physical Injury or Property Damage and, as a Matter of Law, Defendants' Alleged Conduct Did Not Create a Foreseeable Risk of Harm to Plaintiffs ....................................................................................................... 41

   1.  Plaintiffs failed to allege damages cognizable in negligence because no special relationship exists ..................................................... 42

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

2.  As a matter of law, Defendants' alleged conduct did not create a foreseeable risk of harm to plaintiffs ........................................................ 43

3.  Plaintiffs failed to provide the requisite notice of their claims concerning the University's investigation ................................................. 45

G.  Plaintiffs' IIED Claim Should Be Dismissed Because, as a Matter of Law, Defendants' Alleged Conduct Did Not Transgress the Bounds of Socially Tolerable Conduct ............................................................................................ 47

H.  Plaintiffs Cannot State a Claim for Tortious Interference With Prospective Economic Advantage Because They Fail to Allege a Relationship With the NBA and Failed to Provide the Required Notice of This Claim to the University .......................................................................................................... 49

1.  Plaintiffs do not allege existing business relationships with NBA teams, which is necessary to recover for the intentional interference with a prospective economic advantage ............................. 50

2.  Plaintiffs do not allege sufficiently likely prospective business relationships with NBA teams to recover in tort ..................................... 51

3.  Plaintiffs' allegations fail to support their conclusory statements that Defendants acted intentionally and with an improper purpose or by improper means .............................................................................. 52

4.  Plaintiffs failed to provide adequate notice of their claim, as required under the OTCA ........................................................................ 54

I.  Plaintiffs' Claims for Economic Damages in Tort Should Be Dismissed Because, as a Matter of Law, Their Allegations Are Too Speculative to State a Claim ................................................................................................... 55

J.  Plaintiffs Fail to State a Claim for Breach of Contract, and Plaintiffs Allege No Cognizable Damages ........................................................................ 57

IV.  CONCLUSION .............................................................................................................. 59

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Sur. Co. v. Gosdin*,
  803 F2d 1153 (11th Cir 1986) ...........................................................28

*Albright v. Oliver*,
  510 US 266, 114 S Ct 807, 127 L Ed 2d 114 (1994)..............................22

*Allen v. Hall*,
  328 Or 276, 974 P2d 199 (1999) ........................................................49

*Anderson v. Creighton*,
  483 US 635, 107 S Ct 3034, 97 L Ed 2d 523 (1987)..............................16

*Ashcroft v. al-Kidd*,
  563 US 731, 131 S Ct 2074, 179 L Ed 2d 1149 (2011)....................15, 35

*Ashcroft v. Iqbal*,
  556 US 662, 129 S Ct 1937, 173 L Ed 2d 868 (2009)................4, 5, 27, 30

*Bateson v. Geisse*,
  857 F2d 1300 (9th Cir 1988) ........................................................22, 23

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
  435 US 78, 98 S Ct 948, 55 L Ed 2d 124 (1978).....................................9

*Bd. of Regents of State Colls. v. Roth*,
  408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972)................8, 9, 11, 12, 13, 14, 17

*Bell Atl. Corp. v. Twombly*,
  550 US 544, 127 S Ct 1995, 167 L Ed 2d 929 (2007)....................4, 5, 27

*Bell v. PERB*,
  239 Or App 239, 247 P3d 319 (2010)..................................................43

*Brandon Austin v. Univ. of Oregon et al.*,
  No. 6:15-cv-02257-MC..........................................................................1

*Brands v. Sheldon Cmty. Sch.*,
  671 F Supp 627 (ND Iowa 1987).........................................................12

*Brown v. Zimbrick Logging*,
  273 Or 463, 541 P2d 1388 (1975) .......................................................55

*Chapman v. Mayfield*,
    358 Or 196, 361 P3d 566 (2015) ..............................................................43, 44

*Chavez v. Boise Cascade Corp.*,
    307 Or 632, 772 P2d 409 (1989) ..............................................................37, 38

*Colo. Seminary (Univ. of Denver) v. NCAA*,
    417 F Supp 885 (D Colo 1976), *aff'd*, 570 F2d 320 (10th Cir 1978) ....................12

*Cont. Plants v. Measured Mkt*,
    274 Or 621, 547 P2d 1368 (1976) ..............................................................58

*Conway v. Pacific University*,
    324 Or 231, 924 P2d 818 (1996) ..............................................................57

*Cron v. Zimmer*,
    255 Or App 114, 296 P3d 567 (2013)..............................................50, 51, 52

*D. H. Overmyer Co. v. Frick Co.*,
    405 US 174, 92 S Ct 775, 31 L Ed 2d 124 (1972) ..................................................19

*Dauven v. George Fox Univ.*,
    No. CV. 09-305-PK, 2010 WL 6089077 (D Or Dec. 3, 2010)................................44

*Davies v. Grossmont Union High Sch. Dist.*,
    930 F2d 1390 (9th Cir), *cert denied*, 501 US 1252 (1991)....................................19

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*,
    526 US 629, 119 S Ct 1661, 143 L Ed 2d 839 (1999)......................................24

*Delaney v. Clifton*,
    180 Or App 119, 41 P3d 1099 (2002)....................................................47, 48, 49

*Detroit Bank v. United States*,
    317 US 329, 63 S Ct 297, 87 L Ed 304 (1943)........................................33

*Doe v. Columbia Univ.*,
    101 F Supp 3d 356, 374 (SDNY 2015)....................................................26, 27, 31

*Doe v. Univ. of Mass.-Amherst*,
    No. 14-30143-MGM, 2015 WL 4306521 (D Mass July 14, 2015) ............26, 27, 31

*Doe v. Univ. of the South*,
    687 F Supp 2d 744 (ED Tenn 2009)....................................................26, 30, 32

Page ii -    Table of Authorities

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Doyle v. Oregon Bank*,
94 Or App 230, 764 P2d 1379 (1988)...................................................................59

*Drews v. EBI Companies*,
310 Or 134, 795 P2d 531 (1990) ........................................................................37

*Dunn v. Castro*,
621 F3d 1196 (9th Cir 2010) ...............................................................................16

*Erlandson v. Pullen*,
45 Or App 467, 608 P2d 1169 (1980)...........................................................50, 53

*Fernandez v. Rosenzwieg*,
No. CIV. 95-241-FR, 1996 WL 453046 (D Or Aug. 8, 1996) ....................9, 12, 17

*Flug v. University of Oregon*,
335 Or 540, 73 P3d 917 (2003) ..........................................................................45

*Freeman v. Busch*,
349 F3d 582 (8th Cir 2003) .................................................................................42

*G.C. v. North Clackamas School Dist.*,
654 F Supp 2d 1226 (D Or 2009) .......................................................................24

*Galbraith v. Hartford Fire Ins. Co.*,
464 F2d 225 (3d Cir 1972)...................................................................................28

*Georgetown Realty v. The Home Ins. Co.*,
313 Or 97, 831 P2d 7 (1992) ..............................................................................43

*Goffstein v. State Farm Fire & Cas. Co.*,
764 F2d 522 (8th Cir 1985) .................................................................................28

*Goldberg v. Kelly*,
397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970)...............................................8

*Goss v. Lopez*,
419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975).............................................10

*Grossman v. City of Portland*,
33 F3d 1200 (9th Cir 1994) ...........................................................................16, 17

*Halverson v. Skagit Cty.*,
42 F3d 1257 (9th Cir 1994) ...........................................................................22, 23

70097529.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Hammond v. Central Lane Communications Center*,
    312 Or 17, 816 P2d 593 (1991) ..................................................................42

*Harrell v. S. Or. Univ.*,
    No. CV 08-3037-CL, 2010 WL 2326576 (D Or Mar. 24, 2010).....................9

*Hawkins v. NCAA*,
    652 F Supp 602 (CD Ill 1987) ..................................................................52

*House v. Hicks*,
    218 Or App 348, 179 P3d 730 (2008)........................................................47

*Hunter v. Bryant*,
    502 US 224, 112 S Ct 534, 116 L Ed 2d 589 (1991).........................16

*Hussey v. Milwaukee Cnty.*,
    740 F3d 1139 (7th Cir 2014) ..................................................................14

*Hysaw v. Washburn Univ. of Topeka*,
    690 F Supp 940 (D Kan 1987)..................................................................12

*Justice v. Nat'l Collegiate Athletic Ass'n*,
    577 F Supp 356 (D Ariz 1983) ..................................................................12

*Kahn v. Pony Express Courier Corp.*,
    173 Or App 127, 20 P3d 837 (2001)...............................................55, 56

*Kelly's Auto Parts, No. 1, Inc. v. Boughton*,
    809 F2d 1247 (6th Cir 1987) ..................................................................28

*Klein v. Grynberg*,
    44 F3d 1497 (10th Cir 1995) ..................................................................52

*Lake County v. State of Oregon*,
    142 Or App 162, 920 P2d 1115 (1996)........................................................39

*Lindsey v. Shalmy*,
    290 F3d 1382 (9th Cir 1994) ..................................................................36

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
    431 F3d 353 (9th Cir 2005) ..................................................................55

*Ludwig v. Astrue*,
    681 F3d 1047 (9th Cir 2012) ..................................................................21

Page iv -   Table of Authorities

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Lumbreras v. Roberts*,
   319 F Supp 2d 1191 (D Or 2004) ........................................22

*Marquez v. Harper Sch. Dist. No. 66*,
   No. CV-09-1254-SU, 2011 WL 2462035 (D Or Mar. 24, 2011) ...........................48

*McAdoo v. Univ. of N.C. at Chapel Hill*,
   736 SE2d 811 (NC Ct App 2013) ...........................52, 55, 56

*McGanty v. Staudenraus*,
   321 Or 532, 901 P2d 841 (1995) ...........................47, 50, 51

*McManus v. Auchincloss*,
   271 Or App 765, 353 P3d 17 (2015)...........................43, 47

*Miller v. Cty. of Santa Cruz*,
   39 F3d 1030 (9th Cir 1994) ........................................37

*Mitchell v. Forsyth*,
   472 US 511, 105 S Ct 2806, 86 L Ed 2d 411 (1985)...........................17

*Navarro v. Block*,
   72 F3d 712 (9th Cir 1995) ........................................33

*Nelson v. Emerald People's Utility Dist.*,
   318 Or 99, 862 P2d 1293 (1993) ...........................37, 38

*Northwest Natural Gas Co. v. Chase Gardens, Inc*,
   328 Or 487, 982 P2d 1117 (1999) ...........................52, 53

*Orr v. City of Eugene*,
   151 Or App 541, 950 P2d 397 (1997)...........................46, 54

*Padilla v. Yoo*,
   678 F3d 748 (9th Cir 2012) ........................................16

*Parish v. NCAA*,
   506 F2d 1028 (5th Cir 1975) ........................................52

*Parrino v. FHP, Inc.*,
   146 F3d 699 (9th Cir 1998) ........................................2

*Patterson v. Hudson Area Sch.*,
   551 F3d 438 (6th Cir 2009) ........................................32

Page v -    Table of Authorities

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Paul v. Davis,*
424 US 693, 96 S Ct 1155, 47 L Ed 2d 405 (1976)......................................8, 10, 11

*Paul v. Providence Health Sys.-Oregon,*
351 Or 587, 273 P3d 106 (2012) ...........................................................42, 43

*Rabon v. Great Sw. Fire Ins. Co.,*
818 F2d 306 (4th Cir 1987) ...........................................................................28

*Ramirez v. Hawaii T & S Enterprises, Inc.,*
179 Or App 416, 39 P3d 931 (2002)...............................................................40

*Reese v. Jefferson Sch. Dist. No. 14J,*
208 F3d 736 (9th Cir 2000) ...........................................................................33

*Robinson v. Shipley,*
64 Or App 794, 669 P2d 1169 (1983)..........................................................46, 54

*Rosenthal v. Erven,*
172 Or App 20, 17 P3d 558 (2001)................................................................43

*Ross v. Creighton Univ.,*
957 F2d 410 (7th Cir 1992) ...........................................................................58

*Rowinsky v. Bryan Indep. Sch. Dist.,*
80 F3d 1006 (5th Cir), *cert denied,* 519 US 861 (1996).......................................24

*Ryan v. Harlan,*
No. CV-10-626-ST, 2011 WL 711110 (D Or Feb. 22, 2011) ...............................9

*Sahm v. Miami Univ.,*
110 F Supp 3d 774 (SD Ohio 2015) ...............................................................29

*Serrano v. Francis,*
345 F3d 1071 (9th Cir 2003) ...........................................................................33

*Shanks v. Dressel,*
540 F3d 1082 (9th Cir 2008) ..................................................................7, 8, 14

*Shin v. Sunriver Preparatory School, Inc.,*
199 Or App 352, 111 P3d 762 (2005)..............................................................43

*Sinaloa Lake Owners Ass'n v. City of Simi Valley,*
882 F2d 1398 (9th Cir 1989) ...........................................................................22

70097529.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Slochower v. Bd. of Higher Ed.*,
    350 US 551, 76 S Ct 637, 100 L Ed 692 (1956) .................................................8

*Snowden v. Hughes*,
    321 US 1, 64 S Ct 397, 88 L Ed 497 (1944) ...................................................33

*Sole Energy Co. v. Petrominerals Corp.*,
    26 Cal Rptr 3d 798 (Ct App 2005) ...............................................................50

*Stanley v. Trustees of Cal. State Univ.*,
    433 F3d 1129 (9th Cir 2006) ....................................................................24, 25

*Straube v. Larson*,
    287 Or 357, 600 P2d 371 (1979) ..............................................................51, 53

*Taylor v. Barkes*,
    ___US ___, 135 S Ct 2042, 192 L Ed 2d 78 (2015) ...................................35

*Tenold v. Weyerhaeuser Co.*,
    127 Or App 511, 873 P2d 413 (1994), *rev dismissed*, 321 Or 561 (1995) ........47, 48

*U.S. National Bank v. Boge*,
    311 Or 550, 814 P2d 1082 (1991) ................................................................57

*United States v. Ritchie*,
    342 F3d 903 (9th Cir 2003) ...........................................................................2

*Walker v. Gomez*,
    370 F3d 969 (9th Cir 2004) ..........................................................................35

*Westfall v. State ex rel. Oregon Dept. of Corrections*,
    355 Or 144, 324 P3d 440 (2014) ..................................................................40

*Williams v. Bd. of Regents of Univ. Sys. of Ga.*,
    477 F3d 1282 (11th Cir 2007) ......................................................................24

*Wilson v. Garcia*,
    471 US 261, 105 S Ct 1938, 85 L Ed 2d 254 (1985) ...................................25

*Winnick v. Manning*,
    460 F2d 545 (2d Cir 1972) ...........................................................................21

*Wisconsin v. Constantineau*,
    400 US 433, 91 S Ct 507, 27 L Ed 2d 515 (1971) ......................................11

70097529.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Yusuf v. Vassar Coll.*,
　35 F3d 709 (2d Cir 1994) ........................................................26, 27, 30, 31

*Zehr v. Haugen*,
　318 Or 647, 871 P2d 1006 (1994) ........................................................58

## Statutes

20 USC § 1681 ........................................................................................5, 25

28 USC § 1738 ............................................................................................37

42 USC § 1983 ....................................................................1, 5, 6, 25, 33

Oregon Administrative Procedures Act ................................................14

Oregon Tort Claims Act ........................................6, 45, 49, 54, 55

ORS 30.260(6) ......................................................................................45, 54

ORS 30.265 ..........................................................................................39, 40

ORS 30.275 ..................................................................................45, 46, 54

ORS 31.710(2)(a) ......................................................................................55

ORS 183.310(6)(b) ..............................................................................37, 39

ORS 183.413-.497 ..............................................................................14, 15

ORS 183.480(2) ..........................................................................................39

ORS 183.482 ................................................................................................39

ORS 183.484 ........................................................................................23, 39

ORS 183.502 ................................................................................................14

ORS 351.088 ........................................................................................14, 15

ORS 659 ........................................................................................................25

ORS 659A ....................................................................................................25

## Other Authorities

Fed R Civ P 12(b)(6) ........................................................................1, 2, 4

70097529.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

LR 7-1 ...................................................................................................................1

LR 7-2 ...................................................................................................................1

OAR 571-003-0125 ..............................................................................................3

OAR 571-021-0105(30)(b)(A)........................................................................4, 10

OAR 571-021-0130 ............................................................................................23

OAR 571-021-0140(5)(h) ...................................................................................28

OAR 571-021-0160(3) ........................................................................................21

OAR 571-021-0205 ................................................4, 15, 18, 19, 20, 21, 48

OAR 571-021-0210 ......................................................................................15, 21

OAR 571-021-0250 ............................................................................................21

*The Oregonian* ........................................................................................2, 3, 17, 24

United States Constitution ...................................................................7, 8, 19, 21, 33

70097529.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## LR 7-1 CERTIFICATE

Counsel for defendants, University of Oregon (the "University"), Sandy Weintraub, Chicora Martin, Robin Holmes, and Michael R. Gottfredson (collectively, the "Individual Defendants" and, together with the University, "Defendants"), conferred with counsel for plaintiffs about the dispute through a telephone conference, but the parties have been unable to resolve the dispute.

## LOCAL RULE 7-2 CERTIFICATION

This memorandum complies with LR 7-2(b) because the court granted Defendants' request to file a brief of this length.

## MOTION

In accordance with Fed R Civ P 12(b)(6), Defendants move to dismiss the complaint because it fails to state a claim on which relief can be granted.

## MEMORANDUM

## I.     INTRODUCTION

Plaintiffs' claims emerge from events that allegedly transpired after plaintiffs were accused of rape by a fellow undergraduate student.  Their complaint is virtually identical to a pending lawsuit filed against Defendants by Brandon Austin, plaintiffs' former teammate, *see Brandon Austin v. Univ. of Oregon et al.*, No. 6:15-cv-02257-MC, though plaintiffs assert one claim (an alleged 42 USC § 1983 equal protection violation) not asserted by Austin.  Because of the overlapping facts and legal claims, when applicable, this motion restates the grounds for dismissal that Defendants articulated in their motion to dismiss Austin's lawsuit.

As did Austin, plaintiffs assert invalid legal theories arising out of the University's finding that plaintiffs violated its Student Conduct Code by engaging in sexual misconduct.  The allegations and claims in the complaint show that this case can and should be decided now as a matter of law.  Plaintiffs assert that Defendants are liable for the following: (1) the University's investigation of a report that plaintiffs raped a fellow student, (2) the manner in which

Page 1 -     Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Defendants conducted plaintiffs' administrative hearing, and (3) the nonrenewal of plaintiffs' athletic scholarships.  But neither federal law nor Oregon law prevents a public university from applying its student conduct code by suspending students found to have engaged in an act of sexual misconduct, as defined by that code.  In fact, our public universities are authorized by state law to issue such educational sanctions.  According to plaintiffs, when student-athletes are suspended by a public university for violating the student conduct code, the university should be held liable for theoretically diminishing the students' chances of professional sports careers.  Plaintiffs' theory, however, has no basis in law.  The allegations in plaintiffs' complaint do not give rise to any viable legal claims and do not meet the standards to survive dismissal under Fed R Civ P 12(b)(6).

## II.  FACTUAL ALLEGATIONS FOR PURPOSES OF THIS MOTION

For purposes of this motion to dismiss, Defendants move against the allegations contained in plaintiffs' complaint, as they are obligated to do.  Defendants also submit a few additional documents that were incorporated by reference into the complaint,[1] the contents of which cannot be disputed in good faith by plaintiffs, and therefore their submission creates no factual dispute:  (1) plaintiffs' 2013-2014 athletic scholarships, (2) the redacted police report published by *The Oregonian*, (3) Gottfredson's public statement, (4) documentation of plaintiffs' waivers of a panel hearing, (5) the University's decision letters finding that plaintiffs "engaged in sexual acts with a fellow student without obtaining explicit consent," and (6) plaintiffs' Tort Claims Notices to the University. (Documents are attached as exhibits to the declarations of Michelle Barton Smigel ("Smigel Decl.") and Lisa Thornton ("Thornton Decl.").)

---

[1]  *See United States v. Ritchie*, 342 F3d 903, 907-08 (9th Cir 2003) (a court may properly consider documents incorporated by reference in a complaint on a Fed R Civ P 12(b)(6) motion "without converting the motion to dismiss into a motion for summary judgment"); *see also Parrino v. FHP, Inc.*, 146 F3d 699, 706 (9th Cir 1998) (a court may properly consider documents outside the pleadings that are "crucial to the plaintiff's claims, but not explicitly incorporated into the complaint" because plaintiffs cannot survive a Fed R Civ P 12(b)(6) motion by "deliberately omitting references to documents upon which their claims are based").

Page 2 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiffs are former University of Oregon students and scholarship-athletes for the University's men's basketball team. (Compl. ¶¶ 2, 42.) (Plaintiffs' scholarships for the 2013-2014 academic year are attached as Exhibit A to Thornton Decl., ¶ 4.) On March 13, 2014, a University of Oregon undergraduate filed a report with the Eugene Police Department, accusing plaintiffs (as well as their teammate and plaintiff in a related lawsuit against the University, Brandon Austin) of raping her. (Compl. ¶ 24.) After receiving a copy of this report, the University temporarily suspended plaintiffs from school on an emergency basis. (Compl. ¶ 29.)

On May 1, 2014, plaintiffs were dismissed from the basketball team. Plaintiffs continued to receive their athletic scholarships through the end of the academic year, consistent with the terms of their scholarships. The University, however, elected not to renew plaintiffs' scholarships for the following year. Plaintiffs could have appealed the nonrenewal of their scholarships under OAR 571-003-0125.[2] But neither plaintiff did, nor does either plaintiff allege that he did.

On or about May 5, 2014, *The Oregonian* published the March 13 police report, which referenced plaintiffs by name. (Police report attached as Exhibit A to Smigel Decl., ¶ 2.) (Compl. ¶ 26.) In response, Gottfredson, who was the University's President at the time, held a press conference on May 9, 2014, to address public concerns regarding the police report and sexual violence in the surrounding community. (Compl. ¶ 28.) His statement did not reference plaintiffs by name. (Gottfredson's statement attached as Exhibit B to Thornton Decl., ¶ 5.)

In accordance with the University's Student Conduct Code, the University began the process of scheduling plaintiffs' administrative hearings. As plaintiffs' hearings approached, Artis's then-attorney, Greg Veralrud, and Dotson's then-attorney, Shaun McCrea, requested that plaintiffs receive a consolidated hearing (along with Austin). Plaintiffs agreed that their hearing

---

[2] At the time of the events relevant to the complaint, the University's Student Conduct Code was subject to the 2014 edition of the Oregon Administrative Rules. The Student Conduct Code has since been amended and renamed as a University policy.

Page 3 - Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

would be conducted according to the procedures of an administrative conference, as defined by OAR 571-021-0205, and in return, the University agreed to take "expulsion" off the table so that "suspension" from school was the maximum sanction that plaintiffs would face. (Plaintiffs' waivers are attached as Exhibit C to Thornton Decl., ¶ 6.)

Plaintiffs' hearing was conducted by Sandy Weintraub, Director of Student Conduct & Community Standards at the University (Compl. ¶ 37), on June 17, 2014. Plaintiffs were represented by counsel (Veralrud and McCrea). Based on the evidence presented at their hearing, Weintraub determined that plaintiffs had violated the University's Student Conduct Code by engaging in sexual misconduct, specifically, penetration without "first obtain[ing] Explicit Consent." OAR 571-021-0105(30)(b)(A). Plaintiffs were accordingly suspended from the University for four to ten years. (The University's administrative hearing decision final letters are attached as Exhibit D to Thornton Decl., ¶ 7.)

Plaintiffs did not appeal their suspensions to state court, nor does either plaintiff allege that he did. Plaintiffs also did not file any other appeal or grievance under the University's grievance rules. Rather, on October 8, 2014, the University received a letter from Veralrud informing the University of Artis's intent to sue. The following day, the University received an identical letter from McCrea informing the University of Dotson's intent to sue. (Plaintiffs' Tort Claims Notices are attached as Exhibit E to Thornton Decl., ¶ 8.) (Compl. ¶ 44.)

## III.    ARGUMENT

A Fed R Civ P 12(b)(6) motion should be granted if the plaintiffs fail to adequately allege the "grounds" of their "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 US 544, 555, 127 S Ct 1995, 167 L Ed 2d 929 (2007) (internal punctuation and citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US 662, 663, 129 S Ct 1937, 173 L Ed 2d 868 (2009) (internal quotation marks and citation omitted). When evaluating whether a complaint states a claim for relief, a court should not accept nonfactual matters or

Page 4 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

conclusory statements set forth in the complaint as true. *Id.* Instead, a court must follow a two-step approach in assessing the sufficiency of each claim. *Iqbal*, 556 US at 680-81. First, the court must distinguish between facts, on the one hand, and "mere conclusory statements" or legal conclusions, on the other hand; the latter are not entitled to the presumption of truth and must be disregarded. *Iqbal*, 556 US at 678-79. Second, the court must "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 US at 681. If the plaintiffs' pleadings "have not nudged [their] claims across the line from conceivable to plausible, [their] complaint must be dismissed." *Twombly*, 550 US at 570.

Plaintiffs pleaded seven causes of action, all of which should be dismissed for the following procedural and substantive reasons, in addition to the other reasons raised in this memorandum:

- Plaintiffs' 42 USC § 1983 due process claim: Plaintiffs' claim should be dismissed because: (1) the alleged conduct of the Individual Defendants did not implicate a constitutionally protected interest, (2) even if it did, this interest was not clearly established and the Individual Defendants are entitled to qualified immunity, and (3) in any event, as the complaint shows, plaintiffs received notice and had an opportunity to be heard before they were suspended (based on a hearing that provided all the process that plaintiffs were due under the law) and the Individual Defendants' alleged conduct did not shock the conscience. In addition, the doctrine of issue preclusion bars plaintiffs from using this action to challenge their suspensions, which were valid administrative orders under Oregon law.

- Plaintiffs' 20 USC § 1681 ("Title IX") claim: Plaintiffs' claim should be dismissed because plaintiffs do not plead factual allegations supporting their theories that: (1) the University selectively enforced Title IX by suspending plaintiffs for sexual misconduct because of their gender or sex, (2) the University's investigation or plaintiffs' administrative conferences were flawed or any purported flaw was

Page 5 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

motivated by plaintiffs' gender or sex, or (3) the University was deliberately indifferent to plaintiffs' rights under Title IX.

- Plaintiffs' 42 USC § 1983 equal protection claim: Plaintiffs' claim should similarly be dismissed because plaintiffs do not plead factual allegations that plausibly suggest that the Individual Defendants purposefully discriminated against plaintiffs based on their gender and because the Individual Defendants are entitled to qualified immunity.

- Plaintiffs' tort claims: Plaintiffs' fourth, fifth, and sixth claims should be dismissed because plaintiffs failed to challenge their suspension from the University in accordance with state law and because Defendants are entitled to discretionary immunity.

- Plaintiffs' negligence claim: Plaintiffs' negligence claim should be dismissed as a matter of law because plaintiffs have not pleaded cognizable damages and Defendants' alleged conduct did not create a foreseeable risk of harm to an interest that Oregon law protects.

- Plaintiffs' intentional infliction of emotional distress ("IIED") claim: Plaintiffs' claim fails to state a claim because plaintiffs cannot plausibly allege that Defendants intended to inflict severe emotional distress, that their alleged actions transgressed the bounds of socially tolerable conduct, or that plaintiffs had a special relationship with Defendants.

- Plaintiffs' tortious interference claim: Plaintiffs' claim for tortious interference with their hypothetical professional basketball careers fails to state a claim because plaintiffs cannot plausibly allege that they had an actual or contemplated business relationship with any National Basketball Association ("NBA") team and because plaintiffs failed to provide Defendants with the requisite notice under the Oregon Tort Claims Act (the "OTCA").

Page 6 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

- Plaintiffs' breach-of-contract claim: Plaintiffs' claim should be dismissed because the allegations confirm that the University fulfilled its obligations under the terms of plaintiffs' scholarships, which were the only contractual obligations to which plaintiffs were entitled.

## A. Plaintiffs' Due Process Claim Should Be Dismissed Because the Individual Defendants Did Not Deprive Plaintiffs of a Constitutionally Protected Interest

1. <u>The Individual Defendants' alleged actions did not implicate a constitutionally protected property right or liberty interest</u>

Plaintiffs assert that the Individual Defendants violated their due process rights guaranteed by the United States Constitution based on the manner in which the University conducted its investigation and the outcome and process of plaintiffs' administrative hearing. To prevail on a due process claim, plaintiffs must first "establish the existence of '* * * a liberty or property interest.'" *Shanks v. Dressel*, 540 F3d 1082, 1090 (9th Cir 2008) (quoting *Portman v. Cty. of Santa Clara*, 995 F2d 898, 904 (9th Cir 1993)). Plaintiffs cannot establish such an interest.

Neither the University's investigation nor the administrative hearing implicated plaintiffs' constitutional rights because plaintiffs did not have a constitutionally protected property or liberty interest in attending the University, playing for its basketball team, having their scholarships renewed by the University, or being free from "the opprobrium associated with a suspension from a university, and the opprobrium associated with committing a sexual assault." (Compl. ¶ 43.) Consequently, the Individual Defendants' conduct during the investigation and hearing cannot constitute a due process violation, no matter what procedure plaintiffs were provided (which, nevertheless, was constitutionally adequate). In addition, the sanction did not implicate plaintiffs' liberty interests because they received notice and the opportunity to be heard before being suspended.

Page 7 - Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Protected interests in property "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law * * * that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972). "Not every procedural requirement ordained by state law, however, creates a substantive property interest entitled to constitutional protection. Rather, only those rules or understandings that support legitimate claims of entitlement give rise to protected property interests." *Shanks*, 540 F3d at 1091 (internal quotation marks and citations omitted). To be entitled to constitutional due process, "a person clearly must have more than an abstract need or desire * * * [or] unilateral expectation of" a benefit. *Roth*, 408 US at 577. Examples of legitimate entitlements are the continued receipt of welfare benefits issued in accordance with statutory or administrative standards defining eligibility, *Goldberg v. Kelly*, 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970), and the continued employment of a tenured professor at a public university, *Slochower v. Bd. of Higher Ed.*, 350 US 551, 76 S Ct 637, 100 L Ed 692 (1956).

Liberty interests are "'those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'" *Roth*, 408 US at 572 (quoting *Meyer v. Nebraska*, 262 US 390, 399, 43 S Ct 625, 67 L Ed 1042 (1923)). Liberty interests are reserved for the most fundamental of our rights, and "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis*, 424 US 693, 710-11, 96 S Ct 1155, 47 L Ed 2d 405 (1976). The Supreme Court has "repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply [only when] the State seeks to remove or significantly alter that protected status." *Id.* The Court has, for example, refused to find liberty interests in the nonrenewal of a fixed-term employment contract, *Roth*, 408 US 564, or damage to one's personal reputation, without additional injury, *Davis*, 424 US 693.

Plaintiffs had no property interest in enrollment at the University, their position on its basketball team, or their receipt of future athletic scholarships from the University. The

Page 8 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Constitution therefore did not guarantee plaintiffs any due process rights with regard to the University's investigation or their administrative hearing. And plaintiffs cannot plausibly contend that their liberty interests were implicated by the alleged conduct of the Individual Defendants because their suspension (after a finding that they violated the Student Conduct Code) did not implicate any interest "'essential to the orderly pursuit of happiness.'" *Roth*, 408 US at 572 (quoting *Meyer*, 262 US at 399).

        a.      <u>Plaintiffs did not have a property or liberty interest in attending the University</u>

Students do not have a constitutionally protected property or liberty interest in public postsecondary education in Oregon. *See Ryan v. Harlan*, No. CV-10-626-ST, 2011 WL 711110, at *7 (D Or Feb. 22, 2011) (The court held that a former university student had "no recognized due process interest in graduate level education. There is an established and significant property interest in universal elementary and high school education *due to mandated attendance by state laws*. However, post-high school, when attendance is not mandated, the property interest is less and less protected.") (emphasis added) (citation omitted); *Harrell v. S. Or. Univ.*, No. CV 08-3037-CL, 2010 WL 2326576, at *8 (D Or Mar. 24, 2010) ("Plaintiff cannot argue an entitlement to post-secondary education. Plaintiff cites no Oregon statutes to support his contention of a property or liberty interest, and, further, the Supreme Court has explicitly stated that 'education . . . is not among the rights afforded explicit protection under our Federal Constitution.'") (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 US 1, 35, 93 S Ct 1278, 36 L Ed 2d 16 (1972)); *Fernandez v. Rosenzwieg*, No. CIV. 95-241-FR, 1996 WL 453046, at *3 (D Or Aug. 8, 1996) ("There is no case holding that a student has a federally-protected due process, property or liberty interest in continued enrollment in or graduation from a state university. This court will not so hold.").

        The Supreme Court has explained that public university students have a legitimate claim of entitlement to their education *only if* state law confers this interest. *Bd. of Curators of*

Page 9 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

*Univ. of Mo. v. Horowitz*, 435 US 78, 82, 98 S Ct 948, 55 L Ed 2d 124 (1978) ("Because property interests are creatures of state law, respondent would have been required to show at trial that her seat at the Medical School was a 'property' interest recognized by Missouri state law.") (citation omitted). The rationale outlined in *Goss v. Lopez*, 419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975), which confirmed the existence of a constitutionally protected property interest in mandatory K-12 education in Ohio, applies here to demonstrate the lack of any property interest. The Court found that "*on the basis of state law,* appellees plainly had legitimate claims of entitlement to a public education. [Ohio laws] direct local authorities to provide a free [K-12] education to all residents between five and 21 years of age, and a compulsory-attendance law requires attendance * * *." 419 US at 573 (emphasis added). Here, in stark contrast to laws for K-12 education in Ohio (and in Oregon), Oregon does not mandate that college-age residents (let alone nonresidents such as plaintiffs) attend college, nor does it provide free education at its public universities to all college-age residents. Because Oregon law does not establish an entitlement to public postsecondary education, the Constitution does not afford due process protections to students suspended from Oregon's public universities.

Plaintiffs' claim also incorrectly implies that they had a liberty interest in avoiding "the opprobrium associated with a suspension from a university, and the opprobrium associated with committing a sexual assault."[3] (Compl. ¶ 43.) The Constitution does not protect students from purported "opprobrium associated with a suspension" after administrative findings that the students engaged in sexual misconduct. Even if the University's findings were erroneous, in *Davis*, the Supreme Court explained that it "has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the

---

[3] The University did not suspend plaintiffs for "committing sexual assault." Plaintiffs were suspended for "sexual misconduct," a term defined by the Student Conduct Code as, in relevant part, "penetration of another person * * * when one * * * [d]oes not first obtain Explicit Consent from that person." OAR 571-021-0105(30)(b)(A).

Page 10 - Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

guarantees of procedural due process" unless "a right or status previously recognized by state law was [also] distinctly altered or extinguished."  424 US at 706, 711.  The Court's ruling clarified that, properly interpreted, *Wisconsin v. Constantineau*, 400 US 433, 437, 91 S Ct 507, 27 L Ed 2d 515 (1971)—which reasoned that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"—and the Court's subsequent jurisprudence "establish[] no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause."  *Davis*, 424 US at 702.

To the extent that plaintiffs allege the violation of a liberty interest, their assertion fails for at least three reasons.  First, plaintiffs were not sanctioned until *after* they received notice and had the opportunity to be heard at an administrative hearing.  (Compl. ¶ 37.) Moreover, plaintiffs do not allege that the Individual Defendants notified the public of plaintiffs' suspension; thus, the Individual Defendants cannot be held liable for any "opprobrium" plaintiffs claim.  *See Davis*, 424 US at 711.  Second, plaintiffs' suspension did not alter or extinguish a right previously recognized by state law.  *See id.*  As discussed above, there is no right to public postsecondary education in Oregon, and consequently no right to being a student in good standing.  Plaintiffs' suspensions from the University therefore could not have altered a cognizable educational right, because they had none.  Finally, plaintiffs have not alleged that the Individual Defendants sought to prevent them from pursuing their education elsewhere or from pursuing professional basketball careers.  In the absence of efforts to deprive plaintiffs of future opportunity, plaintiffs cannot assert that the Individual Defendants impaired their liberty interests.  *See, e.g.*, *Roth*, 408 US at 573-74 ("The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities.  Had it done so, this * * * would be a different case.").

Page 11 -  Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiffs did not have a constitutionally protected property or liberty interest in being enrolled at the University, and their suspensions from the University did not impinge their constitutional interests. Plaintiffs' suspensions therefore cannot give rise to a due process claim.

      b.    <u>Plaintiffs did not have a property interest in playing basketball for the University</u>

Plaintiffs also had no constitutional interest in their position on the University's basketball team. In Oregon, because students do not have a constitutional right to attend a public university, *see, e.g.*, *Fernandez*, 1996 WL 453046, at \*3, they cannot have a constitutional right to participate in intercollegiate athletics sponsored by the University.

The majority of jurisdictions recognize that "participation in intercollegiate athletics is not a constitutionally protected interest." *Justice v. Nat'l Collegiate Athletic Ass'n*, 577 F Supp 356, 366 (D Ariz 1983); *see, e.g*., *Colo. Seminary (Univ. of Denver) v. NCAA*, 417 F Supp 885, 896 (D Colo 1976), *aff'd*, 570 F2d 320 (10th Cir 1978) ("[T]he plaintiff student-athletes have no constitutionally protected property or liberty interest in participation in intercollegiate athletics."); *Hysaw v. Washburn Univ. of Topeka*, 690 F Supp 940 (D Kan 1987) (plaintiffs' athletic scholarships did not confer a right to play on the university's football team); *Brands v. Sheldon Cmty. Sch.*, 671 F Supp 627, 631 (ND Iowa 1987) ("A clear majority of courts addressing this question in the context of interscholastic or intercollegiate athletics has found that athletes have no legitimate entitlement to participate.").

In accordance with *Roth*, unless "existing rules or understandings \* \* \* such as state law" establish that college athletes are entitled to compete in intercollegiate athletics, dismissing student-athletes from a college team does not disturb their civil rights. *See* 408 US at 577. Plaintiffs cannot establish a property interest in playing basketball for the University because no rule or Oregon law creates an entitlement to participate in intercollegiate athletics. Plaintiffs' dismissal from the team therefore cannot give rise to a due process claim.

Page 12 - Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

c.    Plaintiffs did not have a property interest in the renewal of their fixed-term athletic scholarships

Plaintiffs' fixed-term athletic scholarships did not confer a property interest, and under the express terms of their contracts with the University, plaintiffs were not entitled to have their scholarships renewed for the 2014-2015 academic year. (Thornton Decl., Exhibit A.) Plaintiffs do not allege that their scholarships were revoked before the end of spring quarter 2014 or that the University failed to provide them with any benefit due under the terms of their existing scholarships. This is significant. Because the University fulfilled its obligations under the terms of the scholarships, plaintiffs' claim can succeed only if they establish a property interest in the renewal of their scholarships. To do so, plaintiffs must show that state law, or some binding rule, entitled them to receive another scholarship. But no rule or Oregon law required that the University renew plaintiffs' scholarships. Furthermore, such a claim contradicts the terms of their scholarships, which was offered only "for the 2013-14 academic year" and thus expired at the end of spring quarter 2014.

In *Roth*, the Supreme Court held that a fixed-term employment contract that does not guarantee an extension or renewal "secure[s] absolutely no interest in re-employment" after the contract expires on its own terms. 408 US at 578. This is because any property interest in an employment contract is "created and defined by the terms of [the] appointment." *Id.* In this case, plaintiffs' scholarships secured an interest less significant than employment and one that did not rise to the level of a constitutional property interest. But similar to Roth's contract, plaintiffs' athletic scholarships were offered for a fixed term, without the promise of renewal. Under the terms of plaintiffs' contracts, the University had no obligation to renew plaintiffs' scholarships for the subsequent academic year. Plaintiffs' "unilateral expectation" that their scholarships would be renewed did not create an entitlement to a scholarship renewal. Consequently, as a matter of law, plaintiffs had no constitutionally protected interest in the

Page 13 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

renewal of their athletic scholarships.[4]  Plaintiffs' claimed property interest therefore fails as matter of law.

        d.    <u>Plaintiffs did not have a property interest in future NBA contracts</u>

        Plaintiffs do not appear to allege, nor could they be, entitled to NBA contracts—and their "unilateral expectation" of signing NBA contracts at some future point is insufficient to create a constitutionally protected property interest. *Roth*, 408 US at 577.  Plaintiffs fail to allege that any NBA team even so much as contacted them one time (and plaintiffs would need to assert far more developed relationships with NBA teams to allege a property interest in future NBA contracts).  Without any contact from the NBA—let alone facts indicating that future NBA contracts were "securely and durably" their property—plaintiffs cannot, as a matter of law, establish an entitlement to future contractual relationships with the NBA. *Hussey v. Milwaukee Cnty.*, 740 F3d 1139, 1142 (7th Cir 2014).

        e.    <u>Oregon's Administrative Procedures Act did not confer a constitutionally protected interest on plaintiffs</u>

        Plaintiffs pleaded that the Individual Defendants conducted their administrative hearing in a manner that violated the Oregon Administrative Procedures Act (the "APA"), and in doing so violated their federal due process rights.  (Compl. ¶ 34.)  Plaintiffs allege violations of ORS 351.088, ORS 183.413-.497, and ORS 183.502.  These statutes, however, do not confer a property or liberty interest on plaintiffs (instead, they grant the University rulemaking authority and describe procedures applicable to contested hearings), which is a prerequisite for establishing a due process violation. *See Shanks*, 540 F3d at 1090-91.

---

[4]  Plaintiffs claim that they were automatically entitled to renewed athletic scholarships.  (Compl. ¶ 114.)  But that is not true.  In accordance with the NCAA Bylaws cited in plaintiffs' scholarship offers, plaintiffs' scholarships could have been nonrenewed for any number of reasons not based on their athletic ability, from being academically ineligible to being late for practice. *See* 2013-14 NCAA Manual, NCAA Bylaw 15.3.5.

Page 14 -  Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

In addition, the University was not bound to the administrative procedures provided by ORS 183.413-.497 because ORS 351.088 grants the University the authority to "establish [its own] adjudicative procedures." In accordance with this authority, the University established procedures for administrative conferences, OAR 571-021-0205, and panel hearings, OAR 571-021-0210, as the exclusive procedures for adjudicating alleged violations of its Student Conduct Code. In consequence, plaintiffs' complaint alleges violations of administrative procedures (those applicable in contested hearings) that, as a matter of law, were not applicable to plaintiffs and that they were therefore not entitled to receive. Moreover, as discussed below, plaintiffs voluntarily, knowingly, and intelligently agreed to the administrative procedures they received, each waiving his right to a panel hearing or any other procedure that they now allege they were due.

Plaintiffs cannot establish that their constitutional rights were violated by the alleged failure of the Individual Defendants to comply with the cited provisions of the APA because these laws conferred no rights on plaintiffs and the University was not obligated to follow the hearing procedures described in ORS 183.413-.497.

2.  The Individual Defendants are entitled to qualified immunity because they did not violate a clearly established constitutional right

No clearly established constitutional rights were implicated by the alleged conduct of the Individual Defendants, and they are therefore entitled to qualified immunity and dismissal of plaintiffs' due process claim. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 US 731, 131 S Ct 2074, 2080, 179 L Ed 2d 1149 (2011) (quoting *Harlow v. Fitzgerald*, 457 US 800, 818, 102 S Ct 2727, 73 L Ed 2d 396 (1982)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the

Page 15 -  Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 US 635, 639, 107 S Ct 3034, 97 L Ed 2d 523 (1987) (internal quotation marks and citation omitted). Put differently, a public official's claim of qualified immunity is defeated only if "'in the light of pre-existing law' the unlawfulness of his conduct was 'apparent.'" *Grossman v. City of Portland*, 33 F3d 1200, 1208 (9th Cir 1994) (quoting *Anderson*, 483 US at 640).

The Ninth Circuit has explained that it is appropriate to rule on qualified immunity on a motion to dismiss. *See, e.g.*, *Dunn v. Castro*, 621 F3d 1196, 1198-99 (9th Cir 2010) (reversing district court's denial of qualified immunity at motion-to-dismiss stage); *Padilla v. Yoo*, 678 F3d 748, 757 (9th Cir 2012) (same); *see also Hunter v. Bryant*, 502 US 224, 227, 112 S Ct 534, 116 L Ed 2d 589 (1991) ("[B]ecause the entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal punctuation, emphasis, and citations omitted). According to the *Dunn* court, qualified immunity should be granted on a motion to dismiss if the law is not clearly established as applied to the facts, which are taken as pleaded:

> "On review of a denial of a motion to dismiss based on qualified immunity, we review de novo whether governing law was clearly established at the time of the alleged violation.
>
>                  \* \* \*
>
> "We find it particularly appropriate to resolve Dunn's case at this stage because the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." 621 F3d at 1198-99 (internal punctuation and citations omitted).

Plaintiffs did not have an entitlement to attend the University, play for its basketball team, have their athletic scholarships renewed, enter into contracts with the NBA, or be free from the "opprobrium" of receiving suspensions for sexual misconduct. But even if the

Page 16 - Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

court finds that interfering with any of these "unilateral expectation[s]," *Roth*, 408 US at 577, implicated a constitutionally protected right, such a right was not clearly established at the time of plaintiffs' administrative hearing because no court in Oregon or the Ninth Circuit has ever found such a right to exist under similar circumstances.  Moreover, several Oregon district court decisions have expressly rejected a constitutional right to public higher education.  *See, e.g.*, *Fernandez*, 1996 WL 453046, at *3.  And if anything, it is clearly established that there is no constitutionally protected interest in public university education, intercollegiate athletics, athletic scholarships, hypothetical NBA contracts, and attention for engaging in sexual misconduct.  In light of preexisting law, it could not have been apparent to the Individual Defendants that their alleged actions implicated plaintiffs' constitutionally protected interests.  *See Grossman*, 33 F3d at 1208 (quoting *Anderson*, 483 US at 640).  In accordance with the doctrine of qualified immunity, none of the Individual Defendants should be subject to any aspect of litigation concerning plaintiffs' due process claim, and the claim should be dismissed.  *See Mitchell v. Forsyth*, 472 US 511, 526, 105 S Ct 2806, 86 L Ed 2d 411 (1985) (qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation").

Furthermore, plaintiffs' claims against Martin, Gottfredson, and Holmes ask the court to create additional constitutional protections that have never been recognized in this jurisdiction or elsewhere.  Plaintiffs plead that Martin, the University's former Assistant Dean of Students, temporarily suspended plaintiffs on an emergency basis after the University received a report accusing plaintiffs of sexual misconduct.  (Compl. ¶ 29.)  But plaintiffs cannot demonstrate that at the time it was clearly established that a university official violates the Constitution by temporarily suspending a student while the university investigates serious allegations of sexual misconduct.  Plaintiffs plead that Gottfredson "imposed discipline upon players * * * by making a public statement condemning the basketball players" soon after *The Oregonian* published a police report in which plaintiffs were accused of rape.  (Compl. ¶ 28.)  But at the time of these remarks, it was not clearly established that a university president violates

Page 17 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

the Constitution by allegedly publicly "condemning" behavior that violates a university's student conduct code and is unlawful.[5] Plaintiffs' allegations against Holmes, the University's Vice President of Student Life, similarly fail to overcome qualified immunity. Plaintiffs plead that Holmes "refused to respond to the request for an appeal and did not return multiple phone calls from counsel thereby right [sic] to procedural and substantive due process."[6] (Compl. ¶ 39.) But plaintiffs had no right to an appeal under the rules for University administrative conferences, *see* OAR 571-021-0205, they expressly waived any appeal right they may have otherwise had under the University's administrative procedures, and they did not properly file any appeal or grievance remedy available under the University's grievance rules. Consequently, Holmes's alleged conduct could not have violated any clearly established constitutional right to an appeal, because no such right existed.

Because it could not have been apparent to Martin, Gottfredson, Holmes, or Weintraub that their alleged conduct violated the Constitution, the court should grant the Individual Defendants qualified immunity and dismiss plaintiffs' due process claim.

3. <u>Plaintiffs' allegations cannot support an inference that their administrative hearing was constitutionally deficient</u>

Plaintiffs' due process claim should be dismissed not only because no constitutionally protected rights were implicated by the alleged conduct of the Individual Defendants, and because the Individual Defendants are entitled to qualified immunity, but also because plaintiffs' administrative hearing provided all the process they were due.

---

[5] Moreover, Gottfredson's statement condemned the *type* of behavior that was depicted in the March 13 police report, which included underage drinking and group sexual activity, among other things. (Smigel Decl., Exhibit A.) He did not state that plaintiffs had in fact engaged in this behavior, or even mention plaintiffs' names.

[6] The University disputes this allegation, though that dispute is not relevant to this motion.

Page 18 - Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

a.   <u>Plaintiffs agreed to participate in an administrative conference and waived their right to additional procedure</u>

Plaintiffs pleaded that they requested but did not receive a contested hearing, which they allege was a violation of their due process rights.  But "due process rights * * * are subject to waiver."  *D. H. Overmyer Co. v. Frick Co.*, 405 US 174, 185, 92 S Ct 775, 31 L Ed 2d 124 (1972).  "The Supreme Court has recognized that constitutional rights may ordinarily be waived if it can be established by clear and convincing evidence that the waiver is voluntary, knowing and intelligent."  *Davies v. Grossmont Union High Sch. Dist.*, 930 F2d 1390, 1394-95 (9th Cir), *cert denied*, 501 US 1252 (1991) (citing *Overmyer*, 405 US at 185).

Plaintiffs agreed to participate in an administrative conference in accordance with OAR 571-021-0205, thereby waiving any other procedural rights they may have otherwise been afforded by the University.  (Thornton Decl., Exhibit C.)  Under the terms of their agreements and in accordance with OAR 571-021-0205, plaintiffs waived their rights (i) to a panel hearing, (ii) to have their accuser present at their administrative conferences, (iii) to request that witnesses be subpoenaed, and (iv) to an appeal.  In exchange, the University agreed that plaintiffs would not be expelled from the University, if the allegations against them were substantiated.[7]

Plaintiffs' agreement to the administrative conference and waiver of additional procedure was made while they were represented by counsel.  Plaintiffs do not plead that they were not fully informed by their counsel of the procedures for an administrative conference or the consequences of waiving their right to a panel hearing, including waiving their right to appeal the outcome of the hearing.  Thus, as a matter of law, plaintiffs cannot establish that their agreement and waiver were anything other than voluntary, knowing, and intelligent.  Their

---

[7] One of the reasons the University agreed to reduce the possible sanction plaintiffs faced was that by agreeing to an administrative conference, plaintiffs agreed to forgo aspects of a panel hearing that can be grueling for an alleged victim, such as subjecting the alleged victim to cross-examination.

Page 19 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

procedural rights, under Oregon law, were therefore limited to those rights included in OAR 571-021-0205.

      b.    <u>Plaintiffs failed to plead factual allegations that support an inference that their administrative conference was deficient and they waived the procedures that they now claim not to have received</u>

In relevant part, OAR 571-021-0205(1) requires the following procedures for University administrative conferences:

"(a)  Reasonable access to the case file prior to and during the conference, except to the extent access to such material is prohibited by law.  The case file may contain materials that are considered 'education records' pursuant to the Family Education Rights and Privacy Act (FERPA) of 1974, as amended and personal notes of University staff members and complainants.  Access to these materials may be prohibited by law.  Otherwise, to the extent allowed by law, copies of the case file will be provided upon request.

"(b)  An opportunity to respond to all information provided and to ask the Director or designee hearing the case to contact relevant and necessary witnesses.

"(c)  The right to be accompanied and assisted by an adviser."

Plaintiffs allege that they were (i) not allowed to subpoena witnesses, (ii) not provided with unredacted reports, and (iii) not permitted to cross-examine witnesses.  (Compl. ¶ 34.)  But plaintiffs had no legal right to any of these procedures because they agreed to proceed by administrative conference.  The rules for administrative conferences did not give plaintiffs the right to subpoena witnesses, receive unredacted reports, or cross-examine witnesses.  *See* OAR 571-021-0205.  In accordance with OAR 571-021-0205(1)(b), plaintiffs were permitted to ask Weintraub to contact relevant witnesses on their behalf, but were not entitled to subpoena witnesses.  Plaintiffs fail to allege that they asked Weintraub to contact any witnesses or that Weintraub refused to do so.  OAR 571-021-0205(1)(a) afforded plaintiffs "[r]easonable access to the case file * * *, *except to the extent access to such material is prohibited by law*," but did not entitle plaintiffs to unredacted reports, particularly when doing so was prohibited by law.  Finally, while plaintiffs had the right to "respond to all information provided," they were not

Page 20 -  Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

entitled to cross-examine witnesses. OAR 571-021-0205(1)(b); *see also Winnick v. Manning*, 460 F2d 545, 549 (2d Cir 1972) ("The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings."). Accordingly, plaintiffs failed to adequately plead that the Individual Defendants denied them any procedures they were due.[8]

Plaintiffs' due process claim should be dismissed because they cannot plausibly allege that the University's investigation or their administrative hearing was deficient, in light of the process they were due after each waived his right to a panel hearing.

      c.    <u>Plaintiffs received notice and had an opportunity to be heard before they were suspended from the University</u>

Setting aside plaintiffs' waivers and the shortcomings of their pleadings, plaintiffs' Fourteenth Amendment rights were not violated because they received constitutionally sufficient due process. Plaintiffs do not allege that the University failed to provide them with notice of their hearing or an opportunity to be heard *before* any alleged deprivation of supposed constitutional rights. "Notice and a meaningful opportunity to be heard are the hallmarks of procedural due process." *Ludwig v. Astrue*, 681 F3d 1047, 1053 (9th Cir 2012) (internal punctuation and citation omitted). Regardless of whether plaintiffs had a right to due process, they received it, and therefore their claim fails.

---

[8] If plaintiffs had elected a panel hearing instead of an administrative conference, plaintiffs would have been entitled to additional procedures, including: (i) their hearing would have been conducted by a panel of at least four members of the University Hearings Board, OAR 571-021-0160(3); (ii) at the request of plaintiffs, the chair of the hearings panel could have issued subpoenas requiring relevant witnesses to attend plaintiffs' hearing, OAR 571-021-0210(8); (iii) plaintiffs (though not their attorneys) would have been entitled to ask relevant questions of witnesses, OAR 571-021-0210(13); and (iv) plaintiffs could have appealed the outcome of their hearings panel, OAR 571-021-0250.

Page 21 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Additionally, the court should dismiss plaintiffs' procedural due process claim with respect to Martin, Holmes, and Gottfredson for the separate reason that plaintiffs do not assert that these defendants participated in the University's investigation or their hearing.

4.    <u>Plaintiffs were not deprived of any substantive due process rights</u>

In addition to plaintiffs' claim that the Individual Defendants violated their procedural due process rights, plaintiffs allege violations of their substantive due process rights. But those rights were not implicated by the Individual Defendants' alleged conduct because their alleged conduct did not deprive plaintiffs of a fundamental right or "shock[] the conscience." *Nunez*, 147 F3d at 871 (internal quotation marks and citation omitted).

"[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action," *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F2d 1398, 1407 (9th Cir 1989), but this substantive component generally affords protection only to fundamental rights, *see Albright v. Oliver*, 510 US 266, 272, 114 S Ct 807, 127 L Ed 2d 114 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."). Substantive due process guards against governmental "interference with property rights [that is] irrational or arbitrary," *Bateson v. Geisse*, 857 F2d 1300, 1303 (9th Cir 1988), and conduct that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty," *Nunez*, 147 F3d at 871 (internal quotation marks and citation omitted). It "is not 'a guarantee against incorrect or ill-advised' decisions." *Lumbreras v. Roberts*, 319 F Supp 2d 1191, 1211 (D Or 2004) (quoting *Collins v. City of Harker Heights*, 503 US 115, 129, 112 S Ct 1061, 117 L Ed 2d 261 (1992)). And for claims not affecting a fundamental right, the court "merely look[s] to see whether the government *could* have had a legitimate reason for acting as it did." *Halverson v. Skagit Cty.*, 42 F3d 1257, 1262 (9th Cir 1994) (internal quotation marks and citation omitted).

Page 22 -  Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

As a threshold issue, plaintiffs were not deprived of a fundamental right, and the court must therefore dismiss this claim if it finds that the Individual Defendants *could* have had a legitimate reason for their alleged actions. *Halverson*, 42 F3d at 1262. Plaintiffs nevertheless also fail to plead factual allegations establishing that the conduct of the Individual Defendants was plausibly "irrational or arbitrary," *Bateson*, 857 F2d at 1303, or "shock[ed] the conscience or interfere[d] with rights implicit in the concept of ordered liberty," *Nunez*, 147 F3d at 871 (internal quotation marks and citation omitted).

Plaintiffs allege that Weintraub violated their substantive due process rights through the manner in which Weintraub conducted plaintiffs' administrative hearing. But it cannot be considered irrational or arbitrary for Weintraub to follow procedures that plaintiffs agreed to, and plaintiffs have not pleaded that Weintraub failed to provide the procedure they were due under the law.

Holmes's purported refusal to respond to plaintiffs' alleged request for an appeal did not shock the conscience. Plaintiffs had no right to appeal the outcome of their administrative hearing to the University (their appeal rights were exclusively through ORS 183.484 or 183.482, as discussed below in Section D). Thus, as a matter of law, it cannot shock the conscience that a University official "refused to respond to the request for an appeal" and did not "return multiple phone calls from counsel" (Compl. ¶ 39) when (a) plaintiffs had no appeal right and (b) plaintiffs' counsel was in direct communication with the University's general counsel concerning the other aspects of plaintiffs' administrative hearing.

Martin's and Gottfredson's alleged conduct (issuing a suspension and making a public statement, respectively) did not shock the conscience, either. It cannot shock the conscience that a University official temporarily suspended plaintiffs while the University investigated a report that they had committed sexual misconduct, a serious violation of the Student Conduct Code. *See* OAR 571-021-0130. It also cannot shock the conscience that the

Page 23 - Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

University President issued a statement discussing public safety in light of the conduct depicted in the March 13 police report, which had been made publicly available by *The Oregonian*.

Plaintiffs' substantive due process claim should accordingly be dismissed for failure to state a claim.

**B.      Plaintiffs' Title IX Claim Should Be Dismissed Because They Cannot Plausibly Allege That Defendants' Conduct Was Motivated by Plaintiffs' Gender or Sex**

Plaintiffs' Title IX claim against the Individual Defendants fails as a matter of law.  "Courts have consistently held that Title IX does not subject school officials to liability in their individual capacities."  *G.C. v. North Clackamas School Dist.*, 654 F Supp 2d 1226, 1237 (D Or 2009) (internal quotation marks and citation omitted); *see also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F3d 1282, 1300 (11th Cir 2007) ("Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations."); *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F3d 1006, 1012 (5th Cir), *cert denied*, 519 US 861 (1996) ("The fact that [T]itle IX was enacted pursuant to Congress's spending power is evidence that it prohibits discriminatory acts only by grant recipients."); *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 US 629, 641, 119 S Ct 1661, 143 L Ed 2d 839 (1999) ("The Government's enforcement power may only be exercised against the funding recipient, see § 1682, and we have not extended damages liability under Title IX to parties outside the scope of this power.").  Plaintiffs' claim asserts liability against the Individual Defendants, in their individual capacities.  It should be dismissed as to the Individual Defendants.

Plaintiffs' allegations against the University also fail as a matter of law because the complaint does not include any factual allegations that suggest that the University's conduct was motivated by plaintiffs' gender or sex.[9]  Plaintiffs offer three theories of discrimination:

---

[9]   Defendants assert that plaintiffs' Title IX claim is precluded by the applicable statute of limitations.  While "Title IX does not expressly provide any statute of limitations * * * [it] 'borrow[s] the most appropriate state statute of limitations.'"  *Stanley v. Trustees of Cal. State*

Page 24 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

selective enforcement, erroneous outcome, and deliberate indifference. Each of these theories

fails to connect the University's conduct to gender or sex bias.

---

*Univ.*, 433 F3d 1129, 1134 (9th Cir 2006) (quoting *Cholla Ready Mix, Inc. v. Civish*, 382 F3d 969, 974 (9th Cir 2004), *cert denied*, 544 US 974 (2005) (citing *Wilson v. Garcia*, 471 US 261, 268, 105 S Ct 1938, 85 L Ed 2d 254 (1985)). The most appropriate state statute of limitations is the statute "most analogous" to Title IX. *Wilson*, 471 US at 268. In *Wilson*, the Supreme Court considered which statute of limitations to apply to claims brought under 42 USC § 1983, which also lacks a statute of limitations. The Court concluded that a state's personal-injury statute of limitations is the most analogous to claims under Section 1983. Neither the District of Oregon nor the Ninth Circuit has determined what Oregon law is most analogous, hence most appropriate to apply, to Title IX.

In *Stanley*, the Ninth Circuit analogized Title IX claims to Section 1983 claims and, citing *Wilson* and related cases, determined that the California personal-injury statute applied to Title IX claims, reasoning that "every circuit to consider the issue has held that Title IX * * * borrows the relevant state's statute of limitations for personal injury" and that "[t]he close similarity between Title VI and Title IX also supports applying the statute of limitations for personal injury." *Stanley*, 433 F3d at 1134-36.

But *Wilson*'s rationale is specific to Section 1983 claims and the diversity of claims that may be asserted under Section 1983, the tort nature of many of those claims, the historical context, and the "unique" nature of Section 1983 as a federal remedy. *Wilson*, 471 US at 271-72 (quoting *Mitchum v. Foster*, 407 US 225, 239, 92 S Ct 2151, 32 L Ed 2d 705 (1972)). Section 1983 is qualitatively different from Title IX (and Title VI). For example, Section 1983 claims may be brought against a government official who inflicted personal injury on a plaintiff (e.g., excessive force by a police officer), but Title IX claims may be brought only against institutions, not individuals, and Title IX's charge is preventing recipients of federal funding from discriminating in educational programs. 20 USC § 1681(a).

At the time Title IX was enacted in 1972, Oregon already had a state law prohibiting discrimination in employment on the basis of sex. ORS 659A was originally enacted in 1949 (as ORS 659) and amended in 1969 to prohibit discrimination on the basis of sex. Therefore, at the time Congress passed Title IX, the most analogous state law in Oregon was its prohibition on discrimination, which has a one-year statute of limitations. ORS 659A.030. Oregon subsequently passed a state law specifically prohibiting gender discrimination in educational institutions. ORS 659.850. That statute also has a one-year statute of limitations. ORS 659.860 (2). One or both of these statutory schemes is the most analogous Oregon law to Title IX, and therefore a one-year statute of limitations should apply to plaintiffs' claim . Dismissal is proper for this separate reason.

Page 25 -  Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1. <u>Plaintiffs did not allege facts from which one could plausibly infer that the University selectively enforced its Student Conduct Code or sanctioned plaintiffs because of their gender or sex</u>

Plaintiffs' first theory is that the University selectively enforced its Student Conduct Code because of their gender or sex. For a "selective enforcement" claim to survive a motion to dismiss, the plaintiff must plead facts that suggest that the defendant initiated proceedings or imposed a sanction based on the plaintiff's gender or sex. *See, e.g., Doe v. Univ. of the South*, 687 F Supp 2d 744, 756 (ED Tenn 2009) ("'To support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to [the plaintiff's] and was treated more favorably by the University.'") (quoting *Mallory v. Ohio Univ.*, 756 F App'x 634, 641 (6th Cir 2003)); *Doe v. Columbia Univ.*, 101 F Supp 3d 356, 374 (SDNY 2015) (plaintiff must "allege particular circumstances suggesting a meaningful inconsistency in punishment and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency") (internal quotation marks and citation omitted); *Doe v. Univ. of Mass.-Amherst*, No. 14-30143-MGM, 2015 WL 4306521, at *8 (D Mass July 14, 2015) (Plaintiff failed to state a claim of selective enforcement of Title IX because he did not "cite[] examples of any comments that targeted him based on his gender—as opposed to his status as a student accused of sexual assault—or any conduct suggestive of gender bias."). The plaintiff must "do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of * * * discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F3d 709, 713 (2d Cir 1994).

Plaintiffs do not meet the pleading standard. They assert merely the bare legal conclusion that "[r]egardless of his guilt or innocence * * *, the severity of the penalty * * *, as well as the decision to initiate the proceeding in the first place, were affected by the fact that each of these Plaintiffs is a male, and the accuser is a female" (Compl. ¶ 51), along with three

Page 26 -  Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

additional statements asserting the University's gender and sex bias, which are made "on information and belief" but void of factual support.  (Compl. ¶¶ 55-57.)  Statements based solely "on information and belief" are not factual allegations sufficient to overcome a motion to dismiss.  *Doe v. Columbia Univ.*, 101 F Supp 3d at 369, 371 ("[i]n the wake of *Iqbal* and *Twombly*" statements made "[u]pon information and belief" are not factual allegations, and assertions "that males * * * accused of sexual misconduct 'are invariably found guilty'" do not satisfy the pleading standard) (quoting complaint);[10] *see also Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at *9 (assertions that "'male respondents in sexual misconduct cases * * * are discriminated against solely on the basis of sex' and are 'invariably found guilty * * *' [that] are unsupported by even minimal data or credible anecdotal references * * * are the type of conclusory statements that *Iqbal* and *Twombly* do not allow the court to consider").  Moreover, "[t]hat Plaintiff couches most of [his allegations] as made '[u]pon information and belief' merely underscores the glaring absence of particularized evidence supporting an inference that gender bias was causally linked to a flawed outcome."  *Doe v. Columbia Univ.*, 101 F Supp 3d at 371.

The two factual allegations that Plaintiffs include do not support their claim.  First, plaintiffs state that the Lane County District Attorney declined to initiate criminal

---

[10]  The *Doe v. Columbia Univ.* court further explained:

> "The Second Circuit's decision in *Yusuf* does not call for a different result.  To be sure, the *Yusuf* Court held that the plaintiff's allegations were sufficient to state a claim under Title IX and relied in part on an allegation * * * that males accused of sexual harassment at the school were 'invariably found guilty, regardless of the evidence, or lack thereof.' 35 F.3d at 716.  *Yusuf*, however, was decided in 1994—long before the Supreme Court's clarification of the pleading standards in *Twombly* and *Iqbal*.  In light of those decisions, * * * the Court is no longer required to consider as true—and, in fact, for the purposes of evaluating the Complaint's sufficiency, is compelled to disregard—Plaintiff's allegation, as it is devoid of factual support or examples of any other males at [the university] who have been found guilty * * *.  [Citation and footnote omitted.]  Notably, the Second Circuit itself has modified its approach to allegations such as those in *Yusuf* since *Iqbal* and *Twombly*." 101 F Supp 3d at 373.

Page 27 -  Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

proceedings. (Compl. ¶¶ 52-53.) This fact, however, does not give rise to an inference of gender or sex discrimination. The District Attorney's Office is a prosecutorial body and assesses whether, in its opinion, there is probable cause that a violation of the state's criminal code has occurred. The University, on the other hand, is an educational entity and, in its relevant capacity here, assesses whether a "preponderance of the information" suggests that a violation of its Student Conduct Code has occurred. *See* OAR 571-021-0140(5)(h). Plaintiffs' own allegations that the case against them was "unprovable as a *criminal* case" and had "weaknesses [that] presented 'an insurmountable barrier *to prosecution*'" confirm that the District Attorney's decision not to prosecute plaintiffs is of no bearing to the University's decisions to initiate its investigation or impose a sanction based on the University's Student Conduct Code.[11] (Compl. ¶¶ 52-53 (emphasis added).) In addition, evidence of nonprosecution of criminal charges against a plaintiff is inadmissible in a civil trial and therefore cannot, as a matter of law, be used to satisfy the pleading standard. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Gosdin*, 803 F2d 1153, 1160 (11th Cir 1986) (excluding evidence of non-prosecution because "the different standards of proof between a criminal prosecutorial decision and a civil case might mislead the jury"); *Goffstein v. State Farm Fire & Cas. Co.*, 764 F2d 522, 524 (8th Cir 1985) ("As a general rule, evidence that criminal charges were not brought is inadmissible in a civil case arising out of the same events as the criminal charges."); *Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F2d 1247, 1253 (6th Cir 1987) ("Evidence of non-prosecution * * * is inadmissible * * * in a civil case arising out of the same events as the criminal charges.") (internal quotation marks and citation omitted); *see also Rabon v. Great Sw. Fire Ins. Co.*, 818 F2d 306, 309 (4th Cir 1987); *Galbraith v. Hartford Fire Ins. Co.*, 464 F2d 225 (3d Cir 1972). Even if evidence of nonprosecution were admissible,

_____

[11] Plaintiffs also overstate the significance of the District Attorney's initial decision not to prosecute them, a decision that does not prevent the District Attorney from deciding to prosecute plaintiffs at any future point within the statute of limitations.

Page 28 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

plaintiffs fail to allege facts that suggest that the University's conduct was motivated by discriminatory intent, a connection they must prove to succeed on their Title IX claim.

Second, plaintiffs pleaded that "Dr. Gottfredson's pronouncement on behalf of the University * * * included the conclusion that the female accuser was a 'survivor,' and the statement that 'as a father, I was appalled at what I read [in the police report].'" (Compl. ¶ 54.) These facts are similarly unrelated to evidence of gender or sex bias. As an initial matter, Gottfredson's statement addressed sexual conduct *as it was depicted in the police report*. His statement expressed no opinion whether plaintiffs had in fact engaged in the alleged conduct. Moreover, neither the term "survivor" nor the sentiment that a parent was "appalled" by the sexual conduct depicted in the police report at issue here is suggestive of discrimination *based on gender or sex*. To the contrary, both males and females (as well as people of other gender identities) can be survivors of sexual assault, and the sexual behavior described in the police report is quite likely appalling to any parent, regardless of the alleged aggressor's gender or sex. Even if plaintiffs' allegations could infer bias by the University in favor of alleged victims, "[d]emonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F Supp 3d 774 (SD Ohio 2015). In any event, plaintiffs' own allegations concede that Gottfredson was not involved in conducting plaintiffs' administrative hearing or imposing plaintiffs' sanctions. As pleaded, Weintraub was the sole decision-maker at plaintiffs' administrative hearing. (Compl. ¶ 37.) As a consequence, even if Gottfredson's statements suggest a bias against males or against alleged aggressors of sexual violence (which, again, is not a plausible interpretation of Gottfredson's statements), plaintiffs have not pleaded that there was a connection between Gottfredson's May 9, 2014, statement and plaintiffs' suspensions from the University.

In addition, the court is not required to accept as true plaintiffs' allegations that the University selectively enforced its Student Conduct Code *because* plaintiffs are male—even for

Page 29 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

purposes of a motion to dismiss—because plaintiffs offer no factual support for this claim and because there is an "obvious alternative explanation" for the University's actions: the University undertook an investigation of (and, based on the evidence it gathered, eventually adjudicated) a report of sexual misconduct—*as it was obligated to do under Title IX*. *Iqbal*, 556 US at 682 ("As between [an] 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks use to infer, discrimination is not a plausible conclusion.") (quoting *Twombly*, 550 US at 567); *see also* Letter from Russlynn Ali, Assistant Secretary for Civil Rights, U.S. Department of Education, at 4 (Apr. 4, 2011) ("Regardless of whether a harassed student * * * files a complaint under the school's grievance procedures * * * , a school that knows, or reasonably should know, about possible harassment must promptly investigate to determine what occurred and then take appropriate steps to resolve the situation.").

    2.    <u>Plaintiffs' allegations do not offer factual support for their erroneous-outcome theory</u>

        Plaintiffs' second theory of discrimination is that their suspensions from the University were based on "flawed proceeding[s]." (Compl. ¶ 58.) To survive a motion to dismiss, "[p]laintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cause some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusuf*, 53 F3d at 715. But "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Id.* The plaintiff must also allege particularized facts showing "a causal connection between the flawed outcome and gender bias." *Id.*; *see also Doe v. Univ. of the South*, 687 F Supp 2d at 756 ("a plaintiff must demonstrate that the conduct of the university in question was motivated by a sexual bias"). A causal connection is typically established by alleging discriminatory "statements by members of the disciplinary tribunal, statements by pertinent university officials,

Page 30 - Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

or patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 53 F3d at 715.

Plaintiffs' claim fails at both elements. The factual allegations asserted in the complaint fail to suggest that plaintiffs' administrative hearing was flawed and do not show a causal connection between the procedures plaintiffs received and their gender or sex. Plaintiffs pleaded the conclusory allegations that the University's investigation and their administrative hearing were flawed. (Compl. ¶¶ 58, 60-64, 66.) Plaintiffs allege (a) that they "did not have an equal or fair opportunity to present relevant witnesses, to present evidence * * *, and to present evidence about the accuser's motives to present false accusations" (Compl. ¶ 64), and (b) that the University "granted the female accuser the presumption of truth" by accepting her statements "at face value." (Compl. ¶ 63.) But as discussed in Section A, plaintiffs voluntarily agreed to the administrative procedures they received, and therefore cannot plausibly allege that these procedures either were inadequate or led to an incorrect outcome.

Even if plaintiffs could establish that the investigation and administrative hearing were flawed (which they cannot), they have not pleaded any factual allegations that the "flaws" in these proceedings were motivated by gender or sex. *See Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at *8 (explaining that allegations of "difficulties getting information, deficiencies in the investigation, limits placed on [plaintiff's] ability to cross-examine witnesses, the exclusion of some documentary evidence [that plaintiff] wished to introduce, and the misuse of witness testimony by the hearing board" as well as allegations of an impartial tribunal were sufficient to cast doubt on the accuracy of the outcome of the hearing, but insufficient to suggest that plaintiff's treatment was because of gender or sex). Plaintiffs' numerous references to their and their accuser's gender establish only that plaintiffs identify as male and their accuser allegedly identifies as a female, but are insufficient to assert the University's motives. *See, e.g.*, Compl. ¶¶ 60-64; *see also Doe v. Columbia Univ.*, 101 F Supp 3d at 371 ("the mere fact that Plaintiff is male and Jane Doe is female does not suggest that the disparate treatment was

Page 31 -  Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

because of Plaintiff's sex").  And plaintiffs' conclusory allegation that the University "granted the female accuser the presumption of truth because she is a female" offers no factual support for the proposition it puts forth (for example, plaintiffs do not even allege that they offered contradictory evidence *during their administrative hearing*—an allegation necessary to support their claim that Weintraub's decision was flawed).  (Compl. ¶ 63.)  Similarly, plaintiffs' assertion that "[t]he University responded to the accuser's accusations with a series of * * * gender-based actions" fails to provide even one example of conduct connected to plaintiffs' gender or sex.  (Compl. ¶ 66.)

       3.    <u>Plaintiffs' factual allegations do not suggest that the University was deliberately indifferent to their rights under Title IX</u>

Plaintiffs' third theory alleges that the University "demonstrated a deliberate and systematic indifference to the rights of each of these Plaintiffs based exclusively upon their gender."  (Compl. ¶ 67.)  "Under the 'deliberate indifference' standard, a plaintiff must 'demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct.'"  *Doe v. Univ. of the South*, 687 F Supp 2d at 756 (quoting *Mallory*, 76 F App'x at 638).  In addition, the defendant's action must be "clearly unreasonable in light of the known circumstances."  *Patterson v. Hudson Area Sch.*, 551 F3d 438, 446 (6th Cir 2009) (internal quotation marks and citations omitted).

Plaintiffs offer only one factual allegation in an attempt to support their theory of deliberate indifference:  the University proceeded with its investigation and hearing despite the District Attorney's decision not to prosecute plaintiffs.  (Compl. ¶ 68.)  As an initial matter, plaintiffs have not sufficiently pleaded that the University engaged in misconduct, which must be established to prevail under a deliberate indifference theory.  Nevertheless, as discussed earlier in this section, the District Attorney's decision not to prosecute plaintiffs neither is admissible evidence nor suggests that the University was deliberately indifferent to plaintiffs' rights.

Page 32 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiffs have therefore failed to plead factual allegations that support their claim, and it should be dismissed.

**C.      Plaintiffs' Equal Protection Claim Should Be Dismissed Because Plaintiffs Do Not Plead Any Factual Allegations That Plausibly Suggest That They Were Treated Differently Because of Their Gender**

   1.      Plaintiffs' factual allegations do not plausibly suggest that they were discriminated against because of their gender or that the Individual Defendants acted with discriminatory intent

Plaintiffs also allege a violation of the Equal Protection Clause, claiming that they were treated "in a disparate manner [and] discriminat[ed] against * * * due to their gender."[12] (Compl. ¶ 87.)  "To succeed on a § 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F3d 736, 740 (9th Cir 2000) (citing *Fed. Deposit Ins. Corp. v. Henderson*, 940 F2d 465, 471 (9th Cir 1991)); *see also Navarro v. Block*, 72 F3d 712, 716 (9th Cir 1995) ("[A] long line of Supreme Court cases make clear that the Equal Protection Clause requires proof of discriminatory *intent* or *motive*.").  Discriminatory motive "is not presumed; there must be a showing of clear and intentional discrimination." *Snowden v. Hughes*, 321 US 1, 8, 64 S Ct 397, 88 L Ed 497 (1944) (internal quotation marks and citations omitted). "'Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.'" *Serrano v. Francis*, 345 F3d 1071, 1082 (9th Cir 2003) (quoting *Maynard v. City of San Jose*, 37 F3d 1396, 1404 (9th Cir 1994)).

Plaintiffs' equal protection claim should be dismissed.  They have not adequately pleaded that the Individual Defendants engaged in discriminatory conduct or that the alleged conduct of the Individual Defendants was motivated by plaintiffs' gender.  In support of their

---

[12] Plaintiffs allege that "[t]hese defendants' conduct deprived the plaintiff[s] of [their] rights under the Fifth and Fourteenth Amendments to the United States Constitution."  (Compl. ¶ 92.)  But equal protection claims do not arise under the Fifth Amendment—only the Fourteenth. *See, e.g.*, *Detroit Bank v. United States*, 317 US 329, 337, 63 S Ct 297, 87 L Ed 304 (1943).

70097529.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

claim of gender discrimination, plaintiffs assert that the Individual Defendants discriminated against plaintiffs by "depriving them of the slightest rights afforded an accused [and] by announcing their guilt to the press before even conducting the slightest investigation, or [having the] opportunity to defend themselves * * *, [and] despite the fact that the Lane County District Attorney's Office * * * declined to prosecute." (Compl. ¶ 87.)

These allegations, however, are insufficient to state an equal protection claim. As discussed in Section A, plaintiffs have failed to plead factual allegations that can plausibly suggest that they were not afforded all required procedural rights. Moreover, even if the court finds that plaintiffs did not receive adequate process, plaintiffs have not pleaded factual allegations to suggest that such process was withheld because of plaintiffs' gender. *See* Section B. Similarly, Gottfredson's May 9 statement that he was "appalled at what he read" cannot plausibly be interpreted as suggestive of gender bias against plaintiffs. The only plausible interpretation of Gottfredson's statement (and the most true to his actual words) is that he found the behavior depicted in the police report—whether or not the University later substantiated that such conduct occurred—to be appalling. Plaintiffs' argument assumes that a reasonable reader would not reasonably have been appalled if the police report had described an alleged sexual assault by three women of a male victim. Finally, as previously discussed, the District Attorney's initial decision not to prosecute plaintiffs neither is relevant to whether plaintiffs violated the University's Student Conduct Code nor sheds light on why the University investigated the complaint of sexual misconduct against plaintiffs—which, as the complaint demonstrates, the University was obligated to do. (Compl. ¶¶ 47-48.)

To the extent that plaintiffs rely on the allegations set forth in their Title IX claim to support their equal protection claim, the claim still falls short of the pleading standard. As discussed in Section B, plaintiffs' Title IX claim fails to include any factual allegations suggestive of gender bias. Instead, plaintiffs merely tack on descriptive statements (e.g., "an accused male student," or "as a male student") and conclusory opinions (e.g., "based exclusively

Page 34 - Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

upon their gender," "because she is female," or "gender-based actions") to their allegations that their procedural rights were violated and the outcome of their administrative hearing was wrong. *See* Compl. ¶¶ 60-63, 66-67.  And plaintiffs' three assertions made "[o]n information and belief" are void of factual support and therefore cannot properly be considered factual allegations. (Compl. ¶¶ 55-57).

2.   <u>The Individual Defendants are entitled to qualified immunity because plaintiffs cannot show that the Individual Defendants violated a clearly established right</u>

The Individual Defendants enjoy qualified immunity from plaintiffs' equal protection claim because plaintiffs' alleged constitutional rights were not clearly established.  As explained in Section A, qualified immunity shields the Individual Defendants from liability unless plaintiffs plead factual allegations to show that the Individual Defendants violated plaintiffs' constitutional rights *and* that these rights were clearly established at the time of the alleged violation.  *al-Kidd*, 131 S Ct at 2080.  The second prong of this analysis "operates at a high level of specificity.  It is insufficient that the broad principle underlying a right is well-established."  *Walker v. Gomez*, 370 F3d 969, 978 (9th Cir 2004).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 US at 202.  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  *Taylor v. Barkes*, ___US ___, 135 S Ct 2042, 2044, 192 L Ed 2d 78 (2015) (internal punctuation and citations omitted).

To overcome the Individual Defendants' entitlement to qualified immunity, plaintiffs must therefore (a) show that it would have been clear to a reasonable university official that the alleged conduct of the Individual Defendants discriminated against plaintiffs based on their gender and (b) plead *nonconclusory* allegations of the Individual Defendants' subjective

Page 35 -  Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

motivation to discriminate against plaintiffs based on their gender.  *Lindsey v. Shalmy*, 290 F3d 1382, 1384-85 (9th Cir 1994).  The Ninth Circuit instructs that courts be careful not to allow claims of unlawful discrimination "to be routinely placed . . . in the hands of the jury."  *Lindsey*, 290 F3d at 1384 (internal quotation marks and citation omitted).  "If the presence of an element of intent too easily defeats a motion to dismiss or a motion for summary judgment, the purposes of qualified immunity that the Supreme Court sought to protect * * * will be frustrated."  *Id.* Plaintiffs cannot make the required showing under this standard.  Plaintiffs cannot plausibly show that it was clearly established that the Individual Defendants' alleged conduct amounted to gender-based discrimination.  And as explained in Section B, plaintiffs do not plead factual allegations that plausibly suggest that the Individual Defendants intentionally treated plaintiffs differently because of their gender.  Thus the Individual Defendants could not have reasonably understood that they violated plaintiffs' constitutional rights.

Specifically, a reasonable university official could not have believed that he or she was acting in a gender-biased manner and violating plaintiffs rights under the Equal Protection Clause by (a) suspending students accused of sexual misconduct on a temporary and emergency basis while the university investigated and adjudicated the allegations, (b) making a public statement opposing sexual violence in the campus community, (c) conducting an administrative hearing according to the procedures agreed to by all parties to the hearing, or (d) not allowing students to appeal the outcome of their administrative hearing when the regulations governing the hearing did not provide for an appeal and the students had affirmatively waived an appeal.  At the time of the Individual Defendant's alleged conduct, no case law in this jurisdiction suggested that such actions constituted gender discrimination, nor would a reasonable university official have considered such conduct to be discriminatory to male students based on their gender.  Additionally, plaintiffs do not plead—nor could they— factual allegations that suggest that the Individual Defendants acted with discriminatory intent.  The

Page 36 -  Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Individual Defendants are accordingly entitled to qualified immunity and dismissal of plaintiffs' equal protection claim.

**D.  Plaintiffs Are Precluded From Relitigating the Validity of Their Administrative Orders and From Asserting Their State Law Claims**

1.  <u>Plaintiffs are precluded from relitigating the validity of their administrative orders under the doctrine of issue preclusion</u>

Plaintiffs' suspensions from the University were final administrative orders, the validity of which cannot be relitigated by this court.  *See* ORS 183.310(6)(b) ("Final order means final agency action expressed in writing.").  The full-faith-and-credit statute, 28 USC § 1738, "requires that [federal courts] give the same preclusive effect to state court judgements as they would be given in the state in which they were rendered."  *Miller v. Cty. of Santa Cruz*, 39 F3d 1030, 1032 (9th Cir 1994) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 US 373, 380, 105 S Ct 1327, 84 L Ed 2d 274 (1985)).  And the Ninth Circuit has explained that "the federal common law rules of preclusion * * * extend to state administrative adjudications of legal as well as factual issues, *even if unreviewed*."  *Miller*, 39 F3d 1030 (emphasis added) (internal quotation marks and citation omitted); *see also Chavez v. Boise Cascade Corp.*, 307 Or 632, 634, 772 P2d 409 (1989) (finding that issue preclusion applies to issues litigated in administrative determinations).  Accordingly, if Oregon law would preclude plaintiffs from relitigating an issue in Oregon state courts, plaintiffs are also precluded here.

Under Oregon law, issue preclusion "arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding."  *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993).  "If a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment."  *Drews v. EBI Companies*, 310 Or 134, 139-40, 795 P2d 531 (1990) (internal quotation marks and citations omitted).  Issue preclusion applies if five criteria are

Page 37 -  Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

satisfied: (a) the issue litigated in the two proceedings is identical, (b) the issue was essential to the final decision in the prior proceeding, (c) the party against whom preclusion is sought had a full and fair opportunity to be heard on the issue, (d) the party against whom preclusion is sought was a party in the prior proceeding, and (e) the prior proceeding was the type of proceeding to which the state court gives preclusive effect. *Nelson*, 318 Or at 104.

Plaintiffs' administrative conference meets the criteria for issue preclusion under Oregon law. The facts and issues litigated in their hearing (which concerned whether plaintiffs violated the University's Student Conduct Code) are identical to facts and issues that plaintiffs will have to raise in this action and were essential to the final decision in their hearing, which satisfies the first and second issue preclusion criteria. As explained previously, plaintiffs do not plead factual allegations that suggest that they were denied the process due in accordance with the regulations for administrative conferences, which was the process they were entitled to receive. Plaintiffs have therefore not adequately pleaded that they were denied a full and fair opportunity to be heard. Finally, there can be no dispute that the fourth and fifth issue preclusion criteria are met in this case: preclusion is sought against plaintiffs, who were each party to the relevant prior proceeding, and plaintiffs' administrative hearing is a type of proceeding to which Oregon law gives preclusive effect. *See Chavez*, 307 Or at 634.

The doctrine of issue preclusion prevents plaintiffs from relitigating their hearing. Plaintiffs raise a due process challenge to their hearing, but the underlying contention of all their claims is that the outcome of their hearing was incorrect. Plaintiffs' Title IX claim—in particular, their erroneous-outcome theory—makes this evident. Based on the doctrine of issue preclusion, plaintiffs should be precluded from asserting any claim or seeking any remedy that is contingent on finding that the outcome of their administrative hearing was flawed. This court is obligated to accept the University's administrative hearing decision as correct.

Page 38 - Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

2. <u>Plaintiffs are precluded from asserting their state law claims because they did not challenge their suspension through a direct appeal, as is required under Oregon law</u>

As previously explained, plaintiffs' suspensions were administrative orders. ORS 183.310(6)(b). In Oregon, the validity of an administrative order cannot be challenged unless the plaintiff appeals the decision through ORS 183.482 or 183.484. Plaintiffs' state law claims are an impermissible attempt to circumvent Oregon statutory law and should be dismissed. In accordance with both ORS 183.482 (jurisdiction for review of contested cases) and ORS 183.484 (jurisdiction for review of orders other than contested cases), a petition for review of an agency order "shall be filed within 60 days only following the date the order" is served. This is the exclusive means for raising a judicial challenge to an administrative order. *See* ORS 183.480(2) ("Judicial review of final orders of agencies shall be solely as provided by ORS 183.482 [and] 183.484 * * *."); *Lake County v. State of Oregon*, 142 Or App 162, 165, 920 P2d 1115 (1996) (collecting cases and explaining that "ORS 183.480(2) and numerous decisions of this court make clear that judicial review of final agency orders shall be solely as provided in the APA"). Here, plaintiffs assert state law violations based on Defendants' alleged conduct in connection with adverse administrative orders—their suspensions—that plaintiffs did not appeal to state court. They are consequently foreclosed from raising their state law claims.

**E. Defendants Are Entitled to Discretionary Immunity From Plaintiffs' Tort Claims Under ORS 30.265**

Defendants are immune from plaintiffs' tort claims under ORS 30.265(6)(c) and (f); these claims should therefore be dismissed. ORS 30.265(6)(c) protects public bodies and their employees from liability for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Under this provision, "discretionary immunity" applies when an official's conduct was "the result of a *choice*, that is, the exercise of judgment; that choice * * * involve[d] public *policy*, as opposed to the routine day-to-day activities of public officials; and the public policy choice [was]

Page 39 - Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

exercised by a * * * person that has * * * the *responsibility* or authority to make it." *Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 419, 39 P3d 931 (2002). Immunity also extends to claims "arising out of an act done or omitted under the apparent authority of law, * * * rule or regulation that is unconstitutional, invalid or inapplicable[,] * * * unless such act was done or omitted in bad faith or with malice." ORS 30.265(6)(f). Therefore, in Oregon, a public defendant (whether a public body or employee) cannot be liable in tort for a decision made under the actual or apparent authority of law, unless that decision was made in bad faith or with malice.

The University is a public body, and all Individual Defendants were, at the time of their alleged actions, employees of the University. Any discretionary decision or action of Defendants made under the apparent authority of law was therefore immune from tort liability. ORS 30.265(6)(f). Plaintiffs plead (in each of their tort claims) that, at all relevant times, all Individual Defendants were "acting within the scope of their agency and employment." (Compl. ¶¶ 99, 103, 109.) Put differently, their decisions and actions were made under the apparent authority of law, and were consequently immune from liability.

Even if the Individual Defendants are not immune from tort liability under ORS 30.265(6)(f), public employees who implement public policy are immune under ORS 30.265(6)(c). *See Westfall v. State ex rel. Oregon Dept. of Corrections*, 355 Or 144, 161, 324 P3d 440 (2014) ("Once a discretionary choice has been made, the immunity follows the choice. It protects not only the officials who made the decision, but also the employees or agents who effectuate or implement that choice in particular cases."). The complaint alleges that Defendants, acting within the course and scope of their employment, (1) investigated a complaint that plaintiffs violated the University's Student Conduct Code, (2) conducted plaintiffs' administrative hearing, and (3) suspended them from school. According to plaintiffs, these were discretionary decisions. Defendants are therefore immune from liability because their decisions involved public policy and were made under the apparent authority of law. *See* ORS 30.265(6)(c), (f).

Page 40 - Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**F.**     **Plaintiffs' Negligence Claim Should Be Dismissed Because They Do Not Allege Physical Injury or Property Damage and, as a Matter of Law, Defendants' Alleged Conduct Did Not Create a Foreseeable Risk of Harm to Plaintiffs**

Plaintiffs rewrap their procedural due process claims in tort, pleading that Defendants negligently investigated the report of sexual misconduct and negligently conducted plaintiffs' administrative hearing.  But plaintiffs cannot state a claim for negligence because they do not allege cognizable damages.  And in any event, the complaint does not plausibly allege that Defendants' conduct caused a foreseeable risk of harm.  In addition, the court should dismiss plaintiffs' claim with respect to Martin, Holmes, and Gottfredson because plaintiffs do not assert that they participated in the allegedly negligent investigation or plaintiffs' hearing.

Page 41 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1.　　　Plaintiffs failed to allege damages cognizable in negligence because no special relationship exists

Plaintiffs' alleged "economic damages in the form of lost income" are not cognizable. (Compl. ¶ 101.) Damages for purely economic loss, including alleged loss of income, cannot be recovered under Oregon negligence law. *Paul v. Providence Health Sys.-Oregon*, 351 Or 587, 593, 273 P3d 106 (2012). Without alleged physical injury or property damage, plaintiffs' negligence claim is effectively a negligent infliction of emotional distress claim, which is not cognizable unless a special relationship exists between the parties. *See Hammond v. Central Lane Communications Center*, 312 Or 17, 22-24, 816 P2d 593 (1991); *Paul*, 351 Or at 597 ("This court consistently has rejected claims for emotional distress damages caused by a defendant's negligence, in the absence of any physical injury[ except] * * * (1) where the defendant intended to inflict severe emotional distress, (2) where the defendant intended to do the painful act with knowledge that it will cause grave distress, *when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself*, and (3) where the defendant's conduct infringed on some legally protected interest apart from causing the claimed distress.") (emphasis added) (internal quotation marks and citations omitted).

A special relationship exists when:

"(1) One party relinquishes control over matters, usually financial, and entrusts them to the other party; (2) [t]he party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) [t]he relationship either is, or resembles, other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship." *Bell v. PERB*, 239 Or App 239, 249-50, 247 P3d 319 (2010) (internal quotation marks and citations omitted).

No special relationship exists between a university and its students. *See Freeman v. Busch*, 349 F3d 582, 587 (8th Cir 2003) (collecting cases and explaining that "since the late 1970s, the general rule is that no special relationship exists between a college and its own

Page 42 -　Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

students because a college is not an insurer of the safety of its students") (emphasis omitted).

Examples of special relationships are "that of physician-patient, counselor-client, or common

carrier-passenger," *Rosenthal v. Erven*, 172 Or App 20, 23, 17 P3d 558 (2001), insurer-insured,

*Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992), and employer-employee,

*McManus v. Auchincloss*, 271 Or App 765, 781, 353 P3d 17 (2015) (citing *Babick v. Oregon*

*Arena Corp.*, 333 Or 401, 413-14, 40 P3d 1059 (2002)). The relationship between a university

and its students does not resemble these relationships, and should not be recognized as a special

relationship because a university is not authorized by its students to exercise independent

judgment on their behalf. *See Bell*, 239 Or App at 249-50; *Shin v. Sunriver Preparatory School,*

*Inc.*, 199 Or App 352, 367, 111 P3d 762 (2005) (A special relationship exists if a """party who is

owed the duty effectively has authorized the party who owes the duty to exercise independent

judgment in the former party's behalf and in the former party's interests. In doing so, the party

who is owed the duty is placed in a position of reliance upon the party who owes the duty

* * *.""") (quoting *Curtis v. MRI Imaging Services II*, 148 Or App 607, 619, 941 P2d 602 (1997)

(quoting *Conway v. Pacific University*, 324 Or 231, 240, 924 P2d 818 (1996))). Plaintiffs

therefore did not have a special relationship with the University or any Individual Defendants, all

of whom were University employees. Because plaintiffs cannot plausibly assert a special

relationship with Defendants, their IIED claim should be dismissed. *See Paul*, 351 Or at 597.

2. <u>As a matter of law, Defendants' alleged conduct did not create a foreseeable risk of harm to plaintiffs</u>

Even if the court considers plaintiffs' negligence claim despite the lack of the

requisite physical injury or property damage, plaintiffs' claim fails for the separate and additional

reason that, as a matter of law, Defendants' alleged conduct did not create a foreseeable risk that

plaintiffs' administrative hearing would be negligently conducted or erroneously decided. In the

absence of a foreseeable risk of harm, Defendants cannot be found negligent. *Chapman v.*

Page 43 - Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

*Mayfield*, 358 Or 196, 361 P3d 566 (2015).  To prove negligence when, as here, there is no

special relationship, a plaintiff must establish five elements:

> "(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is
> to an interest of a kind that the law protects against negligent invasion, (3) that
> defendant's conduct was unreasonable in light of the risk, (4) that the conduct was
> a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons
> and plaintiff's injury was within the general type of potential incidents and
> injuries that made defendant's conduct negligent."  *Solberg v. Johnson*, 306 Or
> 484, 490-91, 760 P2d 867 (1988) (citing *Fazzolari v. Portland School Dist.
> No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987)).

A defendant is not liable for negligence if the defendant's conduct did not

"'unreasonably create[] a foreseeable risk to a protected interest of the kind of harm that befell

the plaintiff.'"  *Dauven v. George Fox Univ.*, No. CV. 09-305-PK, 2010 WL 6089077, at *22 (D

Or Dec. 3, 2010) (quoting *Fazzolari*, 303 Or at 17).  A foreseeable risk "'is one which could have

been anticipated because there was a reasonable likelihood that it could happen.'"  *Chapman*,

358 Or at 206 (quoting *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 609, 469 P2d 783 (1970)).

"[T]he question is whether a reasonable person considering the potential harms that might result

from his or her conduct would 'have reasonably expected the injury to occur.'"  *Id.*  The potential

harm must be of the type "that the defendant knew or should have known" about; the plaintiff's

allegations cannot "describ[e] the type of harm at risk too generally."  *Chapman*, 358 Or at 211.

Plaintiffs fail to plead facts sufficient to show that Defendants' alleged conduct

created a foreseeable risk that their administrative hearing would be negligently conducted or

that such a risk, if foreseeable, was unreasonable given the circumstances.  Plaintiffs bring their

negligence claim against all Defendants but, as explained previously, plead that only Weintraub

participated in their administrative hearing.  Consequently, for plaintiffs to establish the first

element of their claim, they would need to plead facts that suggest that Weintraub knew or

should have known that the hearing procedures were likely to result in an erroneous decision.

Page 44 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

As explained in Section A, plaintiffs agreed to the procedures they received in their hearing.  (Thornton Decl., Exhibit C.)  It is inconsistent for plaintiffs to voluntarily agree to a set of procedures and now complain that these procedures created an unreasonable and foreseeable risk of harm.  It is also not plausible to conclude that Weintraub acted unreasonably in conducting the hearing in the manner consistent with the procedures that plaintiffs elected to receive.  Plaintiffs' claim of negligent conduct during their administrative hearing should be dismissed because they fail to, and cannot plausibly, plead that Defendants' conduct created a foreseeable risk of harm.

In addition, plaintiffs do not allege that Defendants infringed on a legally protected interest.  As explained in Section A, plaintiffs allege that they were deprived of specific procedures that, as a matter of law, they lacked any protected interest in receiving.  The complaint therefore also fails at the second element of negligence.

3.   Plaintiffs failed to provide the requisite notice of their claims concerning the University's investigation

Plaintiffs also assert that Defendants had a "duty to Artis and Dotson to conduct a campus investigation in a competent manner and in accordance with societal standards." (Compl. ¶ 98.)  Plaintiffs, however, did not provide the requisite notice to the University to now raise an allegation concerning the University's investigation.  Because the University is a public body and the Individual Defendants were public employees, the OTCA requires that plaintiffs have provided notice of their claim to the University within 180 days of their alleged injury. ORS 30.260(6).  Specifically, plaintiffs must allege that they placed the University on "actual notice" of the time, place, and circumstances giving rise to that claim.  ORS 30.275.  While plaintiffs were not required to identify the precise legal claims (e.g., negligence) that they intended to assert, they were required to provide notice of the factual basis (time, place, circumstances) that gave rise to the ultimate claim asserted.  *Flug v. University of Oregon*, 335 Or 540, 554, 73 P3d 917 (2003).  The notice required by ORS 30.275 is a substantive condition

Page 45 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

precedent to recovery in tort against a public body. *Orr v. City of Eugene*, 151 Or App 541, 543, 950 P2d 397 (1997).

On October 8 and 9, 2014, the University received Tort Claims Notices from Artis's attorney and Dotson's attorney, respectively. (Thornton Decl., Exhibit E.) (Compl. ¶ 44.) These Tort Claims Notices did not allege the time, place, and circumstances giving rise to plaintiffs' claim for negligent investigation. Plaintiffs cannot prevail on this claim unless they can establish that the University's investigation created a foreseeable risk of harm (in addition to needing to establish that they had a special relationship with Defendants), but plaintiffs' notices did not mention that the University's investigation was allegedly flawed, let alone identify any underlying factual allegations concerning the University's investigation. Consequently, plaintiffs failed to notify the University of the factual basis giving rise to their claim. Nothing in plaintiffs' October 2014 letters put the University on notice that it should have collected evidence relevant to its defense of plaintiffs' negligent investigation claim. One of the purposes of the OTCA's notice requirement is to provide public bodies with the opportunity to promptly collect relevant evidence. *See, e.g.*, *Robinson v. Shipley*, 64 Or App 794, 798, 669 P2d 1169 (1983). Plaintiffs' negligent investigation claim should be dismissed because they did not provide actual notice of their intent to assert this claim, as is required under ORS 30.275.

Nevertheless, the complaint does not include factual allegations concerning the investigation, other than mentioning that a University student (who, according to plaintiffs, was not present for all the events in question) allegedly gave an investigator information that contradicted parts of the police report. (Compl. ¶ 30.) Plaintiffs have therefore failed to plead facts sufficient to support their claim that the University's investigation was negligently conducted. Their claim should be dismissed.

Page 46 -  Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## G. Plaintiffs' IIED Claim Should Be Dismissed Because, as a Matter of Law, Defendants' Alleged Conduct Did Not Transgress the Bounds of Socially Tolerable Conduct

The court should dismiss plaintiffs' IIED claim for essentially the same reason that plaintiffs' substantive due process claim fails. Defendants' alleged conduct did not, as a matter of law, transgress the bounds of socially tolerable behavior, and plaintiffs did not have a special relationship with Defendants, which is typically necessary to find liability for IIED. *See McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995) (elements of IIED); *Delaney v. Clifton*, 180 Or App 119, 130, 41 P3d 1099 (2002) (necessity of special relationship).

To prove IIED, a plaintiff must establish that "'(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.'" *McGanty*, 321 Or at 543 (quoting *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000 (1989)).

Whether a defendant's alleged conduct "amounts to an actionable outrageous transgression of social norms is a fact-specific, case-by-case determination," *McManus*, 271 Or App at 781 (citing *Lathrope-Olson v. Dept. of Transportation*, 128 Or App 405, 408, 876 P2d 345 (1994)), that is "based on the totality of the circumstances," *House v. Hicks*, 218 Or App 348, 358, 179 P3d 730 (2008). But "[i]t is a question of law whether * * * defendants' conduct constitutes 'extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior.'" *Tenold v. Weyerhaeuser Co.*, 127 Or App 511, 517, 873 P2d 413 (1994), *rev dismissed*, 321 Or 561 (1995) (quoting *Hall v. The May Dept. Stores*, 292 Or 131, 137, 637 P2d 126 (1981)), *overruled on other grounds by Patrick v. State of Oregon*, 178 Or App 97, 36 P3d 976 (2001). Only conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'" establishes a sufficiently outrageous transgression. *House*, 218 Or App at 358 (quoting Restatement (Second) of Torts § 46 cmt d (1965)).

Page 47 -  Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

In analyzing whether the allegedly distressing conduct is sufficiently outrageous, "the most important [factor] is whether the parties are in a special relationship." *Marquez v. Harper Sch. Dist. No. 66*, No. CV-09-1254-SU, 2011 WL 2462035 at *19 (D Or Mar. 24, 2011) (citing *McGanty*, 321 Or at 547-48). "In fact, the lack of such a relationship generally defeats a conclusion that the conduct is actionable through an IIED claim." *Delaney*, 180 Or App at 130.

In light of these standards, the court can evaluate Defendants' alleged conduct as a matter of law. *Tenold*, 127 Or App at 517 (quoting *Hall*, 292 Or at 137). As pleaded, Defendants' actions did not constitute an extraordinary transgression of the bounds of socially tolerable conduct, exceed the farthest reaches of socially tolerable behavior, or go beyond all possible bounds of decency.

Plaintiffs allege that Weintraub is liable for conducting plaintiffs' administrative hearing according to the mutually agreed-upon process. As previously discussed, plaintiffs provided their consent to an administrative conference (and waived all rights they had to other procedures). (Thornton Decl., Exhibit C.) Thus, it was not "an extraordinary transgression of the bounds of socially tolerable conduct" for Weintraub to conduct plaintiffs' hearing in accordance with the administrative conference procedures provided at OAR 571-021-0205. And plaintiffs have not sufficiently pleaded that Weintraub failed to follow any of these procedures.

Plaintiffs' claims against Martin, Gottfredson, and Holmes should also be dismissed because it did not exceed the farthest reaches of socially tolerable behavior (1) for Martin to place plaintiffs on emergency suspensions while the University conducted an investigation into plaintiffs' then-alleged misconduct, (2) for Gottfredson to comment publicly in response to public safety concerns and serious (and already public) allegations of criminal misconduct involving several University students, or (3) for Holmes allegedly not to respond to plaintiffs' request for an appeal, when plaintiffs had no right to an appeal.

Defendants' conduct was not offensive by any objectively reasonable measure. Moreover, as explained in Section F, plaintiffs did not have a special relationship with

Page 48 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Defendants. *See Delaney*, 180 Or App at 130. Accordingly, plaintiffs' claim should be dismissed with regard to all Defendants.

**H.**   **Plaintiffs Cannot State a Claim for Tortious Interference With Prospective Economic Advantage Because They Fail to Allege a Relationship With the NBA and Failed to Provide the Required Notice of This Claim to the University**

Plaintiffs' sixth claim is for "intentional interference with prospective economic relations." But Oregon courts do not recognize a tort for interfering with "prospective economic relations." Oregon courts do, however, recognize a tort for interfering with "prospective economic advantage." *Allen v. Hall*, 328 Or 276, 281, 974 P2d 199 (1999). This distinction is not semantic. It is a substantive distinction affecting what types of relationships are protected from third-party interference. Accordingly, a plaintiff may recover for economic losses stemming from interference with an existing business relationship, but not for speculative economic losses stemming from interference with a nonexistent business relationship, as plaintiffs seek to do here.

Plaintiffs allege that Defendants "intentionally, recklessly, and tortiously interfered with each [plaintiff's] relationship with NBA teams" through "improper means" and with an "improper purpose." (Compl. ¶ 109.) To prevail on this claim, plaintiffs must prove six elements:

> "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty*, 321 Or at 535.

Plaintiffs' claim should be dismissed because they cannot plausibly establish any element of the tort. Also, this claim should be dismissed on the separate and additional ground that plaintiffs failed to provide adequate notice of this claim to the University, as required by the OTCA.

Page 49 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1. <u>Plaintiffs do not allege existing business relationships with NBA teams, which is necessary to recover for the intentional interference with a prospective economic advantage</u>

Plaintiffs fail to allege facts that plausibly meet the substantive elements of this claim. To satisfy the first element, each plaintiff must show the existence of "a *voluntary relationship* with another party that would have very likely resulted in a pecuniary benefit for the plaintiff but for the defendant's interference." *Cron v. Zimmer*, 255 Or App 114, 127, 296 P3d 567 (2013) (emphasis added). This is because the tort "protects the expectation [that a] relationship will produce the desired benefit, not '"the more speculative expectation that a potentially beneficial relationship will arise."'" *Sole Energy Co. v. Petrominerals Corp.*, 26 Cal Rptr 3d 798, 821 (Ct App 2005) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P3d 937, 957 (Cal 2003) (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 49 Cal Rptr 2d 793, 804 (Ct App 1996))). Plaintiffs must also allege that Defendants had knowledge of plaintiffs' claimed business relationships. *See Erlandson v. Pullen*, 45 Or App 467, 472, 608 P2d 1169 (1980) ("plaintiff's complaint states the necessary elements" because he pleads that defendant "had knowledge of []his developing relationship").

Oregon courts do not permit tort recovery for alleged interference with a hypothetical business relationship. Though a plaintiff need not have a contractual relationship with a third party to recover for tortious interference, the plaintiff and the third party must—at the least— have a preexisting relationship in which the third party has more than an abstract intention to provide the plaintiff with a pecuniary benefit. In *McGanty*, the Oregon Supreme Court explained that the tort of intentional interference with economic relations "serves as a means of protecting contracting parties against interference with their contracts from outside parties." 321 Or at 536 (emphasis omitted). For example, in *Cron*, the plaintiffs and the defendant were siblings. Their mother died intestate, and her widower inherited her mineral rights to a piece of real property. The widower then sold this land to the defendant for one

Page 50 -  Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

dollar, allegedly with the intent that the defendant would create a family trust to distribute proceeds from the mineral rights to all the siblings. The defendant failed to do this, and her siblings sued. Relying on evidence of the plaintiffs and widower's prior discussions (which confirmed the widower's intent to distribute the proceeds to the plaintiffs), the court concluded that the plaintiffs and the widower had established a "voluntary relationship" that "would have very likely resulted in pecuniary benefit to the plaintiff[s] but for the defendant's interference," thereby meeting the requirement of the "existence of an economic relationship." 255 Or App at 127 (internal quotation marks and citation omitted); *see also, Straube v. Larson*, 287 Or 357, 360, 600 P2d 371 (1979) (finding that a preexisting relationship between a hospital and physicians who contract with the hospital is a business relationship within the scope of intentional interference with economic relations).

In contrast to the plaintiffs in *Cron*, *McGanty*, and *Straube*, plaintiffs here do not allege and cannot allege the existence of voluntary, preexisting relationships with NBA teams. Plaintiffs' pleadings allege their desire to play in the NBA and their potential to do so, but plaintiffs do not assert that they had business relationships with NBA teams at the time of their alleged injury[13] or that, even if they did, Defendants were aware of these relationships, as plaintiffs are required to allege. Plaintiffs' claim for intentional interference with economic relations should be dismissed because they have failed to plead that they had business relationships with the NBA or that Defendants had knowledge of such relationships.

2. <u>Plaintiffs do not allege sufficiently likely prospective business relationships with NBA teams to recover in tort</u>

Even if the court rules that plaintiffs may assert their claim based on their contention that they were going to play professional basketball (without requiring plaintiffs to

---

[13] Plaintiffs' allegation is akin to a highly academically successful high school senior's alleging that Harvard has interfered with her business relationship with Yale Law School (or a specific law firm) by denying her admission as an undergraduate.

Page 51 - Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

allege existing business relationships or that Defendants knew of these relationships), plaintiffs cannot recover because they cannot plausibly allege that it was "very likely" that they would receive NBA contracts. *See Cron*, 255 Or App at 127 (the pecuniary advantage must be "very likely"); *see also Klein v. Grynberg*, 44 F3d 1497, 1506 (10th Cir 1995) ("a protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope").

Plaintiffs cannot establish that their entering into business relationships with NBA teams is "very likely" to occur merely by asserting their hope of playing professional basketball or by concluding that they were "widely projected to be selected in the NBA draft." (Compl. ¶ 42.) As a matter of law, plaintiffs' claim that they will have careers as NBA players is "far too speculative" to establish prospective business relationships. *Parish v. NCAA*, 506 F2d 1028, 1034 n.17 (5th Cir 1975); *see also Hawkins v. NCAA*, 652 F Supp 602, 611 (CD Ill 1987) ("future professional [sports] careers are mere expectations"); *McAdoo v. Univ. of N.C. at Chapel Hill*, 736 SE2d 811, 822 (NC Ct App 2013) (rejecting plaintiff's claims of damages for diminished "subsequent earnings as an NFL football player" and explaining that "when disappointed student-athletes have presented similar arguments to courts, both in this state and elsewhere, these claims for damages have been rejected as speculative"). Plaintiffs' claimed relationships with NBA teams is purely speculative at this point and does not rise to the level of factual plausibility.

3.   <u>Plaintiffs' allegations fail to support their conclusory statements that Defendants acted intentionally and with an improper purpose or by improper means</u>

Plaintiffs cannot plausibly allege that Defendants intentionally caused them injury, or that Defendants acted with improper means or for an improper purpose. "The burden of proof rests with a plaintiff to show both that a defendant intentionally interfered with the plaintiff's economic relationship and that the defendant had no privilege to do so." *Northwest Natural Gas Co. v. Chase Gardens, Inc*, 328 Or 487, 499, 982 P2d 1117 (1999) (citing *North*

Page 52 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Pacific Lbr. v. Moore*, 275 Or 359, 369, 551 P2d 431 (1976); *see also Straube*, 287 Or at 361 ("[P]laintiff must not only prove that defendant intentionally interfered with his business relationship but also that defendant * * * interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury * * *."). "[I]f liability in tort is to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff as such. And, if liability in tort is based on an actor's means, then the means must violate some objective, identifiable standard * * *." *Northwest Natural*, 328 Or at 498 (internal quotation marks and citation omitted).

Plaintiffs plead that Defendants "intentionally" interfered with their alleged relationships with NBA teams. (Compl. ¶ 109.) Yet plaintiffs do not plead any facts that make such a conclusion plausible. And no such facts exist. Plaintiffs do not contend that Defendants were even aware of plaintiffs' alleged business relationships with the NBA, and it would be impossible for Defendants to intentionally interfere with relationships that they did not know existed. *See Erlandson*, 45 Or App at 472. Further, the facts alleged confirm that the only plausible interpretation of Defendants' actions is that they were motivated by the intention (a) to determine whether plaintiffs violated the University's Student Conduct Code and (b) if the allegations against plaintiffs were substantiated, to determine an appropriate and lawful educational sanction.

Plaintiffs also pleaded that Defendants "engineer[ed] an unconstitutional 'sham court' hearing of the very worst order." (Compl. ¶ 35.) But plaintiffs' labeling their administrative hearing a "sham court" does not allege that Defendants acted with improper means. Again, following the agreed-upon procedures, Weintraub evaluated the evidence presented at plaintiffs' hearing and determined that plaintiffs had violated the Student Conduct Code. Weintraub cannot be said to have acted with "improper means" by conducting a hearing according to the agreed-upon procedures just because he reached decisions that were adverse to plaintiffs (decisions that this court is precluded from reviewing). *See Straube*, 287 Or at 361 ("a

Page 53 - Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

case is made out which entitles plaintiff to go to a jury only 'when interference resulting in injury to another is wrongful by some measure beyond the fact of the [alleged] interference itself'") (quoting *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 209, 582 P2d 1365 (1978)).

       4.    <u>Plaintiffs failed to provide adequate notice of their claim, as required under the OTCA</u>

As discussed in Section F, the OTCA requires that plaintiffs provide "actual notice" of their claims to the University within 180 days of their alleged injuries, ORS 30.260(6), including the time, place, and circumstances giving rise to plaintiffs' claims. ORS 30.275. "Actual notice" is a substantive condition precedent to recovery in tort against the University. *See Orr*, 151 Or App at 543.

Plaintiffs' Tort Claims Notices did not allege the time, place, and circumstances that give rise to their claim for tortious interference with prospective economic advantage.[14] To prevail on this claim, each plaintiff must establish the existence of a professional or business relationship with the NBA, but neither plaintiff's notice mentioned this alleged business relationship, much less the time and place of its creation, duration, or circumstances. Plaintiffs therefore failed to notify the University of the factual basis giving rise to their claim. Because plaintiffs did not provide "actual notice" to the University that it should have collected evidence relevant to its defense of plaintiffs' claimed relationships with the NBA, their tortious interference claim should be dismissed, as is required under ORS 30.275. *See Robinson*, 64 Or App at 798.

---

[14] Plaintiffs' Tort Claims Notices instead allege that plaintiffs engaged in consensual sexual activity, that the Lane County District Attorney elected not to prosecute plaintiffs, that the University's President made a public statement about the allegations against plaintiffs, that plaintiffs' were dismissed from the basketball team, and that the University allegedly failed to conduct a fair administrative hearing. Plaintiffs each additionally claim that his "educational plans and ability to continue his *career as a collegiate basketball player* have been all but terminated." (Thornton Decl., Exhibit E) (emphasis added.) Neither plaintiff's notice mentions the NBA.

Page 54 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiffs' claim for intentional interference with prospective economic advantage should be dismissed. Plaintiffs failed to plead facts that could plausibly establish that (a) they had existing relationships with NBA teams, (b) Defendants were aware of these alleged relationships and acted with the intent of causing injury to these relationships and by an improper means or motive, and (c) plaintiffs gave adequate notice of their claim under the OTCA. Furthermore, plaintiffs cannot plausibly allege that Defendants' conduct was the "but for" cause of plaintiffs' claimed injuries or that they have sustained any monetary damages, which are both required to prove this claim.

## I.   Plaintiffs' Claims for Economic Damages in Tort Should Be Dismissed Because, as a Matter of Law, Their Allegations Are Too Speculative to State a Claim

With respect to plaintiffs' negligence and tortious interference claims, plaintiffs have not yet incurred any of the economic damages they assert, and they will not plausibly be able to prove that they are likely to sustain these damages as a result of Defendants' alleged conduct. Oregon law permits economic damages for the impairment of future income, but only when a plaintiff has sustained "objectively verifiable monetary losses." ORS 31.710(2)(a). Oregon courts have interpreted the term "objectively verifiable losses" to mean losses that are "capable of confirmation by reference to empirical facts." *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 160, 20 P3d 837 (2001) (emphasis, internal quotation marks, and citation omitted). A plaintiff need not prove with mathematical precision the amount of economic damages sustained, *see Brown v. Zimbrick Logging*, 273 Or 463, 468, 541 P2d 1388 (1975), but a plaintiff must prove that damages were in fact sustained or are reasonably certain to be sustained, *see Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F3d 353, 366 (9th Cir 2005) ("[U]ncertainty which prevents a recovery is uncertainty as to the fact of damage and not as to its amount.") (emphasis, internal quotation marks, and citation omitted); *see also McAdoo*, 736 SE2d at 822 (alleged damages to student-athletes' prospective professional sports careers are not recoverable because they are not reasonably certain).

Page 55 -  Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiffs plead, in their negligence and tortious interference claims, that "each plaintiff is likely to sustain economic damages in the form of lost income." (Compl. ¶¶ 95, 111.) These claimed damages arise out of plaintiffs' assertion that as a result of Defendants' allegedly wrongful actions, they have "diminished chances of playing in the NBA." (Compl. ¶ 43.) Their claims do not, therefore, rise to the level of "objectively verifiable losses" that are "capable of confirmation by reference to empirical facts." *Kahn*, 173 Or App at 160 (emphasis, internal quotation marks, and citation omitted). As an initial matter, plaintiffs do not plead facts supporting their conclusory statement that their chances of NBA careers have been diminished.[15] More fundamentally, however, the concept of "diminished chances" of a prospective professional sports career is not amenable to tort liability. The facts of plaintiffs' case prove the point. At the time of their complaint, plaintiffs were only 21 years old. (Compl. ¶ 2.) Plaintiffs do not claim that Defendants' allegedly wrongful conduct made them ineligible to enter the NBA draft or to sign with NBA teams as free agents. If plaintiffs are selected in a future NBA draft or otherwise earn a spot on an NBA roster, they will not suffer any economic damages as the result of their allegedly "diminished chances" of playing professional basketball. If plaintiffs are permitted to recover economic damages based on their diminished chances of NBA careers and later become NBA players, they will in essence be paid twice.

To prove their damages, plaintiffs would also have to show that they would have had NBA careers but for Defendants' conduct. The court should refrain from making this evaluation, as other jurisdictions have done. *See McAdoo*, 736 SE2d at 822. A court of law cannot, with any reasonable degree of certainty, evaluate plaintiffs' prospects of having

---

[15] In fact, even plaintiffs' allegations regarding their current colleges are incorrect. The complaint asserts that "[a]s a direct and proximate result of defendants' [alleged] conduct, plaintiffs no longer play at a Division I school." (Compl. ¶ 43.) Each plaintiff, however, appears to play basketball at a Division I school. *See* http://www.utepathletics.com/sports/m-baskbl/mtt/dominic_artis_977894.html *and* http://www.ncaa.com/schools/utep (Dominic Artis); http://www.uhcougars.com/sports/m-baskbl/mtt/damyean_dotson_971425.html *and* http://www.ncaa.com/schools/houston (Damyean Dotson).

Page 56 - Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

professional basketball careers. Nor could it evaluate whether Defendants' alleged actions—not other relevant factors, for example, the national news media's coverage of the police report filed against plaintiffs—may hypothetically keep plaintiffs out of the NBA.

Plaintiffs have not yet suffered economic damages, and they cannot plausibly allege that they are reasonably certain to sustain them as a result of Defendants' allegedly wrongful conduct. Their claims for economic damages in tort should be dismissed.

## J. Plaintiffs Fail to State a Claim for Breach of Contract, and Plaintiffs Allege No Cognizable Damages

Plaintiffs allege that the University breached the express terms of its contract with each of them and the implied covenant of good faith and fair dealing by not renewing plaintiffs' athletic scholarships beyond spring quarter 2014. But the University fulfilled its obligations under plaintiffs' scholarships and had no additional contractual obligations to them. The express terms of a contract detail "the specific obligations that each party owes the other." *Conway*, 324 Or at 237. In addition to these terms, "[t]he law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates the reasonable contractual expectations of the parties." *U.S. National Bank v. Boge*, 311 Or 550, 567, 814 P2d 1082 (1991) (internal quotation marks and citations omitted). This duty, however, "does not vary the substantive terms of the bargain * * *, nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute." *Id.*

Plaintiffs claim that they "had the objectively reasonable expectation, based upon the express terms of the contractual relationship governing the athletic scholarship, that the University of Oregon would renew their scholarship[s]." (Compl. ¶ 114.) But this contradicts the terms of their scholarship agreements. The express terms of plaintiffs' contracts explain that plaintiffs would receive their scholarships for the 2013-2014 school year, but did not guarantee renewal for the 2014-2015 school year. In fact, plaintiffs' scholarships expressly provide that

Page 57 - Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

"[f]ailure to adhere to University of Oregon, Athletic Department, or team rules may result in immediate termination of athletics aid," demonstrating not only that plaintiffs' scholarships could be nonrenewed for any number of reasons, but also that their scholarships could be immediately terminated under certain circumstances.

The University fulfilled its contractual obligations to plaintiffs by providing them with all contractual benefits due through the expiration of their fixed-term scholarships. Plaintiffs do not plead that the University revoked their scholarships or failed to provide them with any benefit due during the duration (one academic year) of their scholarships. Plaintiffs plead only the conclusory statement that the University breached its contracts with plaintiffs, but do not plead any facts identifying how the University allegedly breached these agreements. Their claim should therefore be dismissed. *See Ross v. Creighton Univ.*, 957 F2d 410, 416-17 (7th Cir 1992) (explaining that for a student-athlete to allege a breach of contract based on a scholarship, the plaintiff "must point to an identifiable contractual promise that the defendant failed to honor").

Even if plaintiffs demonstrate a breach of contract (which they cannot), the complaint overstates what damages are available to plaintiffs. Damages for breach of contract are limited to plaintiffs' "expectation interest." *Zehr v. Haugen*, 318 Or 647, 658, 871 P2d 1006 (1994) (citing *Nelson Equip. Co. v. Harner*, 191 Or 359, 369, 230 P2d 188 (1951)). Here, plaintiffs' expectation interest is, at most, the value of their athletic scholarships, not their hypothetical NBA contracts. Plaintiffs, however, allege damages for losses that they "expect[] to sustain," but have yet to incur. (Compl. ¶ 117.) But loss of future income based on a breach of contract is recoverable only if the alleged future income "'ordinarily follows the breach of such a contract in the usual course of events, or [if] reasonable men in the position of the parties would have foreseen [the future loss] as a probable result of breach.'" *Cont. Plants v. Measured Mkt*, 274 Or 621, 626, 547 P2d 1368 (1976) (quoting 5 *Corbin on Contracts* § 1010, at 79 (1964)). As discussed previously in Sections H and I, plaintiffs' hypothetical NBA contracts (and thus

Page 58 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

their alleged future loss of income) are speculative, not probable.  Furthermore, plaintiffs must allege that their claimed losses were in fact foreseeable.  *Doyle v. Oregon Bank*, 94 Or App 230, 234, 764 P2d 1379 (1988).  Plaintiffs did not, and cannot plausibly, allege that their losses were foreseeable.  Their claim should therefore be dismissed for this additional reason.

## IV.    CONCLUSION

Whether or not plaintiffs' chances of playing professional basketball were diminished by their suspensions, the University and its employees are not liable for suspending plaintiffs after they were found to have violated the Student Conduct Code by committing acts of sexual misconduct.  Plaintiffs' claims seek remedy in constitutional law for alleged injuries to constitutional rights that do not exist, for review of an administrative order that is precluded from judicial review, for remedy in constitutional and federal statutory law for gender and sex discrimination without alleging any facts that show such bias, for remedy in tort for alleged relationships that did not exist, and for remedy in contract law for scholarship agreements that were not breached, and their claims are premised on damages that have not been incurred.  In addition, Defendants are entitled to discretionary immunity.  Defendants ask the court to dismiss the complaint.

DATED this 2nd day of May, 2016.

MILLER NASH GRAHAM & DUNN LLP

*/s/ Michelle Barton Smigel*

Michelle Barton Smigel, P.C., OSB No. 045530
michelle.smigel@millernash.com
Michael Porter, P.C., OSB No. 003560
mike.porter@millernash.com
Telephone:  503.224.5858
Fax:  503.224.0155

*Attorneys for Defendants*

Page 59 -  Defendants' Motion to Dismiss and Memorandum in Support

70097529.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

I hereby certify that I served the foregoing Defendants' motion to dismiss and memorandum in support on:

Mr. Brian Michaels
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon  97401
Telephone:  (541) 687-0578
E-mail:  brian@brianmichaelslaw.com

Mr. Alex B. Spiro (admitted *pro hac vice*)
Brafman & Associates, P.C.
767 Third Avenue, 26th Floor
New York, New York  10017
Telephone:  (212) 750-7800
E-mail:  aspire@braflaw.com

*Attorneys for Plaintiffs Dominic Artis and
Damyean Dotson*

by the following indicated method or methods on the date set forth below:

☒    **CM/ECF system transmission.**

☐    **E-mail.**  (Courtesy copy.)

☐    **Facsimile communication device.**

☐    **First-class mail, postage prepaid.**

☐    **Hand-delivery.**

☐    **Overnight courier, delivery prepaid.**

DATED this 2nd day of May, 2016.

*/s/ Michelle Barton Smigel*
Michelle Barton Smigel, P.C., OSB No. 045530

*Of Attorneys for Defendants*

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204