**Michelle Barton Smigel, P.C.**, OSB No. 045530
michelle.smigel@millernash.com
**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| DOMINIC ARTIS and DAMYEAN DOTSON, | Case No.: 6:16-cv-00647-MC |
| Plaintiffs, | DECLARATION OF LISA THORNTON IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |
| v. | |
| UNIVERSITY OF OREGON; SANDY WEINTRAUB; CHICORA MARTIN; ROBIN HOLMES; and MICHAEL R. GOTTFREDSON, | |
| Defendants. | |

I, Lisa Thornton, hereby declare as follows:

1.    I am the Public Records Officer for the University of Oregon. I am a duly-authorized custodian at the University of Oregon of the attached records. I have the authority to certify the attached records.

Page 1 -    Declaration of Lisa Thornton in Support of Defendants' Motion to Dismissal

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE 503.224.5858
3400 U S BANCORP TOWER
111 S.W FIFTH AVENUE
PORTLAND, OREGON 97204

2. The attached records are true copies of the records and were created at or near the time of the act, condition, or event described or referred to in them.

3. The attached records were prepared or received and kept by the University of Oregon, or persons acting under its control, in the ordinary course of regularly conducted business.

4. Attached as Exhibit A are copies of plaintiffs' signed scholarships.

5. Attached as Exhibit B is a copy of the text of President Gottfredson's public statement made on May 9, 2014.

6. Attached as Exhibit C is a copy of an e-mail sent by Greg Veralrud to Douglas Park on or around May 28, 2014, and a copy of a "Special Choice Resolution Form" signed by Damyean Dotson dated June 19, 2014.

7. Attached as Exhibit D are copies of hearing decision letters from Sandy Weintraub to plaintiff Dominic Artis (with the subject "Regarding Case: 00516-003-2014") and to plaintiff Damyean Dotson (with the subject "Regarding Case: 00516-001-2014"), dated June 20, 2014.

8. Attached as Exhibit E are redacted copies of Artis's and Dotson's "Tort Claims Notices" dated October 8, 2014, and October 9, 2014, respectively.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this _____ day of May, 2016, in Eugene, Oregon.

Lisa Thornton

Page 2 - Declaration of Lisa Thornton in Support of Defendants' Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE 503 224 5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

29 May 2013



Dominic Artis

   **REDACTED**

Dear Dominic:

This letter is to officially notify you that your University of Oregon athletic scholarship was renewed for the 2013-2014 academic year. Renewal is contingent upon normal academic progress towards graduation and continued eligibility as mandated by NCAA and Pac-12 regulations. Your athletic scholarship will be as follows:

**Full athletic scholarship consisting of tuition and compulsory fees, a subsistence grant covering the cost of room and board at campus rates, and the provision of required course-related books.**

If you receive other countable aid that increases the value of the equivalency (listed above) counting toward NCAA team financial aid limitations, your athletics scholarship or other countable aid may be reduced or cancelled to maintain compliance with applicable NCAA regulations. If your athletics aid is less than the amount of your other countable aid, you may decline your athletics aid.

Failure to adhere to University of Oregon, Athletic Department, or team rules may result in immediate termination of athletics aid. NCAA Bylaw provisions applicable to your acceptance and retention of financial assistance are cited on the reverse side of this letter.

Best wishes for an upcoming successful year.

      Cordially,

      Rob Mullens
      Director of Athletics

      James Brooks
      Director of Financial Aid

> By signing and dating below, I, the individual this letter is addressing, hereby acknowledge both 1) receipt of this written notification on the date below and prior to July 1, 2013 and 2) my understanding of the status of my athletics aid at the University of Oregon for the 2013-14 academic year.
>
> Signature: _____ Date: 6/28/13

Len Casanova Athletic Center • 2727 Leo Harris Parkway • Eugene, Oregon 97401 8833 • (541) 346-4481 Fax (541) 346-5031

29 May 2013



Damyean Dotson

**REDACTED**

Dear Damyean:

This letter is to officially notify you that your University of Oregon athletic scholarship was renewed for the 2013-2014 academic year. Renewal is contingent upon normal academic progress towards graduation and continued eligibility as mandated by NCAA and Pac-12 regulations. Your athletic scholarship will be as follows:

**Full athletic scholarship consisting of tuition and compulsory fees, a subsistence grant covering the cost of room and board at campus rates, and the provision of required course-related books.**

If you receive other countable aid that increases the value of the equivalency (listed above) counting toward NCAA team financial aid limitations, your athletics scholarship or other countable aid may be reduced or cancelled to maintain compliance with applicable NCAA regulations. If your athletics aid is less than the amount of your other countable aid, you may decline your athletics aid.

Failure to adhere to University of Oregon, Athletic Department, or team rules may result in immediate termination of athletics aid. NCAA Bylaw provisions applicable to your acceptance and retention of financial assistance are cited on the reverse side of this letter.

Best wishes for an upcoming successful year.

Cordially,

Rob Mullens
Director of Athletics

James Brooks
Director of Financial Aid

By signing and dating below, I, the individual this letter is addressing, hereby acknowledge both 1) receipt of this written notification on the date below and prior to July 1, 2013 and 2) my understanding of the status of my athletics aid at the University of Oregon for the 2013-14 academic year.

Signature: _____  Date: **6-26-13**

Len Casanova Athletic Center  •  2727 Le Harris Parkway  •  Eugene, Oregon 97401-8815  •  (541) 346-4431  Fax (541) 346-5911

The Office of the
# Pı sident

# President Gottfredson's statement to media regarding sexual violence

*President Go f dson made the following statem t at a press conference on the University of Oregon campus alled for 11:00 a. . PDT on Friday May 9, 2014. Full text of the president's remarks is below.*

**Error setting up player: Missing license key**



Sexual vi ence assau t nd s ra ment ve no place on our campus or anywhere in our communit Non . .

The type of behavior in the police report released this week is utterly unacceptable and will not be tolerated.

I understand and empathize with the outrage people feel — as a father, I was appalled at what I read. As president of this university, I am angry and disappointed over this profoundly disturbing incident.

As you know, there are many details of this case that we cannot talk about. We can not discuss the specifics of this case, or any other case involving students. I know it's frustrating, and we would like to say more, but we are not going to violate the laws that are in place to protect students' privacy or the rights of our students — *especially* the survivor.

Here is what I *can* tell you:

- When the university was made aware of the incident, we immediately began our investigation and activated our established process of support and service. *Immediately.*
- We cooperated completely with law enforcement. The Eugene Police Department requested we not do anything that might hinder their criminal investigation—including suspending players or not playing them in a game. We complied fully with that request, and appropriately so.
- That does not mean we did nothing during that time. It simply means that we refrained, at the request of Eugene Police, from doing anything that might have alerted the persons the police told us not to alert to the investigation. Throughout, we continued to follow other steps of our regular process of investigation, and to provide support services, as we do for all such matters.
- We received the police report on April 24. That enabled us to take action without jeopardizing a criminal investigation. Not all actions the university takes are disclosable. However, working with the UO Athletic Department, we took the following action: The three student-athletes were suspended. They will not be playing basketball at Oregon again.
- We have, and we will continue, to pursue all appropriate action in this case. We have clear, established policies and protocols that we follow in all such cases.
- When and if we can share additional information, I assure you we will.

In the meantime, it is my great hope that we, as a university community, will take this opportunity to address the broader issues of sexual violence and harassment directly, openly, and decisively.

As a community, we need to engage in frank, productive discussions that will help eradicate such violence from our campus. Because even one instance of sexual assault in our community is too many.

Over the past few days, I have talked with students all across campus, to hear their feelings and concerns. Yesterday, I met with faculty members of the UO Coalition to End Sexual Violence, to gain their perspective and talk about how the campus can most effectively work together to end sexual violence in our community.

We have great expertise on our faculty, and we will draw on that and turn to them to help improve our response, support, and prevention practices.

We have a student body of caring, conscientious young people who want a safe and respectful community.

We will do whatever it takes to create a safe, secure environment for all our students, and foster a culture of respect and shared values on our campus. Our university will not tolerate behavior that runs counter to these values.

I am encouraged by the attention the problem of sexual assault on college campuses has received recently on a national level, as outlined in the recent report (http://www.whitehouse.gov/sites/president2.uoregon.edu/files/docs/report_0.pdf) from the White House Task Force to Protect Students from Sexual Assault. This is an important step toward the kinds of deep cultural change that must take place to stop such violence on our campuses.

But the actions taking place nationally are not nearly enough. We must address this problem here on our own campus and within our own community. We must take this opportunity to rise above the fray and become leaders in the fight to eradicate sexual violence from college campuses, beginning with our own.

Last fall, we commissioned an external review of our sexual misconduct policies and protocols, and we have already implemented or are in the process of implementing all of the recommendations of that report (http://vpsa.uoregon.edu/wp-

content/uploads/2014/05/Independent-Review-Sexual-Violence-Policies-and-Procedures.pdf)including adding staff to support students who have experienced sexual violence. We have that report available for you.

Next week, I will announce details of an additional independent review I have ordered jointly with our Athletic Director and Vice President for Student Affairs to examine our practices for preventing and responding to sexual violence. We will appoint an independent panel, whose charge will include an examination of our athletic department's recruitment practices, and a campus climate survey to learn more about the culture of our own campus community when it comes to sexual violence and harassment.

Our students' safety and security is our top priority. We have strong policies and protocols in place, and we are working to make them stronger still.

Until we have a campus where every individual feels safe, where everyone is respected, and where no instance of sexual violence is tolerated, we will not consider it good enough.

This is a difficult time for our community, *especially* for those whose lives have been directly affected by sexual violence. As a university, we will take this time as an opportunity to make our campus safer, our community stronger, and our intolerance of sexual violence in any form clear and unequivocal.

CAMPUS                                    RESOURCES

News (http://around.uoregon.edu/)

Webmail

Events (http://calendar.uoregon.edu/)

(https://webmail.uoregon.edu/)

Maps (/uoregon.edu/maps)

Canvas (https://canvas.uoregon.edu/)

Directions (//uoregon.edu/directions)

Duckweb

Class Schedule

(https://duckweb.uoregon.edu/)

(http://classes.uoregon.edu/)

Find People

Academic Calendar

(//uoregon.edu/findpeople)

(http://registrar.uoregon.edu/calendars/academindex (/uoregon.edu/azindex)

UO Libraries

(http://library.uoregon.edu/)


RELATED RESOURCES

Powering the State's Economy (http://uoregon.edu/impact)

UO's Distinguished Scholars (http://distinguishedscholars.uoregon.edu/node/10)

Research and Innovation (http://research.uoregon.edu/)

Office of the Provost (http://provost.uoregon.edu/)

UO Experts (https://uonews.uoregon.edu/oregon-experts)


Contact Us (/contact-us)

Office of the President
1226 University of Oregon
Eugene, OR 97403-1226

P: 541-346-3036    F: 541-346-3017

pres@uoregon.edu (mailto:pres@uoregon.edu)


CAREERS (HTTP://HR.UOREGON.EDU/JOBS/AVAILABLE-POSITIONS)

PRIVACY POLICY (HTTP://REGISTRAR.UOREGON.EDU/RECORDS-PRIVACY)
ABOUT (HTTP://UOREGON.EDU/ABOUT)
FIND PEOPLE (HTTP://UOREGON.EDU/FINDPEOPLE/)

(HTTP://UOREGON.EDU)

© UNIVERSITY OF OREGON (HTTP://UOREGON.EDU). ALL RIGHTS RESERVED.

UO (University of Oregon) prohibits discrimination on the basis of race, color, sex, national or ethnic origin, age, religion, marital status, disability, veteran status, sexual orientation, gender identity, and gender expression in all programs, activities and employment practices as required by Title IX, other applicable laws, and policies. Retaliation is prohibited by UO (University of Oregon) policy. Questions may be referred to the Title IX Coordinator, Office of Affirmative Action and Equal Opportunity, or to the Office for Civil Rights. Contact information, related policies, and complaint procedures are listed on the statement of non-discrimination (http://studentlife.uoregon.edu/nondiscrimination)

**From:** veralrud@oregonattorney.com
**Sent:** Wednesday, May 28, 2014 11:58 AM
**To:** Douglas Park
**Subject:** Student Conduct Matter-Dominic Artis

Doug-
Mr. Artis agrees to proceed with the decision made by the university's neutral administrator rather than by panel, with the conditions set forth in your earlier offer. I understand the university has been trying to get the recording we've been discussing and would request those efforts continue for use in the decision making process. More on that later, but for now the panel hearing for Friday can be taken off as to Mr. Artis. I understand Mr. REDACTED has made a similar decision. Regards, Greg Veralrud

Student Conduct and Community Standards
University of Oregon

Student Name: Damyean DaKethe Dotson          Student ID#: REDACTED

Incident Date: March 09, 2014          Case Number: 00516-001-2014

Description: You engaged in sexual acts with a fellow student without explicit consent.

Summary of Alleged Violations:
1. **Sexual Misconduct** : Oregon Administrative Rule 571-021-0120(3)(h)
Sexual Misconduct. A mission of the Student Conduct Code is to encourage
good decision-making, personal integrity, and interpersonal behavior that is
cooperative rather than coercive and that respects the rights of others. Sexual
misconduct violates these values, and is committed when a student engages
in sexual behavior described in OAR 571-021-0105(30). OAR
571-021-0105(30) "Sexual Misconduct" means: (a) Unwanted Penetration is
Penetration of another person, or causing the Penetration of another person,
when one: (A) Does not first obtain Explicit Consent from that person; or (B)
Knows or should have known the person was incapable of consent by reason
of Mental Disorder, Mental Incapacitation, or Physical Helplessness. (b)
Nonconsensual personal contact occurs when a student subjects another
person to contact of a sexual nature when a reasonable person would know
that such contact would cause emotional distress: (A) Without having first
obtained Explicit Consent; or (B) When he or she knows or should have
known the person was incapable of consent by reason of Mental Disorder,
Mental Incapacitation, or Physical Helplessness. (c) Sexual advances,
requests for sexual favors, and other verbal or physical conduct of a sexual
nature that interferes with work or academic performance because it has
created an intimidating, hostile, or degrading environment and would have
such an effect on a reasonable person of the alleged complainant's status
when the conduct is unwelcome and sufficiently severe or pervasive that it
deprives that person of benefits of the University's educational environment.

Students accused of violating the Student Conduct Code have a choice of
how they can have their case heard. Sign below ONE choice:

**1. Special Administrative Conference:** This option is a hearing with an administrator. If you select this option, the hearing can take place immediately afterward. In this type of hearing, the full range of sanctions are possible. All decisions made are final; you cannot appeal. Also, during this type of hearing, the administrator may refer you to the Restorative Justice program or Conflict Resolution Services in addition to or in substitution of sanctions.

I affirm I have had the opportunity to consult with an adviser of my choosing. I also understand that by waiving my right to a panel hearing, I give up the right to have the accuser at the hearing with me. I agree to waive my right to an appeal, and I give permission for the Director of Student Conduct and Community Standards or his designee, to choose from the full range of University sanctions if he or the designee finds me responsible. These include suspension, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on my academic transcript. *finding of code violation - unspecified*

Signing below confirms the choice of a special administrative hearing and above affirmation.

Signature: _~~~~~~~~~~~_ Date:
6-19-14

**2. Panel Hearing:** This option is a hearing with a panel made up of a mixture of four to five students, staff, and faculty. If you select this option, a hearing time will be set 21-30 days later (or longer depending on term breaks and the discretion of the Director of SCCS). In this type of hearing, all University sanctions are possible, including suspension, expulsion, and negative notation on the transcript. You or the complainant may appeal the Panel's decision on the limited bases allowed by the Student Conduct Code.

Signature: _____ Date:
_____

Students may have an advisor present with them during the hearing, but it is not required. Indicate your advisor situation with initials:

_____ 1. I am not here with an advisor nor do I wish to have one.

_____ 2. I am here with an advisor: _____

**CONFIDENTIAL RECORD**

| | | |
|---|---|---|
| **Name:** Dominic Jordan Artis | **UO ID:** REDACTED | **E-mail:** REDACTED |
| **Gender:** Male | **DOB:** REDACTED | **Class:** Sophomore |

**TABLE OF CONTENTS**

1. 00516-003-2014 on March 9, 2014 12:00 am

DATE/TIME OF INCIDENT: MARCH 9, 2014
12:00 AM

SOCIAL MISCONDUCT (RESIDENCE HALL, CLASSROOM BEHAVIOR, ETC.)

CASE NUMBER: 00516-003-2014

INCIDENT STATUS: RESPONSIBLE


UNIVERSITY OF OREGON

**Decision Letter**

June 20, 2014

Dominic Jordan Artis
ID number: REDACTED
UO email:    REDACTED

Regarding Case: 00516-003-2014

Dear Dominic:

The University of Oregon has resolved a complaint(s) regarding your reported behavior on March 09, 2014 with the following incident description: You engaged in sexual acts with a fellow student without receiving explicit consent.

I have found you responsible for the following charges:

1. **Sexual Misconduct** : Oregon Administrative Rule 571-021-0120(3)(h) Sexual Misconduct. A mission of the Student Conduct Code is to encourage good decision-making, personal integrity, and interpersonal behavior that is cooperative rather than coercive and that respects the rights of others. Sexual misconduct violates these values, and is committed when a student engages in sexual behavior described in OAR 571-021-0105(30). OAR 571-021-0105(30) "Sexual Misconduct" means: (a) Unwanted Penetration is Penetration of another person, or causing the Penetration of another person, when one: (A) Does not first obtain Explicit Consent from that person; or (B) Knows or should have known the person was incapable of consent by reason of Mental Disorder, Mental Incapacitation, or Physical Helplessness. (b) Nonconsensual personal contact occurs when a student subjects another person to contact of a sexual nature when a reasonable person would know that such contact would cause emotional distress: (A) Without having first obtained Explicit Consent; or (B) When he or she knows or should have known the person was incapable of consent by reason of Mental Disorder, Mental Incapacitation, or Physical Helplessness. (c) Sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that interferes with work or academic performance because it has created an intimidating, hostile, or degrading environment and would have such an effect on a reasonable person of the alleged complainant's status when the conduct is unwelcome and sufficiently severe or pervasive that it deprives that person of benefits of the University's educational environment.

As a result, I am imposing the following sanctions:

1. Suspension
You are suspended from the University of Oregon for a period of at least four years and until the complainant is no longer enrolled or employed at the University of Oregon but for not more than a period of ten years.

You will be may be eligible to regain your status as a student on June 20, 2018 upon review of the complainants status with the University of Oregon.

A student who has been suspended from the University shall not be permitted to participate in any University Sponsored Activity or allowed to reside on University Premises during the period the

student is suspended.

You may not come on to University Premises without explicit permission from the Director of Student Conduct and Community Standards or his designee.

IMPORTANT NOTE: It is the student's responsibility to withdraw from classes for periods the student is not allowed to be on campus.

2. Negative Notation on Transcript
A notation will be placed on your University of Oregon transcript that reads, "Student Conduct Violation".

Your student conduct record (different from your academic record) will indicate your responsibility (and/or lack of responsibility) for the above charges for five years after the date of the incident unless suspension, expulsion, or negative notation were imposed. Your student conduct record is only released by your express waiver (usually on an application to a scholarship, study abroad program, graduate school, etc.) or to other University staff/faculty on a strict need-to-know basis.

Your student account will be billed with an administrative fee, which covers the cost of administering the program and maintaining your records.

I hope you have learned and will continue to learn much from this experience. Please feel welcome to ask questions and seek help from me or my office in the future.

Sincerely,

Sandy Weintraub, Director, Student Conduct and Community Standards

541-346-3216
chicora@uoregon.edu

CC: Chicora Martin, Doug Park, Sam Hill

|     | *CONFIDENTIAL RECORD* |     |
| --- | --- | --- |

| Name: Damyean DaKethe Dotson | UO ID: REDACTED | E-mail: REDACTED |
| --- | --- | --- |
| Gender: Male | DOB: REDACTED | Class: Sophomore |

### TABLE OF CONTENTS

1   00516-001-2014 on March 9, 2014 12:00 am

DATE/TIME OF INCIDENT: MARCH 9, 2014
12:00 AM

SOCIAL MISCONDUCT (RESIDENCE HALL, CLASSROOM
BEHAVIOR, ETC.)

CASE NUMBER: 00516-001-2014

INCIDENT STATUS: RESPONSIBLE

 UNIVERSITY OF OREGON

**Decision Letter**

June 20, 2014

Damyean DaKethe Dotson
ID number: REDACTED
UO email:    REDACTED

Regarding Case: 00516-001-2014

Dear Damyean Dotson:

The University of Oregon has resolved a complaint(s) regarding your reported behavior on March 09, 2014 with the following incident description: You engaged in sexual acts with a fellow student without receiving explicit consent.

I have found you responsible for the following charges:

1. **Sexual Misconduct** : Oregon Administrative Rule 571-021-0120(3)(h) Sexual Misconduct. A mission of the Student Conduct Code is to encourage good decision-making, personal integrity, and interpersonal behavior that is cooperative rather than coercive and that respects the rights of others. Sexual misconduct violates these values, and is committed when a student engages in sexual behavior described in OAR 571-021-0105(30). OAR 571-021-0105(30) "Sexual Misconduct" means: (a) Unwanted Penetration is Penetration of another person, or causing the Penetration of another person, when one: (A) Does not first obtain Explicit Consent from that person; or (B) Knows or should have known the person was incapable of consent by reason of Mental Disorder, Mental Incapacitation, or Physical Helplessness. (b) Nonconsensual personal contact occurs when a student subjects another person to contact of a sexual nature when a reasonable person would know that such contact would cause emotional distress: (A) Without having first obtained Explicit Consent; or (B) When he or she knows or should have known the person was incapable of consent by reason of Mental Disorder, Mental Incapacitation, or Physical Helplessness. (c) Sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that interferes with work or academic performance because it has created an intimidating, hostile, or degrading environment and would have such an effect on a reasonable person of the alleged complainant's status when the conduct is unwelcome and sufficiently severe or pervasive that it deprives that person of benefits of the University's educational environment.

As a result, I am imposing the following sanctions:

1. Suspension
You are suspended from the University of Oregon for a period of at least four years and until the complainant is no longer enrolled or employed at the University of Oregon but for not more than a period of ten years.

You will be may be eligible to regain your status as a student on June 20, 2018 upon review of the complainants status with the University of Oregon.

A student who has been suspended from the University shall not be permitted to participate in any University Sponsored Activity or allowed to reside on University Premises during the period the

student is suspended. Student may not come on to University Premises without explicit permission from the Director of Student Conduct and Community Standards or his designee.

IMPORTANT NOTE: It is the student's responsibility to withdraw from classes for periods the student is not allowed to be on campus.

2. Negative Notation on Transcript
A notation will be placed on your University of Oregon transcript that reads, "Student Conduct Violation".

Your student conduct record (different from your academic record) will indicate your responsibility (and/or lack of responsibility) for the above charges for five years after the date of the incident unless suspension, expulsion, or negative notation were imposed. Your student conduct record is only released by your express waiver (usually on an application to a scholarship, study abroad program, graduate school, etc.) or to other University staff/faculty on a strict need-to-know basis.

Your student account will be billed with an administrative fee, which covers the cost of administering the program and maintaining your records.

I hope you have learned and will continue to learn much from this experience. Please feel welcome to ask questions and seek help from me or my office in the future.

Sincerely,

Sandy Weintraub, Director, Student Conduct and Community Standards
541-346-3216
chicora@uoregon.edu

CC: Chicora Martin, Sam Hill, Doug Park

**VERALRUD & FOWLER**

ATTORNEYS

Gregory E. Veralrud
Lindsay H. Fowler

975 Oak Street, Suite 625
Eugene, Oregon 97401-3156
Telephone (541) 345-3333
Fax (541) 342-1908

William F. Frye
(1929-1988)

October 8, 2014

Director, Oregon Dept. of Admin. Services
State Services Division
Risk Management
Executive Building
155 Cottage St N.E., U20
Salem, OR 97301
    and via fax to 503-373-7337
    and via e-mail to risk.management@state.or.us

Douglas YS Park, Asst. General Counsel
University of Oregon
219 Johnson Hall
1226 University of Oregon
Eugene, OR 97403
    and via fax to 541-346-6110
    and via e-mail to dougpark@uoregon.edu

Re:    Notice of Claims by Dominic Artis vs. University of Oregon and
       Various Administrative Officials

Dear ODAS and Mr. Park:

In compliance with ORS 30.275, notice is hereby given of claims for damages on behalf of Dominic Artis against the University of Oregon and its departments, officers, employees and/or agents resulting in a course of conduct on the part of the aforementioned parties beginning April 10, 2014, with the University's "emergency suspension" and ending on or about June 17, 2014, at which time the University issued a suspension following University Student Conduct Code hearing.

State law claims against the University and its departments, officers, employees and/or agents arise out of breach of contract, slander, defamation and intentional infliction of emotional distress on the part of the aforementioned and/or the University's vicarious liability for those wrongful actions.

Federal law claims against the University and its departments, officers, employees and/or agents arise out of a violation of Mr. Artis' civil rights under 42 USC §1981 and

§1983, the First, Fifth and Fourteenth Amendments to the U.S. Constitution, including deprivation of due process, deprivation of the right to freedom of association, deliberate indifference to Mr. Artis' civil and constitutional rights and all policies, customs and practices that allowed such violations to occur.

Insofar as the claimant is aware, the time, place and circumstances giving rise to the claims are as follows:

On or about March 9, 2014, Mr. Artis attended a party with other friends and fellow Oregon Duck basketball teammates. At the party Mr. Artis engaged in consensual sexual activities with   REDACTED   as did other attendees at the party. Further sexual contact between Mr. Artis and   REDACTED   occurred later in the evening and in the early morning hours of the following day at Mr. Artis' apartment. Those acts were consensual as well.

In the days following,   REDACTED   characterized what had been patently consensual sexual contact as sexual assault and caused her complaint to be submitted to law enforcement and eventually to the University of Oregon, including the above-referenced officials.

A subsequent police investigation led to a conclusion by the Lane County District Attorney's office that there was insufficient evidence to prosecute the case.

The police investigation generated police reports that underscored the consensual nature of the activities. Those reports were made known to the University and its above-referenced employees and agents.

University officials, including the then University of Oregon President, made public statements both implicitly and explicitly declaiming Mr. Artis as a sexual assaulter, a rapist and a criminal, thus slandering and defaming Mr. Artis.

During the course of the investigation, although the emergency suspension of the University was lifted with respect to Mr. Artis pending a University Student Conduct Code hearing, he was (1) first suspended from the basketball team, then (2) dismissed from the basketball team, and then (3) notified that his scholarship was terminated. These actions on the part of the University and the above-referenced officials were without cause and in violation of Mr. Artis' civil and contractual rights.

The University then asserted violation of the University Student Conduct Code, claiming non-consensual sexual contact as a violation of that code.

In the run-up to the University Student Conduct Code hearing, the University denied Mr. Artis' requests for:

    a. A contested case hearing in accordance with the Oregon Administrative Procedures Act because Mr. Artis contended that the procedures set forth in the Student Conduct Code were deficient and denied him due process of law.

    b. The issuance of subpoenas for witnesses who would provide evidence and testimony supporting Mr. Artis' contention that he had committed no violation of law or Student Conduct Code and that   REDACTED  's credibility was at issue.

    c. Names and contact information of witnesses who the University of Oregon interviewed and relied upon in bringing the Student Conduct Code violation claim against Mr. Artis.

    d. Copies of the University's Title IX investigator's report (Mr. Artis' counsel was allowed to view but not have the document, with significant parts blacked out and unavailable to Mr. Artis or his counsel).

Student Condct Code Hearing

The University Student Conduct Code hearings process at the time offered Mr. Artis a choice of hearing by a panel (the panel consisting of University of Oregon personnel, student representatives and administrators chosen by the University) or an administrative hearing in front of the Dean of Student Conduct who would be the sole decider. The University coerced Mr. Artis into waiving his panel hearing by threatening expulsion as a remedy if he sought the panel hearing and promising to remove expulsion as an option if he had his case decided by the Dean of Student Conduct, a hearing which did not allow for cross-examination of witnesses or determination by an arguably less partial fact finder.

The administrative process that the University set up for Student Conduct Code violation hearings was constitutionally deficient and denied Mr. Artis due process. The University ignored its own rules with respect to its ability to issue subpoenas (Mr. Artis had no power to issue said subpoenas as the Student Conduct Code then read), and the University intentionally or recklessly frustrated Mr. Artis' ability to present evidence and to defend against the fallacious allegations.

On June 17, 2014, the University conducted the final administrative hearing with all the deficiencies, violations and deprivations of rights set forth above and issued a suspension to Mr. Artis for up to ten years, effectively and for all intents and purposes expelling him from the University anyway.

The Dean of Student Conduct, aided by University counsel, were either explicitly or implicitly directed by superiors within the University to make a finding that Mr. Artis had

violated the Student Conduct Code or, in the alternative, were so influenced by the statements and comments of their superiors, including the President of the University, that a fair and impartial decision-making process could never have occurred and did not.

Substantial and compelling evidence of the consensual nature of Mr. Artis' sexual contact with REDACTED was willfully ignored.

A similar contention that evidence was ignored in the arrival of the finding of culpability on Mr. Artis' part was also evident in the Title IX investigative report issuing findings of fact upholding the allegation which completely ignored substantial contradictory evidence that supported the consensual nature of Mr. Artis' sexual contact with Ms. REDACTED and contained ample evidence questioning her credibility and contradicting her subsequent assertions that the encounter had not been consensual.

Mr. Artis has been severely damaged by the University's conduct as referenced above. Prior to his suspension from the University of Oregon basketball team and subsequent removal and withdrawal of scholarship, Mr. Artis had been, in all respects, compliant with his agreement with the University regarding his efforts as a basketball player to support the scholarship. He was subjected to ridicule and hostility as a result of the University's slanderous and defamatory remarks as referenced above. His educational plans and ability to continue his career as a collegiate basketball player have been all but terminated. He has suffered financial loss, as well as great humiliation, embarrassment and vilification in the public eye. The damage to his reputation as a result of the University's outrageous actions is immeasurable.

Correspondence concerning this claim may be sent care of this office.

Sincerely,

*/s/ Greg Veralrud*

Greg Veralrud
Attorney for Dominic Artis
975 Oak, Suite 625
Eugene, OR 97401
541-345-3333
Fax 541-342-1908
E-mail: veralrud@oregonattorney.com

GV:tlk

# McCREA, P.C.
## Attorneys at Law
1147 High Street
Eugene, OR 97401

Robert J. McCrea
Shaun S. McCrea

TELEPHONE
(541) 485-1182
FAX
(541) 485-6847

## FACSIMILE TRANSMITTAL

DATE:     October 9, 2014     NUMBER OF PAGES: 6
(Including Transmittal page)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO:
Douglas YS Park, Asst. General Counsel
University of Oregon
219 Johnson Hall
1226 University of Oregon
Eugene, OR 97403
        and via fax to 541-346-6110
        and via e-mail to dougpark@uoregon.edu

Attention: Douglas YS Park, Asst. General Counsel

Facsimile No. (541) 346-6110

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PERSON TO CONTACT IN CASE OF SENDING/RECIVING PROBLEMS:

NAME: Shaun S. McCrea

MESSAGE: Notice of Tort Claim by Damyean Dotson vs. University of Oregon

and Various Administrative Officials

Thanks

Shaun S. McCrea

PERSON TO CONTACT IN CASE OF RECEIVING PROBLEMS: Shaun or Kelsie
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE: The documents accompanying this facsimile transmission contain information that is confidential, proprietary, and legally privileged. Such information is intended only for the use of individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, or distribution, or the taking of any action in reliance on facsimile transmission is strictly prohibited. If you have received this facsimile transmission in error, please notify us immediately by telephone to arrange for return of the original documents to us. Thank you.

# McCREA, P.C.
Attorneys at Law
1147 High Street
Eugene, OR 97401-3270

Robert J. McCrea
Shaun S. McCrea

TELEPHONE
(541) 485-1182
FAX
(541) 485-6847

October 9, 2014

Director, Oregon Dept. of Admin. Services
State Services Division
Risk Management
Executive Building
155 Cottage St. N.E., U20
Salem, OR 97301
 and via fax to 503-373-7337
 and via e-mail to risk.management@state.or.us

Douglas YS Park, Asst. General Counsel
University of Oregon
219 Johnson Hall
1226 University of Oregon
Eugene, OR 97403
 and via fax to 541-346-6110
 and via e-mail to dougpark@uoregon.edu

Re:   Notice of Tort Claim by Damyean Dotson vs. University of Oregon and
      Various Administrative Officials

Dear ODAS and Mr. Park,

In compliance with ORS 30.275, notice is hereby given of claims for damages on behalf of
Damyean Dotson against the University of Oregon and its departments, officers,
employees and/or agents resulting in a course of conduct on the part of the
aforementioned parties beginning April 10, 2014, with the University's "emergency
suspension" and ending on or about June 17, 2014, at which time the University issued a
suspension following University Student Conduct Code hearing.

State law claims against the University and its departments, officers, employees and/or
agents arise out of breach of contract, slander, defamation and intentional infliction of

Notice of Tort Claim
October 9, 2014
Page 1

emotional distress on the part of he aforementioned and/or the University's vicarious liability for those wrongful actions.

Federal law claims against the University and its departments, officers, employees and/or agents arise out of a violation of Mr. Dotson' civil rights under 42 USC § 1981 and § 1983, the First, Fifth and Fourteenth Amendments to the U.S. Constitution, including deprivation of due process, deprivation of the right to freedom of association, deliberate indifference to Mr. Dotson' civil and constitutional rights and all policies, customs and practices that allowed such violations to occur.

Insofar as the claimant is aware, the time, place and circumstances giving rise to the claims are as follows:

On or about March 9, 2014 Mr. Dotson attended a party with other friends and fellow Oregon Duck basketball teammates. At the party Mr. Dotson engaged in consensual sexual activities with     REDACTED     as did other attendees at the party. Further consensual contact between another teammate and [   REDACTED   ] occurred later in the evening and in the early morning hours of the following day at that teammate's apartment. Those acts were consensual as well.

In the days following, [   REDACTED   ] characterized what had been patently consensual sexual contact as sexual assault and caused her complaint to be submitted to law enforcement and eventually to the University of Oregon, including the above-referenced officials.

A subsequent police investigation led to a conclusion by the Lane County District Attorney's office that there was insufficient evidence to prosecute the case.

The police investigation generated police reports that underscored the consensual nature of the activities. Those reports were made know to the University and its above-referenced employees and agents.

University officials, including the then University of Oregon President, made public statements both implicitly and explicitly declaiming Mr. Dotson as a sexual assaulter, a rapist and a criminal, thus slandering and defaming Mr. Dotson.

During the course of the investigation, although the emergency suspension of the University was lifted with respect to Mr. Dotson pending a University Student Conduct Code hearing, he was  (1) first suspended from the basketball team, then (2) dismissed from the basketball team, and then (3) notified that his scholarship was terminated.  These actions on the part of the University and the above-referenced officials were without cause and in violation of Mr. Dotson's civil and contractual rights.

Notice of Tort Claim
October 9, 2014
Page 2

The University then asserted violation of the University Student Conduct Code, claiming non-consensual sexual contact as a violation of that code.

In the run-up the University Student Conduct Code hearing, the University denied Mr. Dotson's requests for:

a)      a contested case hearing in accordance with the Oregon Administrative Procedures Act because Mr. Dotson contended that the procedures set fourth in the Student Conduct Code were deficient and denied him due process of law.

b)      The issuance of subpoenas for witnesses who would provide evidence and testimony supporting Mr. Dotson' contention that he had committed no violation of law or Student Conduct Code and that [REDACTED] 's credibility was at issue.

c)      Names and contact information of witnesses who the University of Oregon interviewed and relied upon in bringing the Student Conduct Code violation claim against Mr. Dotson.

d)      Copies of the University's Title IX investigator's report (Mr. Dotson' counsel was allowed to view but not have the document, with significant parts blacked out and unavailable to Mr. Dotson or his counsel).

<u>Student Conduct Code Hearing</u>

The University Student Conduct Code hearings process at the time offered Mr. Dotson a choice of hearing by a panel (the panel consisting of University of Oregon personnel, student representatives and administrators chosen by the University) or and administrative hearing in front of the Dean of Student Conduct who would be the sole decider.  The University coerced Mr. Dotson to waive his panel hearing by threatening expulsion as a remedy if he sought the panel hearing and promising to remove expulsion as an option if he had his case decided by the Dean of Student Conduct, a hearing which did not allow for cross-examination of witnesses or determination by an arguably less partial fact finder.

The administrative process that the University set up for the Student Conduct Code violation hearings was constitutionally deficient and denied Mr. Dotson due process. The University ignored its own rules with respect to its ability to issue subpoenas (Mr. Dotson had no power to issue said subpoenas as the Student Conduct Code then read), and the University intentionally or recklessly frustrated Mr. Dotson' ability to present evidence and to defend against the fallacious allegations.

On June 17, 2014, the University conducted the final administrative hearing with all the deficiencies, violations and deprivations of rights set forth above and issued a

Notice of Tort Claim
October 9, 2014
Page 3

sustention of Mr. Dotson for up to ten years, effectively and for all intents and purposes expelling him from the University anyway.

The Dean of Student Conduct, aided by University counsel, were either explicitly or implicitly directed by superiors within the University to make a finding that Mr. Dotson had violated the Student Conduct Code or, in the alternative, were so influenced by the statements and comments of their superiors, including the President of the University, that a fair and impartial decision-making process could never have occurred and did not.

Substantial and compelling evidence of the consensual nature of Mr. Dotson' sexual contact with   REDACTED   was willfully ignored.

A similar contention that evidence was ignored in the arrival of the finding of culpability on Mr. Dotson' part was also evident in the Title XI investigative report issuing findings of fact upholding the allegation which completely ignored substantial contradictory evidence that supported the consensual nature of Mr. Dotson' sexual contact with Ms. REDACTED and contained ample evidence questioning her credibility and contradicting her subsequent assertions that eh encounter had not been consensual.

Mr. Dotson has been severely damaged by the University's conduct as referenced above. Prior to his suspension from the University of Oregon basketball team and subsequent removal and withdrawal of scholarship, Mr. Dotson had been, in all respects, compliant with his agreement with the University regarding his efforts as a basketball player to support the scholarship. He was subjected to ridicule and hostility as a result of the University's slanderous and defamatory remarks as referenced above. His educational plans and ability to continue his career as a collegiate basketball player have been all but terminated. He has suffered financial loss, as well as great humiliation, embarrassment and vilification in the public eye. The damage to his reputation as a result of the University's outrageous actions is immeasurable.

Notice of Tort Claim
October 9, 2014
Page 4

Correspondence concerning this claim may be sent care of this office.

Sincerely,

McCREA, P.C.

*Shaun S McCrea*

Shaun S. McCrea
Attorney for Damyean Dotson
1147 High Street
Eugene, OR 97401
541-485-1182
Fax 541-485-6847
E-mail: shaun@mccreapc.com

SMc/kg

Notice of Tort Claim
October 9, 2014
Page 5

EXHIBIT E - Page 10 of 10
Declaration of Lisa Thornton in Support of Defendants' Motion to Dismiss

I hereby certify that I served the foregoing declaration of Lisa Thornton in support of Defendants' motion to dismiss on:

> Mr. Brian Michaels
> 259 East Fifth Avenue, Suite 300-D
> Eugene, Oregon 97401
> Telephone: (541) 687-0578
> E-mail: brian@brianmichaelslaw.com

> Mr. Alex B. Spiro (admitted *pro hac vice*)
> Brafman & Associates, P.C.
> 767 Third Avenue, 26th Floor
> New York, New York 10017
> Telephone: (212) 750-7800
> E-mail: aspire@braflaw.com

> *Attorneys for Plaintiffs Dominic Artis and Damyean Dotson*

by the following indicated method or methods on the date set forth below:

[X] **CM/ECF system transmission.**

[ ] **E-mail.** (Courtesy copy.)

[ ] **Facsimile communication device.**

[ ] **First-class mail, postage prepaid.**

[ ] **Hand-delivery.**

[ ] **Overnight courier, delivery prepaid.**

DATED this 2nd day of May, 2016.

Michelle Barton Smigel, OSB No. 045530

*Of Attorneys for Defendants*

Page 1 - Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE 24 5858
US BANCORP TOWER
111 S W FIFTH AVE NE
PORTLAND OREGON 14