**Michelle Barton Smigel, P.C.**, OSB No. 045530
michelle.smigel@millernash.com
**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Fax: 503.224.0155

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| DOMINIC ARTIS and DAMYEAN DOTSON, | Case No.: 6:16-cv-00647-MC |
| Plaintiffs, | DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS |
| v. | |
| UNIVERSITY OF OREGON; SANDY WEINTRAUB; CHICORA MARTIN; ROBIN HOLMES; and MICHAEL R. GOTTFREDSON, | |
| Defendants. | |

Defendants' Reply in Support of Their Motion to Dismiss

70107756.6

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   ARGUMENT ...................................................................................... 3

    A.    Plaintiffs Fail To Rebut The Individual Defendants' Entitlement To Qualified Immunity.................................................................. 3

        1.    Plaintiffs have not demonstrated a clearly established property right ................................................................................ 4

            a.    Plaintiffs' reliance on *Goss* does not establish a property right to higher education ................................ 4

            b.    Plaintiffs' reliance on cases that "assume without deciding" whether a property right exists is misguided ................................. 5

            c.    Plaintiffs' reliance on two out-of-district cases does not clearly establish a property right to higher education in Oregon........................................ 6

            d.    *Stretten* does not address the question of a property right to playing collegiate basketball, receiving an athletic scholarship, or receiving an NBA contract ................................. 7

        2.    Plaintiffs have not demonstrated a clearly established liberty interest................................................................................ 9

            a.    Contrary to plaintiffs' contention, two out-of-district cases do not clearly establish plaintiffs' liberty interest to remain students in good standing at the University ................................. 9

            b.    Plaintiffs offer no support for their assertion that the Constitution protects them from alleged stigma purported to be the result of their suspensions from the University............. 10

        3.    Defendants Weintraub and Holmes are entitled to qualified immunity because plaintiffs agreed to their administrative conference and waived Their Right to an appeal.................................... 12

        4.    Plaintiffs fail to rebut Defendants' argument that the Oregon Administrative Procedures Act does not confer any property or liberty interests ......................................................... 14

        5.    Plaintiffs fail to demonstrate that their substantive due process claim should survive despite not alleging a violation of their fundamental rights ................................................. 14

70107756.6

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

# TABLE OF CONTENTS
## (continued)

Page

B.  Plaintiffs Fail To Establish That the Individual Defendants' Alleged Conduct Implicated Any Constitutionally Protected Property Rights Or Liberty Interests ................................................................................................ 17

C.  Plaintiffs Were Afforded Adequate Process ........................................................ 18

D.  Plaintiffs Did Not Rebut Defendants' Motion to Dismiss Plaintiffs' Equal Protection Claim ................................................................................................... 20

E.  Plaintiffs Have Asserted No Factual Allegations That Support Their Claim Of Discrimination Based On Gender Or Sex ........................................................ 21

F.  Plaintiffs' Response To Defendants' Tort Claims Arguments Confirms That Plaintiffs Cannot Plausibly Assert That Defendants Are Liable In Tort ........................................................................................................................ 25

1.  *Kavanagh v. Trustees of Boston University* does not establish that plaintiffs had a special relationship with the University .......................... 25

2.  Plaintiffs do not dispute that they cannot recover for negligence unless they had a special relationship with the University, and in any event, plaintiffs fail as a matter of law to show that Defendants' alleged conduct was unreasonable ....................................... 26

3.  Plaintiffs fail to respond to Defendants' argument that plaintiffs' tort claim notices did not provide "actual notice" of plaintiffs' claim that the University's investigation was tortious ............................ 27

4.  Plaintiffs fail to plead any factual allegations that Defendants intended to inflict severe emotional distress or that Defendants' alleged conduct transgressed the bounds of socially tolerable behavior ................................................................................................... 28

5.  Plaintiffs offer no support for their contention that they can recover for tortious interference without showing an actual or contemplated business relationship with an NBA team ................................................ 29

G.  Plaintiffs Fail to Rebut Defendants' Argument That the University Fulfilled the Express Terms of Plaintiffs' Scholarship Agreements .................... 30

H.  Plaintiffs' Response To Defendants' Preclusion Arguments Mischaracterizes Defendants' Position .................................................................. 32

I.  Plaintiffs Do Not Deny That the Individual Defendants' Alleged Conduct Constituted Discretionary Decisions Made Within the Scope of Their Employment With The University ......................................................................... 33

III.  CONCLUSION .................................................................................................................... 35

70107756.6

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

# TABLE OF AUTHORITIES

**Page**

**Cases**

*adidas-Am., Inc. v. Payless Shoesource, Inc.*,
  546 F Supp 3d 1029 (D Or 2008) ......................................................20

*Albright v. Oliver*,
  510 US 266, 114 S Ct 807, 127 L Ed 2d 114 (1994) ...........................15

*Ashcroft v. al-Kidd*,
  563 US 731, 131 S Ct 2074, 179 L Ed 2d 1149 (2011)......................3, 9

*Ashcroft v. Iqbal*,
  556 US 662, 129 S Ct 1937, 173 L Ed 2d 868 (2009)..........................22

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
  435 US 78, 98 S Ct 948, 55 L Ed 2d 124 (1978)...........................5, 17

*Bd. of Regents of State Colls. v. Roth*,
  408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972)......................4, 8, 17

*Bell Atl. Corp. v. Twombly*,
  550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007)..........................22

*Bell v. PERB*,
  239 Or App 239, 247 P3d 319 (2010).................................................25

*Black Coalition v. Portland Sch. Dist. No. 1*,
  484 F2d 1040 (9th Cir 1973) .............................................................5

*Blanton v. State Univ. of N.Y.*,
  489 F2d 377 (2d Cir 1973)................................................................6

*Bowers v. NCAA*,
  118 F Supp 2d 494 (DNJ 2000), *opinion amended on reargument*,
  130 F Supp 2d 610 (DNJ 2001) .......................................................31

*Cleveland Bd. of Educ. v. Loudermill*,
  470 US 532, 105 S Ct 1487, 84 L Ed 2d 494 (1985)............................8

*Cloud v. Trs. of Boston Univ.*,
  720 F2d 721 (1st Cir 1983)...............................................................15

Page iii -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF AUTHORITIES
## (continued)

Page

*Cruz v. Multnomah Cty.*,
No. A155157, 2016 WL 3511819 (Or App June 22, 2016) ....................................................34

*Dixon v. Ala. State Bd. of Educ.*,
294 F2d 150 (5th Cir), *cert denied*, 368 US 930 (1961)............................................4, 9, 18, 19

*Doe v. Brandeis Univ.*,
No. 15-11557-FDS, 2016 WL 1274533 (D Mass Mar. 31, 2016)..........................................15

*Doe v. Brown Univ.*,
No. 15-144 ......................................................................................................................21, 22, 23

*Doe v. Univ. of Cincinnati*,
No. 1:15-CV-681, 2016 WL 1161935 (SD Ohio Mar. 23, 2016)..........................................21

*Doe v. Woodford*,
508 F3d 563 (9th Cir 2007) ..................................................................................................13

*Doyle v. Oregon Bank*,
94 Or App 230, 764 P2d 1379 (1988).....................................................................................31

*Emeldi v. Univ. of Or.*,
673 F3d 1218 (9th Cir 2012) ............................................................................................23, 24

*Fernandez v. Rosenzwieg*,
No. CIV. 95-241-FR, 1996 WL 453046 (D Or Aug. 8, 1996) ................................................7

*Goss v. Lopez*,
419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975)....................................................................4

*Hall v. Univ. of Minn.*,
530 F Supp 104 (D Minn 1982)............................................................................................6, 7

*Harrell v. S. Or. Univ.*,
No. CV 08-3037-CL, 2010 WL 2326576 (D Or Mar. 24, 2010)..............................................7

*Hart v. Ferris State Coll.*,
557 F Supp 1379 (SD Mich 1983).........................................................................................6, 7

*Johnson v. United States*,
539 F2d 1241 (9th Cir 1976) ..................................................................................................13

70107756.6

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## TABLE OF AUTHORITIES
### (continued)

<b>Page</b>

*Kavanagh v. Trs. of Boston Univ.*,
   795 NE2d 1170 (Mass 2003) ............................................................25, 26

*Lewin v. Med. Coll. of Hampton Roads*,
   910 F Supp 1161 (ED Va 1996) ..................................................................6

*Marin v. Univ. of Puerto Rico*,
   377 F Supp 613 (DPR 1974)...................................................................4, 9

*McAdoo v. Univ. of N.C. at Chapel Hill*,
   736 SE2d 811 (NC Ct App 2013) ............................................................31

*McGanty v. Staudenraus*,
   321 Or 532, 901 P2d 841 (1995) .............................................................28

*Orr v. City of Eugene*,
   151 Or App 541, 950 P2d 397 (1997).......................................................30

*Paul v. Davis*,
   424 US 693, 96 S Ct 1155, 47 L Ed 2d 405 (1976)....................................10, 12, 18

*Perry v. Sinderman*,
   408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972).....................................8

*Reese v. Jefferson Sch. Dist. No. 14J*,
   208 F3d 736 (9th Cir 2000) ...............................................................20, 21

*Regents of Univ. of Mich. v. Ewing*,
   474 US 214, 106 S Ct 507, 88 L Ed 2d 523 (1985).....................................5

*Ryan v. Harlan*,
   No. CV-10-626-ST, 2011 WL 711110 (D Or Feb. 22, 2011) ....................7

*Schaer v. Brandeis Univ.*,
   735 NE2d 373 (Mass 2000)...................................................................15, 16

*Shanks v. Dressel*,
   540 F3d 1082 (9th Cir 2008) .....................................................................17

*Slochower v. Bd. of Educ.*,
   350 US 551, 76 S Ct 637, 100 L Ed 692 (1956).........................................8

70107756.6

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF AUTHORITIES
## (continued)

Page

*Solberg v. Johnson*,
    306 Or 484, 760 P2d 867 (1988) .......................................................26, 27

*Stretten v. Wadsworth Veterans Hosp.*,
    537 F2d 361 (9th Cir 976) ..........................................................2, 7, 8

*Tenold v. Weyerhaeuser Co.*,
    127 Or App 511, 873 P2d 413 (1994), *re. dismissed*, 321 Or 561 (1995)...............................28

*Tigrett v. Rector & Visitors of Univ. of Va.*,
    290 F3d 620 (4th Cir 2002) .............................................................6

*Winnick v. Manning*,
    460 F2d 545 (2d Cir 1972)..............................................................19

*Wisconsin v. Constantineau*,
    400 US 433, 91 S Ct 507, 27 L Ed 2d 515 (1971)................................................18

## Statutes

Oregon Administrative Procedures Act ..............................................................14

Oregon Tort Claims Act..............................................................30

ORS 30.265(6) ..............................................................33, 34

ORS 30.275..............................................................27, 30

ORS 183.480(2) ..............................................................32

ORS 183.482..............................................................33

## Other Authorities

OAR 571-021-0105(30)(b)(A)..............................................................29

OAR 571-021-0205 ..............................................................16, 19, 34

OAR 571-021-0210(7)..............................................................19

*The Oregonian* ..............................................................11, 28

70107756.6

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## I.    INTRODUCTION

Plaintiffs' lack of any meaningful rebuttal to Defendants' motion to dismiss further confirms that Defendants are entitled to dismissal of all of plaintiffs' claims.  Plaintiffs fail to demonstrate that Defendants can plausibly be liable based on the University's administration of plaintiffs' disciplinary hearing.  The University offered plaintiffs the choice of a panel hearing or an administrative conference.  Had plaintiffs elected a panel hearing, they would have received more comprehensive procedures but faced a possible maximum sanction of expulsion.  Instead, plaintiffs waived the procedures available to them in a panel hearing—which included waiving any appeal of the hearing decisions to the University.  They chose to receive an administrative conference and subsequently received all process under the University's administrative conference procedures.  Plaintiffs have not alleged, or argued, that the University failed to provide any of the procedures plaintiffs agreed to under the regulations then-governing University administrative conferences.  And plaintiffs' attempt to retroactively undo their agreement to receive an administrative conference fails as a matter of law.

Moreover, there can be no reasonable dispute that the Individual Defendants are entitled to qualified immunity for plaintiffs' constitutional claims.  Plaintiffs fail to demonstrate that any property right or liberty interest was implicated by the alleged conduct of the Individual Defendants or that any such right or interest was clearly established.  And in any event, plaintiffs were offered and received sufficient process at their administrative conference and have not pleaded any factual allegations that plausibly suggest that the Individual Defendants acted with discriminatory animus.  Plaintiffs fail to even respond to Defendants' motion to dismiss plaintiffs' equal protection claim (the one claim asserted by plaintiffs that Brandon Austin did not assert), thereby effectively conceding Defendants' arguments.

Because plaintiffs failed to plead any factual allegations that plausibly suggest that Defendants discriminated against plaintiffs based on their gender or sex, plaintiffs' Title IX claim also does not state a claim under the governing pleading standard.

Page 1 -    Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

As did Austin, plaintiffs make almost no attempt to rebut Defendants' state law arguments. Plaintiffs were not in a special relationship with the University under Oregon negligence law, and their citation of one Massachusetts state court case that has no bearing on this jurisdiction fails to support their argument. Without a special relationship, plaintiffs cannot recover for negligence or intentional infliction of emotional distress ("IIED") as a matter of law. Plaintiffs concede that they did not have a business relationship with any National Basketball Association ("NBA") or professional basketball team, thereby conceding their tortious-interference claim. Plaintiffs' breach of contract claim fails to state a claim because plaintiffs point to no basis for their assertion that the University guaranteed that plaintiffs' one-year fixed-term athletic scholarships would be renewed. Finally, plaintiffs mischaracterize Defendants' issue preclusion arguments and provide no meaningful analysis of why Defendants' entitlement to discretionary immunity should be denied. Plaintiffs' complaint fails to state any viable claims and should be dismissed, and judgment should be entered for Defendants.

Three are many similarities in the briefing on Defendants' motion to dismiss in Austin and in this case. Defendants call the following issues unique to this motion to the Court's attention:

- Plaintiffs' reliance on *Stretten v. Wadsworth Veterans Hosp.*, 537 F2d 361 (9th Cir 1976), to allegedly establish a constitutionally protected property interest in plaintiffs' collegiate basketball careers, athletic scholarships, and hypothetical NBA contracts.

- Plaintiffs' reliance on two out of district, inapplicable, cases discussing "basic fairness" in lieu of the constitutional standard applicable to plaintiffs' substantive due process claim.

- Defendants moved to dismiss plaintiffs' equal protection claim and plaintiffs provided no opposition briefing, thereby effectively conceding this claim.

Page 2 -    Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## II.    ARGUMENT

### A.    Plaintiffs Fail To Rebut The Individual Defendants' Entitlement To Qualified Immunity.

The Individual Defendants are entitled to qualified immunity and dismissal of plaintiffs' due process and equal protection claims because plaintiffs fail to show that the alleged conduct of the Individual Defendants violated a clearly established constitutional right (or any constitutional right at all).  A right is clearly established only when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'  * * * [E]xisting precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 US 731, 741, 131 S Ct 2074, 179 L Ed 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483 US 635, 640, 107 S Ct 3034, 97 L Ed 2d 523 (1987)).  To overcome the Individual Defendants' entitlement to qualified immunity, plaintiffs must therefore first show that it was "beyond debate" that the alleged conduct of the Individual Defendants implicated plaintiffs' constitutionally protected property rights or liberty interests.  If plaintiffs succeed at this (which they cannot), plaintiffs must also establish that it was "beyond debate" that the Individual Defendants' alleged conduct impinged plaintiffs' constitutional rights.  To establish this, plaintiffs must show the following, with respect to plaintiffs' three constitutional claims:

- Procedural due process claim:  Plaintiffs must show that a reasonable University official would have understood that the Constitution entitled plaintiffs to additional process they were not offered *and* that plaintiffs' affirmative agreements to the hearing procedures they received were invalid.

- Substantive due process claim:  Plaintiffs must show that a reasonable University official would have understood that the alleged conduct of the Individual Defendants shocked the conscience.

- Equal protection claim:  Plaintiffs must show that a reasonable University official would have understood that the alleged conduct of the Individual Defendants was discriminatory against plaintiffs based on their sex or gender.

Page 3 -    Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiffs' response fails at both steps of the qualified-immunity analysis. Plaintiffs fail to show that it is "beyond debate" that the alleged conduct of the Individual Defendants implicated or infringed plaintiffs' constitutional rights. The Individual Defendants are accordingly entitled to qualified immunity on all three of plaintiffs' constitutional claims.

      1.    <u>Plaintiffs have not demonstrated a clearly established property right</u>.

Plaintiffs argue that they had a well-recognized, constitutionally protected property right to their college educations, their positions on the University's basketball team, their athletic scholarships and related aid, future scholarships at another school, and future NBA contracts or other professional sports contracts. (Plaintiffs' Memorandum in Opposition to the Defendants' Motion to Dismiss ("Pls.' Response") at 10-11.) But none of these alleged property rights have been recognized by the Supreme Court, the Ninth Circuit, or the District of Oregon, and therefore they are not clearly established in this jurisdiction. Plaintiffs cite the Supreme Court's holding in *Goss v. Lopez*, 419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975), two federal district court cases from other jurisdictions, and the Ninth Circuit's decision in *Stretten* in purported support of a constitutionally protected property right.[1] But as shown below, these cases do not establish plaintiffs' alleged right.

      a.    <u>Plaintiffs' reliance on Goss does not establish a property right to higher education.</u>

Plaintiffs do not deny that constitutionally protected property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972). In fact plaintiffs underscore this point by quoting the holding in *Goss* that "*on the basis of [Ohio] state law*, appellees plainly had legitimate claims of entitlement to a public [K-12] education." 419 US at 573 (emphasis added). (*See* Pls.' Response

---

[1] Plaintiffs also cite *Dixon v. Ala. State Bd. of Educ.*, 294 F2d 150 (5th Cir), *cert denied*, 368 US 930 (1961), and *Marin v. Univ. of Puerto Rico*, 377 F Supp 613 (DPR 1974). Both of these cases, however, are most appropriately analyzed as liberty-interest cases and are addressed in the liberty-interest subsection of this argument.

Page 4 -    Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

at 12 n.10.)  Yet plaintiffs subsequently fail to identify any Oregon law that conferred to them a property interest in their college education (or any of the other purported property rights they assert).  Plaintiffs also fail to, and cannot, explain how *Goss* applies to postsecondary education, under any circumstance.[2]  The state laws that gave rise to the property right recognized in *Goss* (laws that provided free K-12 education and mandated attendance) do not apply to public higher education.  And without analogous Oregon laws or other binding rules applicable to higher education, the property right recognized in *Goss* is inapposite to students who attend Oregon's public universities.

        b.    <u>Plaintiffs' reliance on cases that "assume without deciding"<br>whether a property right exists is misguided.</u>

Plaintiffs next attempt to demonstrate a clearly established property right in education through case law that "assumes without deciding" whether a constitutionally protected right exists.  It is a basic principle of law, however, that such cases neither recognize the existence of a property right nor clearly establish it.  Plaintiffs' citations of the following cases do not, therefore, undercut the Individual Defendants' entitlement to qualified immunity, as plaintiffs contend:  *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 US 78, 84, 98 S Ct 948, 55 L Ed 2d 124 (1978) ("We need not decide, however, whether respondent's dismissal deprived her of a liberty interest in pursuing a medical career.  Nor need we decide whether respondent's dismissal infringed any other interest constitutionally protected * * *."); *Regents of Univ. of Mich. v. Ewing*, 474 US 214, 222-23, 106 S Ct 507, 88 L Ed 2d 523 (1985) ("remembering Justice Brandeis' admonition not to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, * * * [w]e therefore * * * assume the existence of a constitutionally protectible property right in [plaintiff's] continued enrollment") (internal

---

[2]  In an attempt to substantiate a property right in higher education, plaintiffs footnote *Goss*'s citation of *Black Coalition v. Portland Sch. Dist. No. 1*, 484 F2d 1040 (9th Cir 1973), in which the Ninth Circuit ruled that high school students must be afforded a hearing before receiving a long-term suspension.  Like *Goss*, *Black Coalition* does not recognize any constitutional right applicable to University students and thus does not support plaintiffs' position.

Page 5 -    Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

quotation marks and citations omitted); *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F3d 620, 627 (4th Cir 2002) (explaining that the Supreme Court has not "actually decid[ed] that university students possess a 'constitutionally protectable property right' in their continued enrollment in a university," and following suit) (quoting *Ewing*, 474 US at 223); *Blanton v. State Univ. of N.Y.*, 489 F2d 377, 385 (2d Cir 1973) ("we do not find it necessary to decide the point" whether a property right exists); *Lewin v. Med. Coll. of Hampton Roads*, 910 F Supp 1161, 1164 (ED Va 1996) ("For the purpose of disposing of the instant motion, the Court finds that Plaintiff had a protectible property interest in continued enrollment * * *.").[3]  In each of these cases, the respective courts assumed a property right without considering the issue, only to dispose of the plaintiffs' due process claims by finding sufficient process under any standard.  Moreover, the fact that *Horowitz* and *Ewing*—the two Supreme Court higher education cases that plaintiffs cite—do not affirmatively recognize a property right in higher education strongly supports Defendants' argument that such a right has not been clearly established.

>        c.    Plaintiffs' reliance on two out-of-district cases does not clearly
>              establish a property right to higher education in Oregon.

Nor do plaintiffs' citations of two out of jurisdiction district court cases, *Hall v. Univ. of Minn.*, 530 F Supp 104 (D Minn 1982), and *Hart v. Ferris State Coll.*, 557 F Supp 1379 (SD Mich 1983), clearly establish a constitutionally protected property right in public higher education in Oregon.  These decisions are not binding on the District of Oregon and are of limited persuasive value because neither court discusses, in any meaningful way, why it recognized a property right in higher education.  In *Hall*, the court explained that "[p]rotected property interests are usually created and defined *by sources such as state law*."  530 F Supp at 107 (citing *Roth*, 408 US 564) (emphasis added).  Then, without analysis of any applicable state law, the court announced that "[a] student's interest in attending a university is a property right

---

[3]  Moreover, plaintiffs incorrectly assert that the *Lewin* court denied the defendant's motion to dismiss, when in fact the court granted dismissal of the plaintiff's procedural and substantive due process claims.  *Lewin*, 910 F Supp at 1167, 1169; *see* Pls.' Response at 13.

Page 6 -    Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

protected by due process." 530 F Supp at 107. Similarly, in *Hart*, the court stated, without

further discussion, that "the threat of suspension or expulsion implicates plaintiff's property and

liberty interests in public education and reputation." 557 F Supp at 1382. Whether or not these

cases clearly establish a property right to higher education in Minnesota or Michigan, plaintiffs

are mistaken that they demonstrate "beyond debate" the existence of a property right to higher

education in Oregon. No Oregon court has recognized such a right.

      Instead of citing any authoritative case on point, plaintiffs attempt to discredit

Defendants' citation of three District of Oregon cases. *See Ryan v. Harlan*, No. CV-10-626-ST,

2011 WL 711110 (D Or Feb. 22, 2011); *Harrell v. S. Or. Univ.*, No. CV 08-3037-CL, 2010 WL

2326576 (D Or Mar. 24, 2010); *Fernandez v. Rosenzwieg*, No. CIV. 95-241-FR, 1996 WL

453046 (D Or Aug. 8, 1996). Yet plaintiffs fail to actually distinguish them, and these three

Oregon case are more analogous and more recent than *Hall* and *Hart*. More importantly, these

cases are at least in the same jurisdiction as plaintiffs' case and, at a minimum, demonstrate that

plaintiffs have no *clearly established* property right in public higher education in Oregon.

      d.    <u>Stretten does not address the question of a property right to playing
collegiate basketball, receiving an athletic scholarship, or receiving
an NBA contract.</u>

      Finally, plaintiffs assert that the Ninth Circuit's ruling in *Stretten* recognized "a

property interest in a medical resident's continued education," and thus ostensibly to playing for

the University's basketball team, having their scholarships renewed, and receiving NBA

contracts. (Pls.' Response at 14.) But this is not what the Ninth Circuit found. The court was

not presented with the question whether a property right exists in collegiate athletics, athletic

scholarships, or hypothetical professional sports contracts. Instead, the question presented in

*Stretten* was whether a medical resident had a constitutionally protected property interest in his

employment as a medical resident, to which Stretten had been appointed for "a specified four-

year duration." *Stretten*, 537 F2d at 367. Plaintiffs contend that "[i]n terms of a recognized

property interest, there can be no distinctive difference between Dr. Stretten's residency and

Page 7 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

plaintiff's scholarships," but plaintiffs do not explain why. *Stretton*, however, is part of a body of case law governing property interests in employment which is not applicable here because plaintiffs do not allege they were employees of the University.[4] *See, e.g.*, *Roth*, 408 US 564, *Slochower v. Bd. of Educ.*, 350 US 551, 76 S Ct 637, 100 L Ed 692 (1956), *Cleveland Bd. of Educ. v. Loudermill*, 470 US 532, 105 S Ct 1487, 84 L Ed 2d 494 (1985), *Perry v. Sinderman*, 408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972).  And in contrast to plaintiffs' assertion, there were substantial differences between Stretten's residency and plaintiffs' scholarships that bear directly on the constitutional issue.  The Ninth Circuit recognized Stretten's property interest in his residency based on evidence that he was appointed to a four-year residency but was terminated from his position after one year. *Stretten*, 537 F2d at 367.  Plaintiffs, on the other hand, were offered one-year scholarships (renewable at will by the University on a year-to-year basis), which were provided in full.  Plaintiffs have not pleaded that their scholarships were terminated early.  Plaintiffs' reliance on *Stretten* not only fails to establish plaintiffs' alleged property right to their scholarships (and the other property rights plaintiffs claim), but also illustrates the differences between the property right that plaintiffs assert and those that the Ninth Circuit has previously recognized.

Plaintiffs' response fails to demonstrate any clearly established property rights, and thus the Individual Defendants could not have been on notice that their alleged conduct violated the Constitution.  In addition, plaintiffs present no support for their position that the alleged conduct of Gottfredson and Martin, specifically, implicated a protected property right. None of the cases that plaintiffs discuss support their contention that by making a public speech, a university president violates a student's alleged constitutional right to higher education, to receive an athletic scholarship, or to play collegiate or professional basketball.  Similarly, none

---

[4]  Plaintiffs' Opposition includes a discussion of *Stretten* that appears to be merely a lengthy, uncited quotation of the opinion.  *Compare* Pls.' Response at 14-16 *with Stretten*, 537 F2d at 366-67.

Page 8 -    Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

of the cases demonstrate that a university student's alleged constitutional rights are violated by receiving a temporary emergency suspension. Gottfredson and Martin are therefore entitled to qualified immunity for these separate and additional reasons.

        2.      <u>Plaintiffs have not demonstrated a clearly established liberty interest</u>.

Plaintiffs contend that plaintiffs had a well-recognized liberty interest in remaining students in "good standing at the University, and being free from the stigma associated with being suspended for disciplinary reasons." (Pls.' Response at 11.) Here again, plaintiffs have failed to show that any such interests were clearly established such that a reasonable University official would understand, beyond debate, that plaintiffs' suspensions implicated a constitutionally protected liberty interest. *See al-Kidd*, 563 US at 741.

        a.      <u>Contrary to plaintiffs' contention, two out-of-district cases do not clearly establish plaintiffs' liberty interest to remain students in good standing at the University</u>.

It is plaintiffs' position that *Dixon* and *Marin* demonstrate that plaintiffs had a liberty interest in remaining University students in good standing. But two out-of-district cases do not clearly establish plaintiffs' alleged interest and, in any event, these cases actually support Defendants' position. In *Dixon*, the Fifth Circuit held that "notice and some opportunity for hearing" were necessary before Alabama State College could expel student civil-rights activists for allegedly participating in political demonstrations at the Montgomery County Courthouse. 294 F2d at 151. Similarly, the District of Puerto Rico found that the *General Rules and Regulations for the Students of the University of Puerto Rico* was unconstitutionally overbroad and implicated students' liberty interests because it allowed the university to summarily issue long-term suspensions to students for engaging in protected speech. *Marin*, 377 F Supp at 621, 626. In stark contrast to plaintiffs here—who were suspended, after an administrative hearing, for engaging in sexual misconduct—the plaintiffs in *Dixon* and *Marin* were suspended, without any process, for engaging in speech protected by the First Amendment. Not only was plaintiffs' conduct highly distinguishable from the conduct of the students in *Dixon* and *Marin*, but *Dixon*

Page 9 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

and *Marin* are not binding on Oregon courts.  Moreover, both *Dixon* and *Marin* predate the

Supreme Court's decision in *Horowitz* (treating the existence of a liberty interest in continued

enrollment in postsecondary education as an open question) as well as the District of Oregon's

decisions in *Harrell* and *Fernandez* (declining to recognize a liberty interest in continued

enrollment in postsecondary education), which demonstrates that the cases plaintiffs rely on

cannot possibly be viewed as clearly establishing a liberty interest in continued enrollment in

postsecondary education.  Therefore, it was not beyond debate that the Individual Defendants'

alleged conduct implicated plaintiffs' asserted liberty interest in their status as students.

> b.    <u>Plaintiffs offer no support for their assertion that the Constitution
> protects them from alleged stigma purported to be the result of
> their suspensions from the University</u>.

Plaintiffs contend, without discussion, that they had a constitutional interest in

being free from the alleged stigma associated with being suspended for misconduct.  To support

their contention, plaintiffs cite *Hart*, in which a district court in Michigan concluded, without

explaining why, that a Ferris State College student had a liberty interest in her reputation.  To

establish their alleged liberty interest, plaintiffs would have to demonstrate that "a right or status

previously recognized by state law was distinctly altered or extinguished" by the conduct of the

Individual Defendants.  *Paul v. Davis*, 424 US 693, 711, 96 S Ct 1155, 47 L Ed 2d 405 (1976).

Because no Oregon law recognized plaintiffs' right to remain students at the University, their

suspensions did not distinctly alter or extinguish a previously recognized right.  Moreover,

plaintiffs argue that they have been stigmatized by their suspensions, but fail to plead any facts

that support this assertion.  For example, plaintiffs do not plead that they were denied transfer to

another college or university based on this purported stigma—plaintiffs in fact have both

successfully transferred to other Division I schools, where they play basketball.  (Defs.' Mot. to

Dismiss at 56 n.15.)  Without any factual allegations of this sort, the stigma that plaintiffs allege

is not "a deprivation of liberty within the meaning of the Due Process Clause."  *Davis*, 424 US at

702.  Furthermore, plaintiffs have not alleged that the Individual Defendants notified the public

Page 10 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

of their suspensions.  According to the complaint, *The Oregonian*—not any of the Individual Defendants—published the criminal allegations against plaintiffs.  (Compl. ¶ 26.)  Consequently, the Individual Defendants cannot, as a matter of law, be liable for any stigma.

As with plaintiffs' property-right arguments, plaintiffs fail to demonstrate any clearly established liberty interest.  In particular, plaintiffs fail to show that Gottfredson's statement or the temporary suspension issued by Martin implicated plaintiffs' clearly established liberty interests.  Plaintiffs contend that Gottfredson "in effect imposed discipline upon" them through his May 9, 2014, public statement,[5] and allege that Gottfredson's comment that plaintiffs would "not be playing basketball at Oregon again" "preordained and dictated the outcome of any 'due process' hearing."  (Pls.' Response at 6.)  In so asserting, however, plaintiffs conflate their removal from the basketball team and their suspension from the University, which in reality occurred months apart.[6]  Plaintiffs fail to assert any plausible connection between Gottfredson's comment and any discipline that was imposed on plaintiffs[7] and merely assert that Gottfredson "condemn[ed]" them.  (Compl. ¶ 28.)  Under the Supreme Court's jurisprudence, however,

---

[5]  By now claiming that Gottfredson's statement "*in effect* imposed discipline upon" plaintiffs, plaintiffs appear to retreat from their previous assertion that Gottfredson actually "imposed discipline upon" them.  *Compare* Pls.' Response at 6 (emphasis added) *with* Compl. ¶ 28.

[6]  Additionally, plaintiffs cannot in good faith dispute that they had in fact been removed from the University's basketball team before Gottfredson made this comment.

[7]  Plaintiffs' argument ignores the undisputed contents of the April 28, 2014, police report, to which Gottfredson was responding.  Despite plaintiffs' counsels' assertion in the complaint that "[a]t no point did the female student say 'no' about any sexual activity * * * [and] expressed verbal consent and/or gave unmistakable physical indications of her desire to participate in sexual contact with the [plaintiffs] at the times they were engaged in sexual conduct" (Pls.' Response at 5), in the police report Artis is reported as saying that "the first time any of [the plaintiffs] knew [that the female student] did not want to continue was when she started to cry" and that "he regretted the situation, and could understand why she felt like she was taken advantage of, given what she remembered."  When the female student "asked Artis if he felt like he did anything wrong[,] [h]e said he absolutely did, and said he felt bad about the situation."  Dotson is quoted as acknowledging that "at the point [the female student] started crying he thought, 'She does not want to do this'" and admitting to the female student that "what he did was very inappropriate, and * * * that he would not want anyone to do that to his mom or sister * * * and would never do it again."  Additionally, the report states that when the female student told Dotson that "he was pulling on her hair and pushing her head toward his penis, and that she did not appreciate that[,] Dotson said that he was sorry about that, and it was inappropriate."

Page 11 -  Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

condemnation of behavior by a public official, without more, is not a constitutional violation. Gottfredson's public statement did not therefore impinge on plaintiffs' clearly established liberty interests. *See Davis*, 424 US at 702. Plaintiffs also fail to offer any legal authority that suggests that the short-term emergency suspension of university students accused of sexual misconduct infringes on the students' clearly established liberty interests. Accordingly, Gottfredson and Martin are entitled to qualified immunity for these separate and additional reasons.

        3.    <ins>Defendants Weintraub and Holmes are entitled to qualified immunity because plaintiffs agreed to their administrative conference and waived Their Right to an appeal.</ins>[8]

As Defendants have argued, there is no clearly established property right or liberty interest in public higher education in Oregon, playing collegiate basketball, receiving an athletic scholarship, receiving a future NBA or other professional sports contract, or being free from any stigma resulting from a suspension from the University. But even if the court finds (for the first time in this jurisdiction) that any of the foregoing rises to the level of a clearly established constitutional right or interest, defendants Weintraub and Holmes are entitled to qualified immunity for the additional reason that plaintiffs agreed to the process they received and waived additional procedural safeguards.

Plaintiffs do not refute that they agreed to proceed by administrative conference, thus affirmatively waiving additional procedure that they might have otherwise been afforded by the University. As documentation of plaintiffs' agreement to these procedures, Defendants submitted to the court (a) an e-mail in which Artis's former attorney explained, in relevant part, that "Mr. Artis agrees to proceed with the decision made by the university's neutral administrator rather than by a panel, with the conditions set forth in your earlier offer," and (b) a Special Choice of Resolution Form in which Dotson signed his agreement to proceed by administrative

---

[8] Plaintiffs do not plead that Gottfredson or Martin took part in plaintiffs' administrative hearing or were otherwise connected to plaintiffs' alleged attempts to appeal. Consequently, they are entitled to qualified immunity regardless of whether plaintiffs' constitutional rights were violated (though they were not) in their hearing or their alleged attempts to appeal their suspensions.

Page 12 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

conference instead of a panel hearing.  (Declaration of Lisa Thornton in Support of Defendants'

Motion to Dismiss ("Thornton Decl."), Ex. C.)

      Plaintiffs do not dispute the authenticity of these documents and concede that they

"accepted the 'administrative conference' option" at the time.  (Pls.' Response at 18.)

Nevertheless, plaintiffs attempt to retroactively rescind their agreement to participate in an

administrative conference by arguing that their agreement was not enforceable because (a) they

did not like either of the hearing options that the University offered and (b) neither option was

constitutionally adequate.  (Pls.' Response at 18-19.)  But the fact that plaintiffs confronted a

potentially difficult choice between a panel hearing where they faced a possible sanction of

expulsion or an administrative conference where they faced the more limited sanction of

suspension does not render their agreement to the administrative conference unenforceable.  *See,*

*e.g.*, *Doe v. Woodford*, 508 F3d 563, 572 (9th Cir 2007) ("We have no doubt that the decision to

plead guilty is a difficult one for many defendants, but the fact that one struggles with the

decision, and might later even come to regret it, does not render it coerced."); *Johnson v. United*

*States*, 539 F2d 1241, 1243 (9th Cir 1976).  Neither does plaintiffs' additional assertion that they

requested a contested hearing but nevertheless agreed to an administrative conference.

      But in any event, Weintraub and Holmes are entitled to qualified immunity.  Even

if the court finds that both hearing options were constitutionally inadequate, it was not

unreasonable for Weintraub and Holmes to believe that plaintiffs had agreed to participate in an

administrative conference and waived their right to appeal the hearing.  By the express terms of

Dotson's agreement, he elected to, among other things, proceed with an administrative

conference, waive his right to a panel hearing, and waive his right to appeal the outcome of his

hearing to the University.  (Thornton Decl., Ex. C.)  Similarly, Artis's agreement to "the

conditions set forth" for the administrative conference also incorporated a waiver of his right to a

panel hearing and a waiver of his right to appeal.  (*Id.*)  Furthermore, plaintiffs have not pleaded

any facts that could plausibly suggest that Weintraub and Holmes knew, or should reasonably

Page 13 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

have known, that plaintiffs' agreements and associated waivers were invalid (because they were not).  Weintraub is therefore entitled to qualified immunity because he could not have reasonably understood that conducting an administrative conference violated plaintiffs' constitutional rights when plaintiffs had agreed in writing to an administrative conference.  Likewise, Holmes is entitled to qualified immunity because she could not have reasonably understood that allegedly not granting plaintiffs' requests for an appeal violated plaintiffs' constitutional rights when plaintiffs had agreed in writing that they had no appeal right.

        4.      <u>Plaintiffs fail to rebut Defendants' argument that the Oregon Administrative Procedures Act does not confer any property or liberty interests</u>.

Despite plaintiffs' conclusory allegations, plaintiffs do not rebut, and implicitly concede, Defendants' argument that the Oregon Administrative Procedures Act (the "APA") does not confer a property or liberty interest.  Because plaintiffs cannot show that they had a clearly established property or liberty interest based on another source of law, it is immaterial whether the Individual Defendants complied with the APA, and the procedural requirements of the APA have no bearing on the Individual Defendants' entitlement to qualified immunity.

        5.      <u>Plaintiffs fail to demonstrate that their substantive due process claim should survive despite not alleging a violation of their fundamental rights</u>.

The Individual Defendants are also entitled to qualified immunity with respect to plaintiffs' substantive due process claim because the alleged conduct of the Individual Defendants did not violate a clearly established property or liberty interest (as discussed in the preceding subsections) or implicate a fundamental right.  In addition, a reasonable University official would not have understood that the alleged conduct of the Individual Defendants shocked the conscience (because it did not).

Plaintiffs' response offers no legal support for their assertion that the Individual Defendants violated plaintiffs' substantive due process rights (or any other constitutional rights).  The Supreme Court has explained that it "'has always been reluctant to expand the concept of

Page 14 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

substantive due process because the guideposts for responsible decisionmaking in this uncharted [sic] area are scarce and open-ended.'" *Albright v. Oliver*, 510 US 266, 271-72, 114 S Ct 807, 127 L Ed 2d 114 (1994) (quoting *Collins v. City of Harker Heights, Tex.*, 503 US 115, 125, 112 S Ct 1061, 117 L Ed 2d 261 (1992)). Plaintiffs' unsupported allegations are just that, an attempt to expand the concept of substantive due process into uncharted territory.

Rather than analyze the issue of substantive due process—or cite any case that addresses substantive due process—plaintiffs' argument focuses on "basic fairness" as set forth in *Cloud v. Trs. of Boston Univ.*, 720 F2d 721 (1st Cir 1983), and *Schaer v. Brandeis Univ.*, 735 NE2d 373 (Mass 2000). (Pls.' Response at 21.)[9] But *Cloud* and *Schaer* are not relevant to plaintiffs' constitutional claim. In both cases, the plaintiff sued a private university for an alleged breach of contract—not a violation of substantive due process. *Cloud*, 720 F2d at 724 ("Cloud subsequently brought a diversity action in the district court * * * in which he alleged violation of his contract rights due to the improper conduct of the hearing."); *Schaer*, 735 NE2d at 377 ("We agree with the Appeals Court that only the breach of contract claim needs to be analyzed."). Nevertheless, even if the court were to apply the concept of basic fairness here, *Cloud* and *Schaer* demonstrate that the Individual Defendants met (and exceeded) this standard.

In *Cloud*, the First Circuit explained that "[w]here, as here, the university specific-ally provides for a disciplinary hearing before expulsion, we review the procedures followed to ensure that they fall within the range of reasonable expectations of one reading the relevant rules." 720 F2d at 724-25. While plaintiffs argue that they should have received more procedure, they have not pleaded that the Individual Defendants denied them any procedure set forth in the regulations governing University administrative conferences. Thus, "one reading the relevant rules" would conclude that plaintiffs received all process due under the University's regulations.

---

[9] A substantial portion of plaintiffs' substantive due process discussion appears to be another lengthy, uncited quotation from a court opinion. *Compare* Pls.' Response at 21-23 *with Doe v. Brandeis Univ.*, No. 15-11557-FDS, 2016 WL 1274533, at *31-33 (D Mass Mar. 31, 2016).

Page 15 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

       *Schaer* cuts even more sharply against plaintiffs' arguments.  In affirming the dismissal of the plaintiff's breach-of-contract claim, the court explained that not only are "[c]ourts * * * chary about interfering with academic and disciplinary decisions made by private colleges and universities," but "[a] university is not required to adhere to the standards of due process guaranteed to criminal defendants * * *."  735 NE2d at 381 (internal quotation marks and citation omitted).  This, however, is exactly what plaintiffs contend:  "Defendants failed to provide a variety of procedural protections to Mr. Artis and Mr. Dotson, many of which, *in the criminal context*, are the most basic and fundamental components of due process of law."  (Pls.' Response at 23 (emphasis added)).  Despite plaintiffs' frequent invocation of criminal law due process standards and the District Attorney's decision not to prosecute plaintiffs yet, the University did not conduct a criminal proceeding.  It conducted an administrative conference as defined by OAR 571-021-0205.  Accordingly, plaintiffs' arguments fail to establish that the Individual Defendants plausibly violated plaintiffs' alleged constitutional rights, much less any clearly established rights.

       Plaintiffs present no support to show that a reasonable University official would have understood that it violated the Constitution (a) for a university president, father, or any other person to publicly deplore the "type of behavior in the police report,"[10] (b) to issue a temporary emergency suspension while the University investigated allegations of serious misconduct, (c) to conduct an administrative hearing in accordance with the procedures agreed to by all parties to the hearing, or (d) not to grant an appeal to students who agreed that they could

---

[10]  Notably, plaintiffs do not claim that Gottfredson publicly announced that plaintiffs had engaged in illegal conduct, but instead that Gottfredson stated that the *type of behavior* depicted in the police report was unacceptable and would not be tolerated by the University.  The type of behavior in the police report included, for example, underage drinking and group sexual activity that, in Dotson's own words, Dotson would not want anyone doing "to his mom or sister."  The police report also reflects that Artis told the police the female student "[did] not want to continue" and his actions were "wrong," and that Dotson told the police that the female student did "not want to do this" and his actions were "inappropriate."

Page 16 -  Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

not appeal the outcome of their hearing.  For these separate and additional reasons, the Individual

Defendants are entitled to qualified immunity for plaintiffs' substantive due process claim.

**B.    Plaintiffs Fail To Establish That the Individual Defendants' Alleged Conduct Implicated Any Constitutionally Protected Property Rights Or Liberty Interests.**

Although the Individual Defendants are entitled to qualified immunity and thus

not subject to liability for plaintiffs' due process and equal protection claims, it is appropriate for

the court to dismiss these claims for the separate and additional reasons that plaintiffs fail to

"establish the existence of * * * a liberty or property interest." *Shanks v. Dressel*, 540 F3d 1082,

1090 (9th Cir 2008) (internal quotation marks and citation omitted).  Plaintiffs fail to establish a

constitutionally protected property right because they had no legitimate claim of entitlement to

attend the University, play for its basketball team, have their scholarships renewed, or sign a

contract with a professional sports team.  Plaintiffs' response identifies no Oregon law or any

other "existing rule[] or understanding[]" that supports an entitlement to these "unilateral

expectation[s]." *Roth*, 408 US at 577.  The Supreme Court has explained that university students

may claim an entitlement to their education *only if* state law confers this entitlement.  *See*

*Horowitz*, 435 US at 82.  Plaintiffs identify no Oregon law that confers such an entitlement on

University students.  Similarly, plaintiffs fail to identify any Oregon law that entitled them to a

spot on the University's basketball team.  As Defendants explained in their motion to dismiss, the

majority of courts that have addressed this question have found no constitutionally protected

interest in participation in intercollegiate athletics.  *See* cases cited in Defs.' Mot. to Dismiss at

12.  Finally, plaintiffs point to no Oregon law that guaranteed that their scholarships would be

renewed, that they would receive scholarships from another Division I school (which, ironically

in consideration of plaintiffs' claims, both plaintiffs have received), or that guaranteed that they

would receive contracts to play professional basketball.

Plaintiffs' response also fails to demonstrate that plaintiffs had a constitutionally

protected liberty interest in remaining University students in good standing or in avoiding the

Page 17 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

purported stigma associated with being suspended for engaging in sexual misconduct. As discussed previously, plaintiffs' assertion of these liberty interests is based on the Fifth Circuit's ruling in *Dixon* and two out-of-jurisdiction district court cases. But these cases do not establish that plaintiffs' liberty interests were implicated by the alleged conduct of the Individual Defendants. Consistent with the Supreme Court's ruling in *Wisconsin v. Constantineau*, 400 US 433, 91 S Ct 507, 27 L Ed 2d 515 (1971), the *Dixon* court found that Alabama State College impinged the plaintiffs' liberty interests when the school expelled the plaintiffs *without providing them with notice or any opportunity for a hearing*. 294 F2d at 154. Here, in contrast, plaintiffs received both notice and an opportunity to be heard before they were suspended (not expelled) from the University. Furthermore, plaintiffs' suspensions did not alter any cognizable rights to education or athletic participation, which precludes a finding that their liberty interests were impinged. *See Davis*, 424 US at 711 (explaining that defamation by a government official does not impinge on constitutionally protected liberty interests unless "a right or status previously recognized by state law was distinctly altered or extinguished").

Because plaintiffs cannot demonstrate the existence of any constitutionally protected property rights or liberty interests, their constitutional claims should be dismissed for failure to state a claim.

### C.    Plaintiffs Were Afforded Adequate Process.

Defendants are entitled to dismissal of plaintiffs' due process claim for the separate and additional reason that plaintiffs' administrative hearing provided constitutionally adequate process. Plaintiffs argue that the Individual Defendants violated their due process rights because they were not allowed to subpoena or cross-examine witnesses and were not provided with unredacted reports from the University's case file. (Compl. ¶ 34.) The Due Process Clause, however, does not require these procedures when a university student is suspended from school for violating the student conduct code.

Page 18 -  Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

In *Dixon*, a case relied on heavily by plaintiffs, the court explained that its "holding that due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct" does "not * * * imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required."  294 F2d at 158, 159; *see also Winnick v. Manning*, 460 F2d 545, 549 (2d Cir 1972) ("The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings.").  Instead, the Fifth Circuit speculated that "the requirements of due process of law will have been fulfilled" if a student receives (a) "notice * * * of the specific charges and grounds which, if proven, would justify expulsion," (b) "the names of the witnesses against him and an oral or written report on the facts to which each witness testifies," and (c) "the opportunity to present to the Board * * * his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf."  294 F2d at 158-59.

In light of these standards—outlined in the case that plaintiffs contend should govern—plaintiffs fail to state a procedural due process claim, and their assertion that they would not be "provided requisite due process" through a panel hearing (which they waived) or an administrative conference (which they elected) is without merit.  (Pls.' Response at 8-9.) Plaintiffs have not alleged that the University's notice was deficient, and they had no constitutional right to cross-examine witnesses.  *See Dixon*, 294 F2d at 159; *Winnick*, 460 F2d at 549.  And plaintiffs' remaining allegations (that they were not allowed to subpoena witnesses and received redacted reports) are not required under *Dixon*.  As explained above, *Dixon* suggests that accused students be notified of the names of adverse witnesses and the facts to which each adverse witness has testified.  294 F2d at 158, 159.  Under both hearing options that the University offered, plaintiffs were afforded "reasonable access to the case file, *but * * * not * * * access to material the disclosure of which is prohibited by law*."  OAR 571-021-0210(7) (panel hearing) (emphasis added); OAR 571-021-0205(1)(a) (administrative conference) (emphasis added).  This court should find that, as a matter of law, reasonable access to a case file provides

Page 19 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

accused students with adequate notice of inculpatory evidence and that the University did not violate plaintiffs' due process rights by redacting information that the University was prohibited by law from disclosing.  Consequently, plaintiffs' due process claim should be dismissed for this additional basis.

### D.    Plaintiffs Did Not Rebut Defendants' Motion to Dismiss Plaintiffs' Equal Protection Claim.

Plaintiffs' complaint alleges that the Individual Defendants violated plaintiffs' equal protection rights by allegedly treating plaintiffs "in a disparate manner [and] discriminating against them due to their gender."  (Compl. ¶ 87.)   Defendants moved to dismiss this claim, arguing that (1) plaintiffs' allegations do not implicate any constitutional rights, (2) plaintiffs have not pleaded factual allegations that plausibly suggest that the Individual Defendants acted with discriminatory animus, and (3) the Individual Defendants are entitled to qualified immunity.

Plaintiffs' opposition to Defendants' motion to dismiss, however, fails entirely to respond to Defendants' arguments opposing liability under the Equal Protection Clause. Accordingly, this court should find that plaintiffs have conceded this claim, and it should be dismissed.  *See adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F Supp 2d 1029, 1076 (D Or 2008) ("By failing to respond to adidas' legal abandonment argument, Payless effectively concedes that adidas' [sic] has *not* abandoned its rights in the Three-Stripe Mark or its Superstar Trade Dress.").

In any event, to prevail in their equal protection claim, plaintiffs must demonstrate that "the defendants acted in a discriminatory manner *and* that the discrimination was intentional."  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F3d 736, 740 (9th Cir 2000) (citing *Fed. Deposit Ins. Corp. v. Henderson*, 940 F2d 465, 471 (9th Cir 1991)) (emphasis added).  Plaintiffs cannot do this and have failed to plead any factual allegations that plausibly suggest that the Individual Defendants discriminated against plaintiffs based on their sex or gender.  Plaintiffs' allegations consist of legal conclusions and mere speculation of discrimination.  And their

Page 20 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

attempt to frame Gottfredson's May 9, 2014, statement as evidence of discrimination falters under its own weight. Gottfredson's statement was void of any suggestion of discriminatory animus against plaintiffs because of their gender or sex, and even if it could infer bias in favor of the alleged victim, "bias in favor of alleged victims of sexual assault and against students accused of sexual assault * * * is not the same as gender bias because sexual assault victims can be either male or female." *Doe v. Univ. of Cincinnati*, No. 1:15-CV-681, 2016 WL 1161935, at *14 (SD Ohio Mar. 23, 2016). In addition, as plaintiffs have pointed out, Gottfredson announced that his remarks were intentionally limited because the University was "not going to violate the laws that are in place to protect students' privacy *or the rights of our students*." (Pls.' Response at 6) (emphasis added). This comment is antithetical to plaintiffs' argument that Gottfredson's statement can plausibly be interpreted as demonstrative of discriminatory intent, which is required to prove an equal protection violation. *Reese*, 208 F3d at 740. Plaintiffs' equal protection claim should be dismissed for failure to state a claim.

> ### E.    Plaintiffs Have Asserted No Factual Allegations That Support Their Claim Of Discrimination Based On Gender Or Sex.

Plaintiffs' Title IX claim should be dismissed because they did not plead factual allegations that plausibly suggest that the University's alleged conduct was motivated by plaintiffs' gender or sex.[11] Plaintiffs' response rehashes their deficient pleadings and argues that a recent nonbinding decision from the District of Rhode Island, *Doe v. Brown Univ.*, No. 15-144 S, 2016 WL 715794 (DRI Feb. 22, 2016), supports their position that they have "plausibly plead[ed]" a Title IX claim. (Pls.' Response at 3.)[12] As an initial matter, *Brown University* does

---

[11] Though the complaint repeatedly asserts that University officials were biased against plaintiffs because of their gender or sex, none of these assertions include factual allegations suggestive of discriminatory intent. *See, e.g.*, Compl. ¶¶ 59-62, 66. Plaintiffs merely tack on descriptive statements (e.g., "an accused male student," "as a male student") and conclusory opinions (e.g., "based on sex," "because of her sex," "gender-based actions") to their allegations that their procedural rights were violated and the outcome of their administrative hearing was wrong.

[12] *Brown University* was not "issued on the same day that the Defendants filed their Motion" in *this* case, as plaintiffs state. (Pls.' Response at 3, n.3.)

Page 21 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

not control the pleading standard with which plaintiffs must comport.  The relevant standard is set forth in *Ashcroft v. Iqbal*, 556 US 662, 678-81, 129 S Ct 1937, 173 L Ed 2d 868 (2009), in which the Supreme Court explained that a claim survives a motion to dismiss only if, after disregarding "mere conclusory statements" and legal conclusions, plaintiffs' factual allegations "plausibly suggest an entitlement to relief."  But furthermore, contrary to plaintiffs' arguments, the *Brown University* court's decision demonstrates the deficiency in plaintiffs' pleadings.

In *Brown University*, the court found that the plaintiff had satisfied the pleading standard set forth in *Iqbal* and *Bell Atl. Corp. v. Twombly*, 550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007), by (1) alleging multiple references to specific comments by three Brown University employees that the university was biased against males and (2) identifying at least two previous cases of alleged sexual misconduct at Brown University that purportedly demonstrated the university's gender bias.  *Brown Univ.*, 2016 WL 715794, at *8-9.  Here, in contrast, plaintiffs' pleadings fail to allege even one statement by a University official actually suggestive of gender or sex bias or previous case of alleged sexual misconduct at the University that corroborates plaintiffs' claim of bias.

Plaintiffs claim that their three allegations of disparate treatment by the University against male students made "[o]n [the] information and belief" of plaintiffs' attorneys satisfy the pleading standard, as it was interpreted in *Brown University*, because "[t]he undersigned believes these [allegations] to be true."  (Pls.' Response at 31.)  Plaintiffs attempt to bolster this assertion by citing *Doe v. Salisbury Univ.*, 123 F Supp 3d 748, 768 (D Md 2015), in which the District of Maryland denied the university's motion to dismiss a Title IX erroneous-outcome claim based on several factual allegations that were pleaded "upon information and belief."

But here again, plaintiffs fail to look closely as what exactly was pleaded "upon information and belief."  As the court explained in *Salisbury*, "[a] plaintiff may not rely exclusively on conclusory allegations of unlawful conduct, even where alleged 'upon information and belief,'" 123 F Supp 3d at 768—which are exactly what plaintiffs have relied on here.

Page 22 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

According to the *Salisbury* court, to overcome a motion to dismiss, the plaintiff's complaint must allege "*specific factual allegations*." *Id.* There, to overcome the university's motion, the plaintiffs pleaded, among other things, that the university "'possesses communications evidencing Defendants' deliberate indifference in imposing wrongful discipline on Plaintiffs on the basis of their gender'" and that the university additionally "'possesses communications evidencing SU's intent to favor female students alleging sexual assault over male students * * * who are accused of sexual assault.'" *Id.* (quoting complaint).

Here, in contrast, plaintiffs have not pleaded any specific factual allegations of gender or sex discrimination, such as an alleged communication between University officials evidencing discriminatory intent. Instead, plaintiffs assert that "the University's policies and procedures" for enforcing its Student Conduct Code have a disparate impact on males in comparison to persons of other genders. But "unlike a Title VII claim, a Title IX claim may not be premised on the 'disparate impact' a policy has with respect to a protected group." *Brown Univ.*, 2016 WL 715794, at *5 (quoting *Doe v. Columbia University*, 101 F Supp 3d 356, 367 (SDNY 2015)). Therefore, whether the University's enforcement of its Student Conduct Code has a disparate impact on male students (which it does not) cannot be the premise of a Title IX claim. Accordingly, plaintiffs' pleadings do not satisfy the pleading standard applied in *Brown University* or in *Salisbury University*—neither of which not satisfy the controlling pleading standard set forth in *Iqbal*, in any event.

Plaintiffs' citation of *Emeldi v. Univ. of Or.*, 673 F3d 1218 (9th Cir 2012), is equally unconvincing to show that plaintiffs defeat Defendants' motion. Not only was *Emeldi* a Title IX retaliation case, which is not at issue here, but the allegations in *Emeldi* that persuaded the Ninth Circuit to deny summary judgment included *specific examples* of allegedly retaliatory conduct and possible gender-based discrimination. For example, the plaintiff alleged that shortly after she raised concerns of gender discrimination, her dissertation chair resigned from her dissertation committee and that male students were provided with "more office space and better

Page 23 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

technology for collecting data than similar female students."  673 F3d at 1227.  Plaintiffs here

fail to include even one similar allegation in their complaint.

        Plaintiffs' unfounded interpretation of Gottfredson's public statement does not

overcome the deficiency of their pleadings.  According to plaintiffs, Gottfredson's use of the

term "survivor" is evidence of gender bias.  (Pls.' Response at 30.)  So too, plaintiffs assert, was

Gottfredson's statement that "as a father" he was appalled at the behavior depicted in the police

report.  (*Id.*)  Yet plaintiffs make no argument why these terms are "gender-based, loaded"

words.  (*Id.*)  As Defendants articulated in their motion to dismiss, it is self-evident that

individuals of any gender may be and are survivors of sexual misconduct.  (Defs.' Mot. to

Dismiss at 29.)  Plaintiffs' response fails to address this argument.  Similarly, Gottfredson's

statement that he is a father fails to demonstrate gender bias because (1) it lacks any connection

to the actual or perceived gender of plaintiffs or their accuser and (2) parents of all genders can

be appalled by reported sexual misconduct, regardless of the accused's or the accuser's gender.

Plaintiffs' response also fails to address this argument.  Plaintiffs' nonsensical interpretation of

Gottfredson's statement is demonstrative of the dearth of factual allegations included in plaintiffs'

pleadings that suggest gender- or sex-based bias on the part of the University.

        Because plaintiffs have not pleaded any factual allegations that give rise to a

plausible inference that the University acted with discriminatory animus based on plaintiffs'

gender or sex, it is irrelevant whether their pleadings have cast plausible doubt on the outcome of

their administrative hearing.  Plaintiffs have failed to state all elements of a Title IX claim under

a theory of erroneous outcome.  Likewise, plaintiffs' selective enforcement-theory fails because it

is based on plaintiffs' misconstrual of Gottfredson's public statement and three allegations made

"[o]n information and belief," which do not comport with the pleading standards articulated in

*Iqbal*, *Twombly*, *Brown University*, or *Salisbury University*.  Finally, plaintiffs fail to set forth

any reason why their deliberate-indifference theory should survive Defendants' motion to dismiss

(Pls.' Response at 31) and fail to rebut the University's argument that the District Attorney's

Page 24 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

decision not to prosecute plaintiffs does not suggest that the University was deliberately indifferent to their rights under the University's Student Conduct Code.[13]  Plaintiffs' Title IX claim should be dismissed for failure to state a claim.

### F.    Plaintiffs' Response To Defendants' Tort Claims Arguments Confirms That Plaintiffs Cannot Plausibly Assert That Defendants Are Liable In Tort.

1.    *Kavanagh v. Trustees of Boston University* does not establish that plaintiffs had a special relationship with the University.

The University did not have a special relationship with plaintiffs.  Plaintiffs attempt to rebut Defendants' argument by asserting that in *Kavanagh v. Trs. of Boston Univ.*, 795 NE2d 1170 (Mass 2003), the Massachusetts Supreme Judicial Court held that student athletes (though not college students generally) have a special relationship with the colleges they attend.  Plaintiffs' argument fails, however, for two reasons.  First, this case does not bear on Oregon's unique negligence law, and plaintiffs make no argument as to why they had a special relationship with the University under Oregon law.  In Oregon, a special relationship would exist only if (a) plaintiffs relinquished control over important matters to the University, (b) plaintiffs authorized the University to exercise independent judgment on their behalf for the purpose of furthering their interests, and (c) the relationship between plaintiffs and the University resembled other special relationships recognized by law.  *See Bell v. PERB*, 239 Or App 239, 249-50, 247 P3d 319 (2010).  None of these factors apply to the relationship between plaintiffs and the University, and plaintiffs have made no arguments that they do.[14]

---

[13]  Additionally, plaintiffs overstate the significance of the District Attorney's initial decision not to prosecute plaintiffs yet, which does not prevent the District Attorney from deciding to prosecute them at any future point within the statute of limitations.

[14]  Defendants presume that plaintiffs' new assertions that they "transfer[red] to Oregon to play college basketball" and that they were "widely projected to 'be selected in the *first round* of the NBA Draft'" were mistakenly incorporated into their brief from Austin's brief in opposition to Defendants' motion to dismiss his claims.  (Pls.' Response at 35 (emphasis added)).  These assertions do not appear in plaintiffs' complaint and plaintiffs did not transfer to the University; they matriculated to the University out of high school.

Page 25 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Second, contrary to plaintiffs' argument, the *Kavanagh* court did not find that "numerous courts have held that student-athletes" have special relationships with the schools they attend, as plaintiffs assert.  (Pls.' Response at 35.)  Instead, the *Kavanagh* court explained that "[i]n recent years, courts and commentators have taken differing views as to what duties schools have to the scholarship athletes that they have recruited."  795 NE2d at 1176.  The court went on to explain that "[s]ome" courts (citing only the Third Circuit and a North Carolina appellate court) have found that schools have a special relationship with their student athletes, while "[o]thers have rejected that theory on the ground that there is nothing different about a student athlete's relationship with a university which would justify the conclusion that a student athlete is a custodial ward of the university while the non-athlete student is an emancipated adult."  795 NE2d at 1176, 1177 (internal quotation marks and citation omitted).  *Kavanagh*, however, does not weigh in on this issue.  795 NE2d at 11767 ("[f]or purposes of this case, *we need not enter that debate*") (emphasis added).Plaintiffs' response therefore fails to establish that plaintiffs had a special relationship with the University.

2.    Plaintiffs do not dispute that they cannot recover for negligence unless they had a special relationship with the University, and in any event, plaintiffs fail as a matter of law to show that Defendants' alleged conduct was unreasonable.

Plaintiffs do not rebut the argument that Defendants cannot be liable for the purely economic damages that plaintiffs have alleged unless they had a special relationship with the University.[15]  Consequently, because plaintiffs cannot establish that they had a special relationship with the University under Oregon law, they cannot assert negligence against the University, and their claim should be dismissed.

---

[15]  In their response, plaintiffs restate their allegation that Defendants "had a duty to Dominic Artis and Damyean Dotson."  (Pls.' Response at 34.)  As Defendants have explained, however, in the absence of a special relationship, "duty" not is an element of Oregon negligence law.  *See Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988).

Page 26 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiffs attempt to overcome Defendants' negligence arguments by claiming that because they were purportedly accomplished amateur athletes, it was foreseeable that Defendants' alleged conduct would "stigmatize them."  (Pls.' Response at 35.)  As just explained, however, this argument is irrelevant because the complaint alleges only economic damages.  Yet even if the court considers plaintiffs' negligence claim despite their failure to plead any physical injury or property damage, plaintiffs' foreseeability argument fails.  In the absence of a special relationship, Defendants' conduct cannot be tortious unless it created a foreseeable risk of harm *and* was unreasonable.  *See Solberg*, 306 Or at 490-91.  Regardless of plaintiffs' athletic potential, as a matter of law, it was not foreseeable that plaintiffs' administrative hearing would unreasonably place them at risk of being stigmatized.  Because plaintiffs agreed to participate in an administrative conference, it was not unreasonable for Weintraub to conduct an administrative hearing that comported with the University's regulations for administrative conferences.  To find otherwise would allow plaintiffs to agree to one set of procedures and then recover if those procedures did not result in a favorable outcome.  And in any event, plaintiffs' negligence claim fails because plaintiffs did not have a special relationship with the University.

3.    <u>Plaintiffs fail to respond to Defendants' argument that plaintiffs' tort claim notices did not provide "actual notice" of plaintiffs' claim that the University's investigation was tortious.</u>

Defendants' motion to dismiss argues that plaintiffs' tort claim notices failed to provide "actual notice" to the University that plaintiffs took issue with the University's investigation.  *See* ORS 30.275.  Defendants explained that because plaintiffs' notices did not assert that the University negligently investigated the events of March 8 and 9, 2014, plaintiffs are barred from basing a tort claim on this allegation.  Plaintiffs' response fails to address these arguments, and consequently, the court should find that plaintiffs have conceded them.  Accordingly, plaintiffs cannot now assert that the University is liable for negligently investigating a report that plaintiffs engaged in sexual misconduct in March 2014.

Page 27 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

4.    Plaintiffs fail to plead any factual allegations that Defendants intended to inflict severe emotional distress or that Defendants' alleged conduct transgressed the bounds of socially tolerable behavior.

The lack of a special relationship between plaintiffs and the University also prevents their recovery for IIED.  Nonetheless, plaintiffs additionally fail to plead factual allegations that can plausibly establish any of the elements of IIED.  To overcome Defendants' motion, in addition to showing that a special relationship exists, plaintiffs must plead factual allegations that plausibly suggest that (a) Defendants intended to inflict severe emotional distress on plaintiffs, (b) Defendants' alleged conduct caused plaintiffs severe emotional distress, and (c) Defendants' alleged conduct transgressed the bounds of socially tolerable behavior. *See McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995).

Plaintiffs plead no factual allegations that plausibly suggest that Defendants intended to inflict emotional distress on plaintiffs.  Instead, the complaint includes only the conclusory and unsupported allegation that Defendants "intended to inflict * * * severe emotional distress."  (Compl. ¶ 103.)  Without such allegations, plaintiffs fail to adequately plead the first element of IIED.[16]

Plaintiffs' response reasserts that Defendants' alleged conduct "constituted an extraordinary transgression of the bounds of socially tolerable conduct," but again fails to substantiate that assertion.  (Pls.' Response at 105.)  The court may evaluate Defendants' alleged conduct as a matter of law.  *Tenold v. Weyerhaeuser Co.*, 127 Or App 511, 517, 873 P2d 413 (1994), *re. dismissed*, 321 Or 561 (1995).  Accordingly, as a matter of law, it was not an extraordinary transgression for Gottfredson to make a public statement opposing sexual misconduct,[17] for Martin to temporarily suspend plaintiffs while the University investigated the

---

[16]  Plaintiffs' response mistakenly asserts that the complaint alleged that Defendants allegedly acted "in bad faith and/or * * * with malice."  (Pls.' Response at 36.)  These allegations—which are nonetheless merely conclusory statements—were not included in the complaint.

[17]  As noted previously, Gottfredson's public statement was issued after *The Oregonian* published the April 28, 2014, police report in which plaintiffs themselves were quoted as "regret[ting]" their conduct and acting "very inappropriate[ly]," among numerous more graphic admissions.

Page 28 -  Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

serious allegations against them,[18] for Weintraub to conduct an administrative hearing in accordance with the procedures agreed to by all parties to the hearing, or for Holmes not to offer plaintiffs an appeal when plaintiffs had waived their right to one.

Furthermore, plaintiffs misstate that they were suspended for sexual assault.  As Defendants explained in their motion to dismiss, plaintiffs were suspended for sexual misconduct, defined in relevant part by the University's Student Conduct Code as penetration without "first obtain[ing] Explicit Consent."  OAR 571-021-0105(30)(b)(A).  Plaintiffs' repeated exaggerations underscore the deficiency of their pleadings, which cannot plausibly give rise to a claim for IIED.

5.    <u>Plaintiffs offer no support for their contention that they can recover for tortious interference without showing an actual or contemplated business relationship with an NBA team.</u>

Plaintiffs' claim for tortious interference with prospective economic relations should be dismissed.  Plaintiffs' response fails to address the key legal arguments that Defendants assert in their motion to dismiss.  First, plaintiffs admit that they did not have a business relationship with any NBA team at the time of their alleged injury, yet argue—without citing any case law—that they can nevertheless recover for tortious interference.  (Pls.' Response at 37.) No Oregon court has allowed recovery for tortious interference when a plaintiff has failed to demonstrate the existence of an actual or contemplated business relationship with a third party. The speculation of others that plaintiffs may at some point in the future have a business relationship with an NBA team, and discerning what NBA players earn, does nothing to assist plaintiffs in alleging that they *had* a relationship with the NBA, particularly since they concede that they did not.  Plaintiffs' response also appears to imply that because NCAA regulations

---

[18]   Defendants again presume that plaintiffs' new assertion that the University "refused to modify Mr. Artis' and Mr. Dotson's suspension[s] because they had asserted their <u>Miranda</u> rights" was mistakenly incorporated into their brief from Austin's brief in opposition to Defendants' motion to dismiss his claims.  (Pls.' Response at 36.)  Plaintiffs did not include this allegation in their complaint and therefore cannot assert it now.  But in any event, the undisputed contents of the April 28, 2014, police report reflect that plaintiffs did not assert their right to remain silent when interviewed by the Eugene Police Department about the events of March 2014.

Page 29 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

prohibited them from establishing a business relationship with the NBA, they should be excused from this essential element of the tort. (Pls.' Response at 37.)  Plaintiffs, however, fail to cite any precedent to support this argument, which contravenes Oregon law.

Second, plaintiffs argue that they complied with the notice requirements of the Oregon Tort Claims Act (the "OTCA") by asserting that their notices included the assertion that plaintiffs "have been damaged by" the alleged actions of Defendants. (Pls.' Response at 37.)  But plaintiffs are wrong when they argue that mere notice of the intent to seek "damages" complies with the OTCA's notice requirement and that "[n]o law says that more was required." (Pls.' Response at 37.)  ORS 30.275(6) says that more is required. Specifically, ORS 30.275(6) requires "actual notice" of the "time, place and circumstances" giving rise to plaintiffs' tortious-interference claim. Plaintiffs' argument essentially concedes that plaintiffs did not comply with the OTCA. And their argument that Defendants make "no showing as to what evidence" would have been collected if their notices had complied with the OTCA's notice requirement fails to resurrect their claim. (Pls.' Response at 37.)  It is not Defendants' burden to show what evidence the University would have attempted to preserve if plaintiffs had given proper notice (although there are many types of discovery that Defendants could have attempted to collect closer in time to the events in question, including witness interviews and correspondence). Oregon law is clear that plaintiffs have the burden to show that they have given notice of the time, place, and circumstances of their tortious interference claim and that actual notice is a substantive condition precedent to pursuing plaintiffs' claim. *See Orr v. City of Eugene*, 151 Or App 541, 543, 950 P2d 397 (1997). Plaintiffs failed to provide actual notice, and their claim should be dismissed.

**G.    Plaintiffs Fail to Rebut Defendants' Argument That the University Fulfilled the Express Terms of Plaintiffs' Scholarship Agreements.**

The University fulfilled its contractual obligations to plaintiffs, and is entitled to dismissal of plaintiffs' contract claim. In their response, plaintiffs reassert that they had "the objectively reasonable expectation, based on the express terms of the[ir] scholarship[s], that the

Page 30 -  Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

University of Oregon would renew their scholarships."  (Pls.' Response at 38.)  Plaintiffs, however, fail to identify any provision of their scholarship agreements that actually obligated the University to renew their scholarships.  That is because no such provision exists.  (Thornton Decl. Ex. A.)  The University indisputably fulfilled its contractual obligations by providing plaintiffs with all the benefits guaranteed under their 2013-2014 scholarships.

Furthermore, plaintiffs have not pleaded any damages that (1) were contemplated by the parties when they entered into the contract, (2) were foreseeable to the University when it offered plaintiffs their 2013-2014 scholarships, or (3) plaintiffs are reasonably likely to sustain.[19] *See Doyle v. Oregon Bank*, 94 Or App 230, 234, 764 P2d 1379 (1988) (affirming dismissal of breach-of-contract claim because consequential damages were not reasonably foreseeable).

Plaintiffs' alleged damages to their hypothetical professional basketball careers are outside the scope of their contracts with the University and are too speculative, as a matter of law.  *See, e.g.*, *McAdoo v. Univ. of N.C. at Chapel Hill*, 736 SE2d 811, 821 (NC Ct App 2013) (affirming dismissal of student athlete's breach-of-contract claim because, among other reasons, alleged damage to a future professional sports career is "too hypothetical and speculative to provide [plaintiff] with standing"); *Bowers v. NCAA*, 118 F Supp 2d 494, 509-10 (DNJ 2000), *opinion amended on reargument*, 130 F Supp 2d 610 (DNJ 2001) ("[D]amages for the loss of a potential future professional athletic career are speculative because the possibility that such damages would ever occur is too conjectural for determination.  Many contingencies must occur before [plaintiff] could enjoy a professional athletic career.  Those contingencies include, but are not limited to, whether [plaintiff] would escape injury, whether [plaintiff] would excel at college football and whether any professional team would show an interest in [plaintiff].  In short, the

---

[19] Plaintiffs now assert for the first time that they want the University to be liable for hypothetical multimillion-dollar product-endorsement contracts stemming from their hypothetical performance during their hypothetical professional basketball careers, further highlighting that the damages they seek were not reasonably foreseeable.  (Pls.' Response at 38.)  Plaintiffs again mistakenly assert that they were transfer students and projected first-round NBA draft picks.

Page 31 -  Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

road to a professional football career is long and circuitous, and [plaintiff] has not gone down that road far enough to submit such a fanciful damage claim to a fact finder.") (footnote omitted). But in any event, plaintiffs have not disputed that the University provided them with all the benefits due under their 2013-2014 scholarships, which were offered for a fixed one-year term. Plaintiffs cannot recover damages for breach of contract on the basis of contracts that were provided in full and therefore were not breached.  Plaintiffs' claim should be dismissed.

### H.    Plaintiffs' Response To Defendants' Preclusion Arguments Mischaracterizes Defendants' Position.

Plaintiffs are precluded by Oregon law from re-litigating their administrative conference.  Defendants have not argued that plaintiffs' administrative hearing precludes plaintiffs from asserting their due process claim, equal protection claim, or Title IX claim. (Defs.' Mot. to Dismiss at 37.)  Though plaintiffs' federal claims should be dismissed for failure to state a claim and because the Individual Defendants are entitled to qualified immunity, if plaintiffs are permitted to litigate these claims, they should nevertheless be precluded from litigating the merits of their administrative orders.  Put differently, plaintiffs are precluded from introducing evidence for the purpose of showing that they did not engage in sexual misconduct, as defined by the Student Conduct Code.  As a consequence, plaintiffs cannot prevail on their due process or Title IX claim *to the extent that doing so relies on the court's finding that their administrative hearing was wrongly decided*.  Otherwise, this court would be improperly allowing a challenge to a final state order.

Plaintiffs also mischaracterize Defendants' second preclusion argument. Defendants argued in their motion to dismiss that ORS 183.480(2) prevents plaintiffs from asserting their state law claims—not their federal claims, as plaintiffs mistakenly assert.  (Pls.' Response at 32-33; Defs.' Mot. to Dismiss at 39.)  This preclusion argument is not contingent on whether plaintiffs exhausted available administrative remedies.  In fact, Defendants have affirmatively argued that no administrative remedy was available to plaintiffs because they

Page 32 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

waived their right to an administrative appeal. Defendants' argument instead is that, under Oregon statutory law, plaintiffs' only remedy was judicial review of their suspensions in accordance with either ORS 183.482 or 183.484, both of which require that an appeal be filed within 60 days of the issuing of an administrative order. Plaintiffs did not appeal under ORS 183.482 or 183.484, and thus are now precluded from asserting their state law claims.

I. **Plaintiffs Do Not Deny That the Individual Defendants' Alleged Conduct Constituted Discretionary Decisions Made Within the Scope of Their Employment With The University.**

Defendants are entitled to discretionary immunity under both ORS 30.265(6)(c) and 30.265(6)(f). Plaintiffs' lawsuit is premised on the underlying assertion that the Individual Defendants' alleged conduct, including the decision to suspend plaintiffs from the University, was discretionary. Plaintiffs assert that "Defendants' only argument that they are immune from liability under O.R.S. 30.265(6)(c) is 'because their decisions involved public policy and were made under the apparent authority of law.'" (Pls.' Response at 34.) Plaintiffs go on to claim that this "argument is utterly at odds with the plain language of [ORS] 30.265(6)(c)." ORS 30.265(6)(c) states that "[e]very public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for: * * * [a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Based on the plain language of this statute, public universities and university employees exercising discretion within the scope of their employment are immune from liability. This is precisely what Defendants asserted in their motion to dismiss, and it is consistent with the complaint. (Defs.' Mot. To Dismiss at 39-40; Compl. ¶¶ 99, 103, 109.) Consequently, ORS 30.265(6)(c) protects Defendants from the alleged tort liability.

Alternatively, Defendants are immune from liability under ORS 30.265(6)(f), which provides immunity for public institutions, and their employees acting within the scope of their employment, for "[a]ny claim arising out of an act done or omitted under apparent authority

Page 33 -  Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

of a law, resolution, rule or regulation that is unconstitutional, invalid or inapplicable * * *, unless such act was done or omitted in bad faith or with malice." This "apparent-authority" immunity "applies to public actors who * * * rely on their plausible interpretation of laws that turn out to be unconstitutional, invalid, or inapplicable." *Cruz v. Multnomah Cty.*, No. A155157, 2016 WL 3511819, at *6 (Or App June 22, 2016).

Plaintiffs allege that Defendants acted "under the apparent authority of [the] law," *see, e.g.*, Compl. ¶ 78, 99, but argue that Defendants have "fail[ed] to cite what 'law, resolution, rule or regulation' they seek shelter under." (Pls.' Response at 34.) Defendants, however, have asserted that plaintiffs' administrative hearing was conducted in accordance with OAR 571-021-0205, the regulation governing University administrative conferences, Defs.' Mot. to Dismiss at 4—which plaintiffs argue did not offer constitutionally adequate process. And plaintiffs have failed to allege, or plead factual allegations that could plausibly support an argument, that Defendants acted in bad faith or with malice.[20] Consequently, if this court finds that plaintiffs' administrative conference did not provide constitutionally adequate process, Defendants are immune from tort liability under ORS 30.265(6)(f) because (1) Defendants alleged conduct was done under the apparent authority of the law, (2) Defendants relied on a regulation that the court later determined to be unconstitutional, and (3) plaintiffs have not alleged that Defendants acted in bad faith. *See Cruz*, 2016 WL 3511819, at *6.

The University provided plaintiffs with constitutionally adequate process (even though not required to), and the court need not determine if plaintiffs sufficiently pleaded their tort claims because Defendants are immune from tort liability under ORS 30.265(6)(c) and (f).

---

[20] Though plaintiffs' response states that "Mr. Artis and Mr. Dotson plausibly allege that Defendants acted in bad faith or with malice, and [plaintiffs] expressly plead as much," neither this allegation nor factual allegations supporting it, are found in plaintiffs' complaint.

Page 34 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## III.     CONCLUSION

The court should grant Defendants' motion to dismiss in full.  Plaintiffs (1) do not have a clearly established property right or liberty interest in their education or standing at the University, their reputations, their positions on the basketball team, the renewal of their athletic scholarships, or their hypothetical professional basketball careers, (2) have failed to plead any factual allegations to indicate that Defendants acted with discriminatory intent based on plaintiffs' sex or gender, (3) did not have a special relationship with the University and thus cannot assert their negligence or IIED claims, (4) did not have business relationships with the NBA or any professional basketball team, and (5) received all the benefits due to them under the terms of their scholarship agreements.  In addition, plaintiffs are precluded under the Ninth Circuit's jurisprudence from relitigating the merits of their administrative hearing; they are precluded from raising their state law claims because they failed to properly appeal their suspensions in accordance with state law; and Defendants are entitled to discretionary immunity with regard to plaintiffs' state law claims. Accordingly, the complaint should be dismissed and judgment entered in favor of Defendants for these multiple reasons.

DATED this 5th day of July, 2016.

MILLER NASH GRAHAM & DUNN LLP


s/Michelle Barton Smigel
Michelle Barton Smigel, P.C., OSB No. 045530
michelle.smigel@millernash.com
Michael Porter, P.C., OSB No. 003560
mike.porter@millernash.com
Telephone:  503.224.5858
Fax:  503.224.0155

*Attorneys for Defendants*


Page 35 -   Defendants' Reply in Support of Their Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

I hereby certify that I served the foregoing defendants' reply in support of their motion to dismiss on:

>Mr. Brian L. Michaels
>259 East Fifth Avenue, Suite 300-D
>Eugene, OR 97401
>Telephone: (541) 687-0578
>E-mail:  brian@brianmichaelslaw.com
>
>Mr. Alex B. Spiro
>Brafman & Associates, P.C.
>767 Third Avenue, 26th Floor
>New York, NY 10017
>Telephone:  (212) 750-7800
>E-mail:  aspiro@braflaw.com
>
>*Attorneys for Plaintiffs*
>*Dominic Artis and Damyean Dotson*

by the following indicated method or methods on the date set forth below:

☒    **CM/ECF system transmission.**

☐    **E-mail.**  (Courtesy copy.)

☐    **Facsimile communication device.**

☐    **First-class mail, postage prepaid.**

☐    **Hand-delivery.**

☐    **Overnight courier, delivery prepaid.**

DATED this 5th day of July, 2016.

>s/Michelle Barton Smigel
>Michelle Barton Smigel, P.C., OSB No. 045530
>
>*Of Attorneys for Defendants*

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204