**ALEX SPIRO, ESQ.**
Brafman & Associates, P.C.
767 Third Avenue, 26th Fl
New York, NY 10017
Phone: (212)-750-7800
Fax: (212)-750-3906

**BRIAN MICHAELS**, OSB # 925607
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon   97401
Telephone: 541.687.0578
Fax:         541.686.2137
 brian@brianmichaelslaw.com

**ALAN C. MILSTEIN** (Pro Hac Vice)
SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: 856-662-0700
Facsimile: 856-488-4744
E-Mail: amilstein@shermansilverstein.com

**MARIANNE DUGAN** (OSB #932563)
259 E. 5th Avenue, Suite 200-D
Eugene, OR 97401
Telephone: 541-338-7072
Facsimile: 866-650-5213
E-Mail: mdugan@mdugan.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| BRANDON AUSTIN,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF OREGON; SANDY WEINTRAUB; CHICORA MARTIN; ROBIN HOLMES; and MICHAEL R. GOTTFREDSON, all in their individual capacities only, | Case No. 6:15-cv-02257-MC (Lead Case)<br>Case No. 6:16-cv-00647-MC (Member Case)<br><br><br>PLAINTIFFS' MOTION FOR COURT<br>TO RECONSIDER ITS ORDER DISMISSING<br>PLAINTIFFS' CLAIMS FOR DUE PROCESS |

1  PLAINTIFFS' MOTION FOR RECONSIDERATION ON DUE PROCESS AND QUALIFIED IMMUNITY CLAIMS

|                                    |                                 |
|------------------------------------|---------------------------------|
| Defendants.                        | AND QUALIFIED IMMUNITY          |
| DOMINIC ARTIS and                  |                                 |
| DAMYEAN DOTSON,                    |                                 |
|                                    | (Oral Argument Requested)       |
| Plaintiffs,                        |                                 |
|                                    |                                 |
| v.                                 |                                 |
|                                    |                                 |
| UNIVERSITY OF OREGON; SANDY        |                                 |
| WEINTRAUB; CHICORA MARTIN;         |                                 |
| ROBIN HOLMES; and MICHAEL R.       |                                 |
| GOTTFREDSON, all in their individual|                                |
| capacities only,                   |                                 |
|                                    |                                 |
| Defendants.                        |                                 |

## LR 7-1(a) CERTIFICATION

Undersigned counsel certifies he has conferred with defense counsel, Michelle Barton Smigel, who OPPOSES this Motion to Reconsider.

## MOTION FOR RECONSIDERATION

Plaintiffs are rather mindful how unwelcome a Motion To Reconsider can be received. As such, Plaintiffs submit this Motion with the expectation this court will see that there is indeed more information that could be pled, which is consistent with, and additional to, any claims. In particular, (1) the issue of scholarship as a property interest consistent with <u>Stretten</u>, and (2) the complete investigatory information available to the University leading to these Plaintiffs' exoneration, above and beyond the cherry picked police reports of plaintiffs' statements of regret, which the University kept hidden behind protective orders, depriving even Plaintiffs' counsel from removing them and possessing them after being allowed only to read them once. The sworn declarations to these matters by Plaintiffs' counsel are attached hereto.

In its September 8, 2016 Order (Docket No. 34) denying Plaintiffs an opportunity to re-plead their Due Process and concomitant Qualified Immunity claims, this Court concluded, at

2 PLAINTIFFS' MOTION FOR RECONSIDERATION ON DUE PROCESS AND QUALIFIED IMMUNITY CLAIMS

Page 7, the standard to be, "If the complaint is dismissed, leave to amend should be granted unless the court 'determines that the pleading could not possibly be cured by the allegation of other facts.' Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) (citations and internal quotation marks omitted)." This motion is intended to demonstrate how and why Plaintiffs' Complaint can in fact be cured by allegations of other facts. These additional facts will be detailed below by each relevant separate fact.

Absent a determination 'that the pleading could not possibly be cured by the allegation of other facts,' it is incumbent upon a District Court to freely and liberally allow Plaintiffs to amend complaints. Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." The Supreme Court has determined that leave to amend should be "freely given" in the absence of reasons such as bad faith, undue delay, dilative motive by moving party, and undue prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962) (district court abused its discretion in refusing to permit plaintiff to amend the complaint). In the Ninth Circuit, it is an abuse of discretion to deny leave to amend in the absence of any of the above reasons. Keniston v. Roberts, 717 F.2d 1295 (9th Cir. 1983). The Ninth Circuit has noted that district courts generally should freely permit amendment of pleadings. Nguyen v. U.S., 824 F.2d 697, 699 (9th Cir. 1987). *Therefore, "[u]nless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint*." Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973) (denial of leave to file amended complaint, even five years after filing of initial complaint, was an abuse of discretion in the absence of prejudice) (emphasis added). See Sierra Club v. Union Oil Co., 813 F.2d 1480, 1493 (9th Cir. 1987) *(mere delay in proffering an amendment to a complaint does not justify denying leave to amend*) (emphasis added).

**MEMORANDUM**

3   PLAINTIFFS' MOTION FOR RECONSIDERATION ON DUE PROCESS AND QUALIFIED IMMUNITY CLAIMS

# I.
# SCHOLARSHIPS AS PROPERTY INTEREST

This Court, at Page 10 of its Order, found against Plaintiffs by distinguishing the medical residency interest recognized in *Stretten*[1] from the basketball scholarships granted by the University to these Plaintiffs. The Court wrote:

> Turning to *Stretten*, I find that case can only arguably be interpreted to confer a right similar to that at issue. While I agree that *Stretten* is the more analogous of the two cases, as it involves a right to higher education, I find that it is sufficiently distinct so as to fall short of the "beyond debate" standard articulated in *Al-Kidd*. Namely, the medical resident from *Stretten* was appointed to a four-year position but terminated allegedly without process after only one. **The Ninth Circuit found that the plaintiff in that case had an interest in keeping his position to maintain his income, complete his residency, continue to benefit from the education derived from the residency, and protect his professional reputation**. *Stretten*, 537 F.3d at 368. **Here, the Plaintiffs are unpaid college student athletes who were denied the renewal on the subsequent term of their otherwise renewable one-year scholarships, from which they benefited the full promised year**. Given the stark contrast between the rights conferred and then withdrawn in *Stretten* and those alleged in the case at hand, I find that Plaintiffs have failed to plead a clearly established constitutional right for the purposes of a qualified immunity analysis.

(Emphasis added)

Attached hereto are the scholarships, and the terms of those scholarships (Exhibits ("Exs.") 1 and 2), along with calculations of the monetary awards for those scholarships (Exs. 3 and 4). From pages 1 and 2 of the scholarships, we see the terms and conditions as referenced herein:

> This assistance will be considered for renewal during subsequent periods of attendance as long as you are a student in good standing, maintain normal progress toward graduation and are in compliance with all eligibility requirements of this institution, the Pac- 12 Conference and the NCAA. **This assistance may be changed or terminated only in accordance with the legislation of the NCAA, principal details of which appear on the back of**

---

[1] Stretten v. Wadsworth Veterans Hosp., 538 F.2d 361 (9th Cir. 1976)

**this statement.**

(Emphasis added).

Accordingly, the conclusion drawn from the emphasized portion is that this is indeed a 4-year contract, to be changed or terminated only in accordance with the legislation of the NCAA.

On page 2, the terms and rules are recited:

> **15.3.4 Reduction and Cancellation during Period of Award.**
>
> **15.3.4.1** Increase Permitted Institutional financial aid may be increased for any reason prior to the commencement of the period of the award. Once the period of the award begins, institutional aid may only be increased if the institution can demonstrate that such an increase is unrelated in any manner to an athletics reason.
>
> **15.3.4. 2 Reduction or Cancellation Permitted**. Institutional financial aid based in any degree on athletics ability may be reduced or canceled during the period of the award if the recipient:
>
> (a) Renders himself or herself ineligible for intercollegiate competition;
> (b) Fraudulently misrepresents any information on an application, letter of intent or financial aid agreement (see Bylaw 15.3.4.1.1);
> (**c) Engages in serious misconduct warranting substantial disciplinary penalty (see Bylaw 15.3.4.1.2);** or
> (d) Voluntarily (on his or her own initiative) withdraws from a sport at any time for personal reasons; however, the recipient's financial aid may not be awarded to another student-athlete in the academic term in which the aid was reduced or cancelled. A student-athlete's request for written permission to contact another four-year collegiate institution regarding a possible transfer does not constitute a voluntary withdrawal.
>
> **15.3.4.2.1 Timing of Reduction or Cancellation**, Any reduction or cancellation of aid during the period of the award may occur only after the student-athlete has been provided an opportunity for a hearing per Bylaw 15.3.2.4.
>
> **15.3.4.2.3 Fraudulent Misrepresentation**. If a student-athlete is awarded institutional financial aid on the basis of declaring intention to participate in a particular sport by signing a letter of intent, application or tender, action on the part of the grantee not to participate (either by not reporting for practice or after making only token appearances as determined by the institution) would constitute fraudulent misrepresentation of information on the grantee's application, letter of intent or financial aid agreement and would permit the institution to cancel or reduce the financial aid.
>
> **15.3.4.2.4 Misconduct. An institution may cancel or reduce the financial aid of a student-athlete who is found to have engaged in misconduct by the**

> **university's regular student disciplinary authority, even if the loss-of-aid requirement does not apply to the student body in general.**
>
> **15.3.4.2.5 Release of Obligation to Provide Athletically Related Financial Aid**. Before becoming a counter for an academic year, if a prospective student-athlete or student-athlete is awarded institutional financial aid unrelated to athletics that is equal or greater value than his or her signed award of athletically related financial aid, the student-athlete may, on his or her initiative release the institution of its obligation to provide the athletically related financial aid.
>
> **15.3.4.3 Reduction or Cancellation Not Permitted**. Institutional financial aid based in any degree on athletics ability may not be reduced or canceled during the period of its award: (Adopted: 1/16/93; Revised: 1/11/94, 12/11/07 (a) On the basis of a student-athlete's athletics ability, performance or contribution to a team's success;(b) Because of an injury, illness, or physical or mental medical condition (except as permitted pursuant to Bylaw 15.3.4 .2); or (Revised: 1//4/08)(c) For any other athletics reason.

(Emphasis added)

In <u>Stretten</u>, the court describes the agreement to appoint with this slight excerpt: "The form appointing Dr. Stretten described his appointment as being 'for (the) duration of this training unless sooner terminated, and . . . subject to periodic review by resident review board.'" Without further discovery, we cannot determine whether the terms of the medical residency have similar provisions for termination of Plaintiffs' presumed four-year contract/scholarship. The language is quite similar insomuch as there is a presumption of a continued contract until such time as the conditions for termination are met. The time for that determination is at the Motion for Summary Judgment stage so we may compare the facts as they are, rather than in the vacuum of speculation. The fact these scholarships were automatically renewed for three years is further evidence of the continued expectation of their lasting nature.

Attached hereto, as Exs. 3 and 4, are the scholarship awards for two of the three plaintiffs, indicative of all three. At Ex. 3 is Mr. Dotson's financial award. As can be seen, his awards for the 2012-- 2013 and 2013 - 2014 years, as represented by the term 'Other Resources,' were:

2012 – 2013
Other Resources                    $40,944.00

2013-2014
Other Resources                    $42,563.00

At Ex 4 is Mr. Artis' financial award. As can be seen, his awards for the 2012- 2013 and 2013 – 2014 years were:

2012 – 2013
Outside Resource                   $40,944.00

2013 -2014
Outside Resource                   $42,563.00


Without further discovery we do not know, and cannot know, if these awards are so much less than those identified for Mr. Stretten so as to eliminate these awards from being a property interest, as a matter of law. What we do know, and can definitely plead as true, is that an award in the $40,000 range, combined with continuing education, is as significant a property interest as cited in the court's Order for Mr. Stretten, emphasized above: "**The Ninth Circuit found that [Stretten] the plaintiff in that case had an interest in keeping his position to maintain his income, complete his residency, continue to benefit from the education derived from the residency, and protect his professional reputation**."


## II
## QUALIFIED IMMUNITY

At Page 8 of this court's Order, the standard for qualified immunity was articulated as thus:

> Qualified immunity in this case hinges on whether the Individual Defendants violated a clearly established constitutional right in their individual capacities. An official's conduct will only violate a "clearly established" right when "at the time of the challenged conduct, the contours of a right are sufficiently clear

that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)) (internal bracketing and quotations omitted). Existing precedent "must have placed the statutory or constitutional question beyond debate." Id. at 741.

As was raised at oral argument, this 1976 Stretten case is sufficiently similar, and in existence for 40 years. In the event this court finds for plaintiffs and allows an amendment based upon the nature of these scholarship awards, then we need discovery to uncover why these employees were unaware of Stretten, or why they found the facts to be sufficiently different to justify not applying the property interest recognized therein. This holding was reinforced as recently as 2013 in Blantz v. Cal. Dep't of Corr. & Rehab., 727 F.3d 917,925 Fn 6 (9th Cir., 2013):

> [6.] Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest, but less severe accusations must be analyzed on a case-by-case basis, and allegations of mere incompetence or inability are not sufficient. See *Roth v. Veteran's Admin.,* 856 F.2d 1401, 1411 (9th Cir.1988), overruled on other grounds by *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365–66 (9th Cir.1976). Blantz alleges, on information and belief, that the poor recommendation she received included "unwarranted and false information concerning her reputation for honesty and/or morality," which we will accept as true for the purpose of the motions to dismiss.

Unlike Ms. Blantz, or Mr. Stretten for that matter, it is beyond dispute that these plaintiffs' scholarships were not terminated for incompetence or other performance problems, but rather that these plaintiffs were terminated for immorality— arguably the worst of all immoral behavior. Accordingly, for all these reasons, these defendants, as public employees, were certainly on notice that these plaintiffs deserved, and were constitutionally required to have, due

8 PLAINTIFFS' MOTION FOR RECONSIDERATION ON DUE PROCESS AND QUALIFIED IMMUNITY CLAIMS

process sufficient to comport with the Fourteenth and Fifth Amendments to the constitution. As recently as September 28, 2016, the Oregon Court of Appeals identified these requirements as satisfying the constitutional due process required of student conduct hearings at a different Oregon Public University:

> Here, it is undisputable that PSU did not follow the contested case procedures of the APA when it expelled petitioner; PSU acknowledges as much. Among other things, petitioner was not allowed to be represented by counsel, ORS 183.417(1), cross-examine witnesses, ORS 183.450(3), or issue subpoenas, ORS 183.440, and the testimony of witnesses was not taken by oath or affirmation, ORS 183.417(6). Consequently, PSU committed legal error when it expelled petitioner, and we reverse and remand for further proceedings.

(Liu v Portland State University, 281 Or App 294,307 (2016)[2])

## III
## SUPPLEMENTAL DECLARATIONS FROM ATTORNEYS WHO HAVE WORKED IN THE UNIVERSITY OF OREGON FIELD

Attached are Declarations from three attorneys who have represented University students through the Student conduct process. Two represented the plaintiffs, one represented several students, and a fourth, undersigned Brian Michaels, was able to depose two University employees through a collateral Sexual Assault Prevention Act case, whose testimony would prove critical to these issues.

At pages 4 – 5, Court relied heavily on these facts as submitted by University:

> On a motion to dismiss, the Court may consider, in addition to the complaint, materials incorporated into the complaint or matters of public record. The police report prepared by the Eugene Police Department, ECF No. 21-1, is both a public record and is relied upon factually in the Second Amended Complaint. See ECF No. 12 at Pars 39, 41, 79. The police report includes both an extensive interview with the female as well as a summary of the phone

---

[2] Understandably, this is not authoritative, but advisory.

> conversations between the female and the Plaintiffs following the incident. Those recordings were submitted by the female to the Eugene Police Department following the investigating officer's request. Id at 16. In those conversations, the Plaintiffs attested to the fact that the female "started crying during sex" and that was "the first time any of them knew she did not want to continue." Id One of the Plaintiffs stated that he "regretted the situation, and could understand why she felt like she was taken advantage of, given what she remembered of the situation." Id The report includes one of the Plaintiffs admitting to feeling that he did something wrong. Id at 17. Another Plaintiff admits that "he was sorry, and said what he did was very inappropriate, and again mentioned he would not want anyone to do that to his mom or sister" and that "he had never done anything like this before, and would never do it again." Id at 18. The same Plaintiff stated that the incident "was an experience no one should have to [go] through, and called it a lesson learned for him." Id

(Internal Citation omitted)

Plaintiffs respectfully request this court review the declarations of Attorney Greg Veralrud and Attorney Laura Fine-Moro to determine what other facts were readily available to the University, sufficient to overcome the incriminating inferences repeated in the Court's Order. Mr. Veralrud expresses shock that one could read the University's own Title IX report and conclude the men were guilty of anything, contradicting the limited information provided by the University through police reports. This report can be obtained only through discovery, thereby heretofore unavailable to plaintiffs. As are the Depositions referenced in the Declaration of Brian Michaels.

Similarly, the declarations of Ms. Fine-Moro and Ms. Casey reveal there are many documents shielded by protective order, which are relevant to the issues and claims here, and can

///

///

10 PLAINTIFFS' MOTION FOR RECONSIDERATION ON DUE PROCESS AND QUALIFIED IMMUNITY CLAIMS

only be obtained through discovery.

      **RESPECTFULLY SUBMITTED** this 11th day of October 2016,
BY:


ALEX SPIRO, ESQ.                                       s/ BRIAN MICHAELS
ALEX SPIRO, ESQ.                                       BRIAN MICHAELS OSB 925607
Pro Hac Vice
                      Of Attorneys For Plaintiffs

9 November 2011

Mr. Damyean Dotson
9722 Buffum Street
Houston, TX 77051

**OREGON**

Dear Damyean,

Financial assistance for you has been approved by the Office of Student Financial Aid of the University of Oregon. This assistance is dependent (1) upon your meeting admission and financial aid requirements of the University of Oregon, (2) upon your meeting at the time of your admission all applicable eligibility rules of the National Collegiate Athletic Association and the Pac-12 Conference, and (3) upon your signing a valid National Letter of Intent with the University of Oregon. Condition (3) may be waived by written consent of the University of Oregon's Director of Athletics.

If you enroll, you will receive this assistance for three (3) consecutive quarter(s), commencing with the first day of classes Fall quarter of the 2012-13 academic year, and such assistance shall consist of the following:

**Full athletic scholarship consisting of undergraduate tuition and compulsory fees, a subsistence grant covering the cost of room and board at campus rates, and the provision of required course-related books.**

If you receive other countable aid that increases the value of the equivalency (listed above) counting toward NCAA team financial aid limitations, your athletics scholarship or other countable aid may be reduced or cancelled to maintain compliance with applicable NCAA regulations. If your athletics aid is less than the amount of your other countable aid, you may decline your athletics aid. Failure to adhere to University of Oregon, Athletic Department or team rules may result in immediate termination of athletics aid.

This assistance will be considered for renewal during subsequent periods of attendance as long as you are a student in good standing, maintain normal progress toward graduation and are in compliance with all eligibility requirements of this institution, the Pac-12 Conference and the NCAA. This assistance may be changed or terminated only in accordance with the legislation of the NCAA, principal details of which appear on the back of this statement.

Please indicate your acceptance of this financial assistance by signing both copies in the space indicated below and returning one of them immediately to the address indicated on this letterhead. Please retain one original copy for your records.

Sincerely,

Rob Mullens
Director of Athletics

James Brooks
Director of Student Financial Aid

********************************************************************************

I have read and I understand this offer of financial assistance. I have read and understand additionally the NCAA regulations as set forth on the back of this statement. I have also read and understand the conditions set forth in the National Letter of Intent.

_Lorie Dotson_
(Parent's Signature)

_Damyean Dotson_
(Signature of Prospective Student-Athlete)

Nov-9-2011
(Date Signed)

9722 Buffum St
(Address)

(713)-298-7140
(Phone Number)

Houston    TX    77051
(City)    (State)    (Zip Code)

Len Casanova Athletic Center • 2727 Leo Harris Parkway • Eugene, Oregon 97401-8833 • 541-346-4481 Fax 541-346-5031

*An equal opportunity, affirmative action institution committed to cultural diversity and compliance with Americans with Disabilities Act*

EXHIBIT 1

UNIVERSITY OF OREGON DEPARTMENT OF INTERCOLLEGIATE ATHLETICS

The following are excerpts from Bylaw 15 (Financial Aid) of the 2011-12 NCAA Manual:

**15.01.2 Improper Financial Aid.** Any student-athlete who receives financial aid other than that permitted by the Association shall not be eligible for intercollegiate athletics.

**15.2.8.1.1 Exception for Pell Grant.** A student-athlete who receives a Pell Grant may receive financial aid equivalent to the limitation set forth in Bylaw 15.2.8.1 or the value of a full grant-in-aid plus the Pell Grant, whichever is greater.

**15.2.8 Summer Financial Aid.** Summer financial aid may be awarded only to attend the awarding institution's summer term, summer school or summer-orientation program, provided the following conditions are met:

(a) The student has been in residence a minimum of one term during the regular academic year;

(b) The student is attending a summer term, summer school or summer-orientation program and financial aid is administered pursuant to Bylaw 15.2.8.1.2, 15.2.8.1.3 or 15.2.8.1.4; or

(c) The student is a two-year or a four-year college transfer student and is receiving aid to attend the awarding institution's summer-orientation program.

**15.2.8.1 General Stipulations.** A student-athlete who is eligible for institutional financial aid during the summer is not required to be enrolled in a minimum full-time program of studies. However, the student-athlete may not receive financial aid that exceeds the cost of attendance in that summer term. A student-athlete may receive institutional financial aid based on athletics ability and educational expenses awarded up to the value of a full grant-in-aid, plus any to the financial aid up to the cost of attendance.

**15.3. Terms of Institutional Financial Aid Award.**

**15.3.1 Eligibility of Student-Athletes for Financial Aid.** Institutional financial aid may be awarded for any term during which a student-athlete is in regular attendance as an undergraduate with eligibility remaining under Bylaw 14.2, or within six years after initial enrollment in a collegiate institution (provided the student does not receive such aid for more than five years during that period), or as a graduate eligible under Bylaw 14.1.9.

**15.3.2.1 Conformance to Institutional and Conference Regulations.** Financial aid awarded by an institution to a student-athlete shall conform to the rules and regulations of the awarding institution and of that institution's conference(s), if any. A violation of this bylaw that relates only to a violation of a conference rule shall be considered an institutional violation per Constitution 2.8.1; however, such a violation shall not affect the student-athlete's eligibility.

**15.3.2.2 Physical Condition of Student-Athlete.** Financial aid awarded to a prospective student-athlete may not be conditioned on the recipient reporting in satisfactory physical condition. If a student-athlete has been accepted for admission and awarded financial aid, the institution shall be committed for the term of the original award, even if the student-athlete's physical condition prevents him or her from participating in intercollegiate athletics.

**15.3.3 Period of Institutional Financial Aid Award.**

**15.3.3.1 One-Year Period.** If a student's athletics ability is considered in any degree in awarding financial aid, such aid shall neither be awarded for a period in excess of one academic year nor for a period less than one academic year (see Bylaw 15.01.5).

**15.3.4 Reduction and Cancellation during Period of Award.**

**15.3.4.1 Increase Permitted** Institutional financial aid may be increased for any reason prior to the commencement of the period of the award. Once the period of the award begins, institutional aid may only be increased if the institution can demonstrate that such an increase is unrelated in any manner to an athletics reason.

**15.3.4.2 Reduction or Cancellation Permitted.** Institutional financial aid based in any degree on athletics ability may be reduced or canceled during the period of the award if the recipient:

(a) Renders himself or herself ineligible for intercollegiate competition;

(b) Fraudulently misrepresents any information on an application, letter of intent or financial aid agreement (see Bylaw 15.3.4.1.1);

(c) Engages in serious misconduct warranting substantial disciplinary penalty (see Bylaw 15.3.4.1.2); or

(d) Voluntarily (on his or her own initiative) withdraws from a sport at any time for personal reasons; however, the recipient's financial aid may not be awarded to another student-athlete in the academic term in which the aid was reduced or cancelled. A student-athlete's request for written permission to contact another four-year collegiate institution regarding a possible transfer does not constitute a voluntary withdrawal.

**15.3.4.2.1 Timing of Reduction or Cancellation.** Any reduction or cancellation of aid during the period of the award may occur only after the student-athlete has been provided an opportunity for a hearing per Bylaw 15.3.2.4.

**15.3.4.2.3 Fraudulent Misrepresentation.** If a student-athlete is awarded institutional financial aid on the basis of declaring intention to participate in a particular sport by signing a letter of intent, application or tender, action on the part of the grantee not to participate (either by not reporting for practice or after making only token appearances as determined by the institution) would constitute fraudulent misrepresentation of information on the grantee's application, letter of intent or financial aid agreement and would permit the institution to cancel or reduce the financial aid.

**15.3.4.2.4 Misconduct.** An institution may cancel or reduce the financial aid of a student-athlete who is found to have engaged in misconduct by the university's regular student disciplinary authority, even if the loss-of-aid requirement does not apply to the student body in general.

**15.3.4.2.5 Release of Obligation to Provide Athletically Related Financial Aid.** Before becoming a counter for an academic year, if a prospective student-athlete or student-athlete is awarded institutional financial aid unrelated to athletics that is equal or greater value than his or her signed award of athletically related financial aid, the student-athlete may, on his or her initiative release the institution of its obligation to provide the athletically related financial aid.

**15.3.4.3 Reduction or Cancellation Not Permitted.** Institutional financial aid based in any degree on athletics ability may not be reduced or canceled during the period of its award: *(Adopted: 1/16/93; Revised: 1/11/94, 12/11/07)* (a) On the basis of a student-athlete's athletics ability, performance or contribution to a team's success; (b) Because of an injury, illness, or physical or mental medical condition (except as permitted pursuant to Bylaw 15.3.4.2); or *(Revised: 1/14/08)* (c) For any other athletics reason.

**15.3.4.3.1 Athletically Related Condition Prohibition.** An institution may not set forth an athletically related condition (e.g., financial aid contingent upon specified performance or playing a specific position) that would permit the institution to reduce or cancel the student-athlete's financial aid during the period of the award if the conditions are not satisfied.

**15.3.4.3.2 Decrease Not Permitted.** An institution may not decrease a prospective student-athlete's or a student-athlete's financial aid from the time the prospective student-athlete or student-athlete signs the financial aid award letter until the conclusion of the period set forth in the financial aid agreement, except under the conditions set forth in Bylaw 15.3.4.2

**15.3.5.1 Institutional Obligation.** The renewal of institutional financial aid based in any degree on athletics ability shall be made on or before July 1 prior to the academic year in which it is to be effective. The institution shall promptly notify in writing each student-athlete who received an award the previous academic year and who has eligibility remaining in the sport in which financial aid was awarded the previous academic year whether the grant has been renewed or not renewed for the ensuring academic year. Notification of financial aid renewals and non-renewals must come from the institution's regular financial aid authority and not form the institutions athletic department.

EXHIBIT 1

9 November 2011

Mr. Dominic Artis
100 Live Oak Court
Vallejo, CA 94591

Dear Dominic,

Financial assistance for you has been approved by the Office of Student Financial Aid of the University of Oregon. This assistance is dependent (1) upon your meeting admission and financial aid requirements of the University of Oregon, (2) upon your meeting at the time of your admission all applicable eligibility rules of the National Collegiate Athletic Association and the Pac-12 Conference, and (3) upon your signing a valid National Letter of Intent with the University of Oregon. Condition (3) may be waived by written consent of the University of Oregon's Director of Athletics.

If you enroll, you will receive this assistance for three (3) consecutive quarter(s), commencing with the first day of classes Fall quarter of the 2012-13 academic year, and such assistance shall consist of the following:

**Full athletic scholarship consisting of undergraduate tuition and compulsory fees, a subsistence grant covering the cost of room and board at campus rates, and the provision of required course-related books.**

If you receive other countable aid that increases the value of the equivalency (listed above) counting toward NCAA team financial aid limitations, your athletics scholarship or other countable aid may be reduced or cancelled to maintain compliance with applicable NCAA regulations. If your athletics aid is less than the amount of your other countable aid, you may decline your athletics aid. Failure to adhere to University of Oregon, Athletic Department or team rules may result in immediate termination of athletics aid.

This assistance will be considered for renewal during subsequent periods of attendance as long as you are a student in good standing, maintain normal progress toward graduation and are in compliance with all eligibility requirements of this institution, the Pac-12 Conference and the NCAA. This assistance may be changed or terminated only in accordance with the legislation of the NCAA, principal details of which appear on the back of this statement.

Please indicate your acceptance of this financial assistance by signing both copies in the space indicated below and returning one of them immediately to the address indicated on this letterhead. Please retain one original copy for your records.

Sincerely,

Rob Mullens
Director of Athletics

James Brooks
Director of Student Financial Aid

***

I have read and I understand this offer of financial assistance. I have read and understand additionally the NCAA regulations as set forth on the back of this statement. I have also read and understand the conditions set forth in the National Letter of Intent.

_____
(Parent's Signature)

11/9/11
(Date Signed)

415-867-4624
(Phone Number)

_____
(Signature of Prospective Student-Athlete)

100 Live Oak Ct
(Address)

Vallejo, CA 94591
(City) (State) (Zip Code)

Casanova Athletic Center • 2727 Leo Harris Parkway • Eugene, Oregon 97401-8633 • (541) xxx-xxxx Fax

*An equal opportunity, affirmative action institution committed to cultural diversity and compliance with Americans with Disabilities Act*

EXHIBIT 2

UNIVERSITY OF OREGON DEPARTMENT OF INTERCOLLEGIATE ATHLETICS

The following are excerpts from Bylaw 15 (Financial Aid) of the 2011-12 NCAA Manual:

**15.01.2 Improper Financial Aid.** Any student-athlete who receives financial aid other than that permitted by the Association shall not be eligible for intercollegiate athletics.

**15.2.8.1.1 Exception for Pell Grant.** A student-athlete who receives a Pell Grant may receive financial aid equivalent to the limitation set forth in Bylaw 15.2.8.1 or the value of a full grant-in-aid plus the Pell Grant, whichever is greater.

**15.2.8 Summer Financial Aid.** Summer financial aid may be awarded only to attend the awarding institution's summer term, summer school or summer-orientation program, provided the following conditions are met:

    (a) The student has been in residence a minimum of one term during the regular academic year;

    (b) The student is attending a summer term, summer school or summer-orientation program and financial aid is administered pursuant to Bylaw 15.2.8.1.2, 15.2.8.1.3 or 15.2.8.1.4; or

    (c) The student is a two-year or a four-year college transfer student and is receiving aid to attend the awarding institution's summer-orientation program.

    **15.2.8.1 General Stipulations.** A student-athlete who is eligible for institutional financial aid during the summer is not required to be enrolled in a minimum full-time program of studies. However, the student-athlete may not receive financial aid that exceeds the cost of attendance in that summer term. A student-athlete may receive institutional financial aid based on athletics ability and educational expenses awarded up to the value of a full grant-in-aid, plus any to the financial aid up to the cost of attendance.

**15.3. Terms of Institutional Financial Aid Award.**

    **15.3.1 Eligibility of Student-Athletes for Financial Aid.** Institutional financial aid may be awarded for any term during which a student-athlete is in regular attendance as an undergraduate with eligibility remaining under Bylaw 14.2, or within six years after initial enrollment in a collegiate institution (provided the student does not receive such aid for more than five years during that period), or as a graduate eligible under Bylaw 14.1.9.

    **15.3.2.1 Conformance to Institutional and Conference Regulations.** Financial aid awarded by an institution to a student-athlete shall conform to the rules and regulations of the awarding institution and of that institution's conference(s), if any. A violation of this bylaw that relates only to a violation of a conference rule shall be considered an institutional violation per Constitution 2.8.1; however, such a violation shall not affect the student-athlete's eligibility.

    **15.3.2.2 Physical Condition of Student-Athlete.** Financial aid awarded to a prospective student-athlete may not be conditioned on the recipient reporting in satisfactory physical condition. If a student-athlete has been accepted for admission and awarded financial aid, the institution shall be committed for the term of the original award, even if the student-athlete's physical condition prevents him or her from participating in intercollegiate athletics.

**15.3.3 Period of Institutional Financial Aid Award.**

    **15.3.3.1 One-Year Period.** If a student's athletics ability is considered in any degree in awarding financial aid, such aid shall neither be awarded for a period in excess of one academic year nor for a period less than one academic year (see Bylaw 15.01.5).

**15.3.4 Reduction and Cancellation during Period of Award.**

    **15.3.4.1 Increase Permitted** Institutional financial aid may be increased for any reason prior to the commencement of the period of the award. Once the period of the award begins, institutional aid may only be increased if the institution can demonstrate that such an increase is unrelated in any manner to an athletics reason.

    **15.3.4.2 Reduction or Cancellation Permitted.** Institutional financial aid based in any degree on athletics ability may be reduced or canceled during the period of the award if the recipient:

(a) Renders himself or herself ineligible for intercollegiate competition;

(b) Fraudulently misrepresents any information on an application, letter of intent or financial aid agreement (see Bylaw 15.3.4.1.1);

(c) Engages in serious misconduct warranting substantial disciplinary penalty (see Bylaw 15.3.4.1.2); or

(d) Voluntarily (on his or her own initiative) withdraws from a sport at any time for personal reasons; however, the recipient's financial aid may not be awarded to another student-athlete in the academic term in which the aid was reduced or cancelled. A student-athlete's request for written permission to contact another four-year collegiate institution regarding a possible transfer does not constitute a voluntary withdrawal.

        **15.3.4.2.1 Timing of Reduction or Cancellation.** Any reduction or cancellation of aid during the period of the award may occur only after the student-athlete has been provided an opportunity for a hearing per Bylaw 15.3.2.4.

        **15.3.4.2.3 Fraudulent Misrepresentation.** If a student-athlete is awarded institutional financial aid on the basis of declaring intention to participate in a particular sport by signing a letter of intent, application or tender, action on the part of the grantee not to participate (either by not reporting for practice or after making only token appearances as determined by the institution) would constitute fraudulent misrepresentation of information on the grantee's application, letter of intent or financial aid agreement and would permit the institution to cancel or reduce the financial aid.

        **15.3.4.2.4 Misconduct.** An institution may cancel or reduce the financial aid of a student-athlete who is found to have engaged in misconduct by the university's regular student disciplinary authority, even if the loss-of-aid requirement does not apply to the student body in general.

        **15.3.4.2.5 Release of Obligation to Provide Athletically Related Financial Aid.** Before becoming a counter for an academic year, if a prospective student-athlete or student-athlete is awarded institutional financial aid unrelated to athletics that is equal or greater value than his or her signed award of athletically related financial aid, the student-athlete may, on his or her initiative release the institution of its obligation to provide the athletically related financial aid.

    **15.3.4.3 Reduction or Cancellation Not Permitted.** Institutional financial aid based in any degree on athletics ability may not be reduced or canceled during the period of its award: *(Adopted: 1/16/93; Revised: 1/11/94, 12/11/07* (a) On the basis of a student-athlete's athletics ability, performance or contribution to a team's success; (b) Because of an injury, illness, or physical or mental medical condition (except as permitted pursuant to Bylaw 15.3.4.2); or *(Revised: 1/14/08)* (c) For any other athletics reason.

    **15.3.4.3.1 Athletically Related Condition Prohibition.** An institution may not set forth an athletically related condition (e.g., financial aid contingent upon specified performance or playing a specific position) that would permit the institution to reduce or cancel the student-athlete's financial aid during the period of the award if the conditions are not satisfied.

    **15.3.4.3.2 Decrease Not Permitted.** An institution may not decrease a prospective student-athlete's or a student-athlete's financial aid from the time the prospective student-athlete or student-athlete signs the financial aid award letter until the conclusion of the period set forth in the financial aid agreement, except under the conditions set forth in Bylaw 15.3.4.2

    **15.3.5.1 Institutional Obligation.** The renewal of institutional financial aid based in any degree on athletics ability shall be made on or before July 1 prior to the academic year in which it is to be effective. The institution shall promptly notify in writing each student-athlete who received an award the previous academic year and who has eligibility remaining in the sport in which financial aid was awarded the previous academic year whether the grant has been renewed or not renewed for the ensuring academic year. Notification of financial aid renewals and non-renewals must come from the institution's regular financial aid authority and not form the institutions athletic department.

EXHIBIT 2

# Financial Aid Award Letter 

**2012-13**

19-SEP-16

UO ID: 951287646
Class Level:
Residency: Non-Resident
Dependency: Dependent
Housing: Off Campus

Damyean D. Dotson
9722 Buffum St
Houston, TX  77051-3510

| Estimated Student Expenses: | | Resources: | |
|---|---|---|---|
| Tuition and Fees | 28,653 | Parental Contribution | 3,282 |
| Food and Housing | 9,501 | Student/Spouse Contribution | |
| Books and Supplies | 1,050 | Other Resources | 40,944 |
| Personal Expenses | 2,430 | | |
| Transportation | 1,150 | | |
| Total Budget | $42,784 | Total Resources: | $44,226 |

********** Your Financial Aid Award **********

| Financial Aid Program | Fall | Winter | Spring | Summer | Total |
|---|---|---|---|---|---|
| Federal Pell Grant | 767 | 767 | 766 | | 2,300 |
| TOTAL | 767 | 767 | 766 | | $2,300 |

**Office of Student Financial Aid and Scholarships**
1278 University of Oregon, Eugene, OR 97403-1278
541-346-3221 financialaid.uoregon.edu

EXHIBIT 3

# Financial Aid Award Letter



## UNIVERSITY OF OREGON

2013-14

19-SEP-16

UO ID: 951287646
Class Level:
Residency: Non-Resident
Dependency: Dependent
Housing: Off Campus

Damyean D. Dotson
9722 Buffum St
Houston, TX 77051-3510

| Estimated Student Expenses: | | Resources: | |
|---|---|---|---|
| Tuition and Fees | 29,673 | Parental Contribution | 2,974 |
| Food and Housing | 9,501 | Student/Spouse Contribution | |
| Books and Supplies | 1,050 | Other Resources | 42,563 |
| Personal Expenses | 2,430 | | |
| Transportation | 1,150 | | |
| Total Budget | $43,804 | Total Resources: | $45,537 |

********** Your Financial Aid Award **********

| Financial Aid Program | Fall | Winter | Spring | Summer | Total |
|---|---|---|---|---|---|
| Federal Pell Grant | 899 | 898 | 898 | | 2,695 |
| TOTAL | 899 | 898 | 898 | | $2,695 |

Office of Student Financial Aid and Scholarships
1278 University of Oregon, Eugene, OR 97403-1278
541-346-3221 financialaid.uoregon.edu

EXHIBIT 3



# DuckWeb Information System

**NAME:off** | **HELP** | **EXIT**

951285306 Dominic J. Artis
Sep 14, 2016 02:10pm

*Need Calculation*

| Cost of Attendance | $43,404.00 |
|---|---|
| Estimated Family Contribution | $8,222.00 |
| Initial Need | $35,182.00 |
| Outside Resource | $42,563.00 |
| Need | $.00 |

*Cost of Attendance*

| Tuition and Fees | $29,673.00 |
|---|---|
| Food and Housing | $9,501.00 |
| Books and Supplies | $1,050.00 |
| Personal Expenses | $2,430.00 |
| Transportation | $750.00 |
| **Total:** | $43,404.00 |

*Housing*

| Status |
|---|
| Off Campus |

*Expected Enrollment*

| Status |
|---|
| Unknown |

*Financial Aid Award by Term for the 2013-14*

| | Fall 2013 | | Winter 2014 | | Spring 2014 | | |
|---|---|---|---|---|---|---|---|
| Fund | Status | Amount | Status | Amount | Status | Amount | Total |
| Fed Direct Loan - Unsubsidized | Accept | $280.00 | Accept | $280.00 | Accept | $281.00 | $841.00 |
| Totals | | $280.00 | | $280.00 | | $281.00 | $841.00 |

 If you have questions regarding the above information, please contact the Financial Aid office.

**RELEASE: 8.25 [UO.1]**

© 2016 Ellucian Company L.P. and its affiliates.

EXHIBIT 4